UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:
Sixty Sixty Condominium Association, Inc.            Case No. 16-26187-ram

    Debtor-in-Possession.                                           Chapter 11
_____/

**DEBTOR'S MOTION TO COMPEL TURNOVER OF BOOKS AND RECORDS FROM HOTEL CONDOMINIUM MANAGEMENT CORPORATION, INC.**

Sixty Sixty Condominium Association, Inc., the debtor and debtor-in-possession (the "Debtor"), by and through undersigned counsel, pursuant to 11 U.S.C. §§ 542 respectfully requests an order of the Court compelling the Condominium Hotel Management Corporation, Inc. ("CHMC"), to turnover estate property, including Debtor's books and records (the "Books and Records"), and in support thereof states as follows::

**Introduction**

The Debtor is a condominium association for a condominium located at 6060 Indian Creek Drive in Miami Beach, Florida (the "Condominium").

From March of 2013 through on or about January of 2016, CHMC was the manager of the Debtor and held all of is Books and Records.

The Debtor requires access to all of its Books and Records in order to perform its functions, including filing Federal Income Tax Returns for prior years.

CHMC continues to hold certain of Debtor's Books and Records and has failed and refused to turnover same.

CHMC ought to be immediately compelled to turnover all of Debtor's Books and Records to the Debtor.

**Relevant Background**

1. On or about March 20, 2013, Debtor entered into a *Condominium Management Agreement* with CHMC to manage the Debtor (the "Management Agreement"). The Management Agreement is attached hereto and incorporated by reference herein as **Exhibit "A"**.

2. The Management Agreement required, among other things, for CHMC to "work in conjunction with an accountant o prepare for execution of filing of forms, reports and returns required by law," "[p]repare and file Corporate Annual Report" and "[p]repare all forms and paperwork necessary in the conduct of any Meeting of Membership or Board, including notice of meeting, proxies, ballots, check-in sheets etc."  Management Agreement at p. 4.

3. Accordingly, while managing Debtor, CHMC held and prepared many of Debtor's Books and Records.

4. On or about December 2015, Debtor terminated CHMC as its manager.

5. After termination, Debtor demanded that CHMC turnover all Books and Records held by CHMC. CHMC failed and refused to do so.

6. On February 15, 2016, the Debtor demanded that CHMC turnover by written letter to Annet Rojas, the President of CHMC[1] (the "Demand Letter").

7. The Demand Letter requested delivery of Debtor's Books and Records including the following:

>   a. Debtor's Financial Records and Ledgers;
>   b. Debtor's Delinquency Report dated January 11th 2016;
>   c. Debtor's Bank Account Files and Fund Balance Transfer to Oxygen Association Services;
>   d. All of Debtor's Correspondence Files;
>   e. All of Debtor's Minutes of the Association;
>   f. All of Debtor's Records of Pending Invoices and Agreements with Third Parties;

---

[1] Richard Schecher is listed as the Director of CHMC. Mirko Morales is listed as a Vice-President of CHMC.

      g.  All of Debtor's IRS Tax Records including W-9 forms;
      h.  All of Debtor's Records of Foreclosure Actions of the Association;
      i.  All of Debtor's Title Documents of Association Owned Units;
      j.  Debtor's Income and Loss Statements of Association Owned Units;
      k.  All City Property Tax Records of the Debtor;
      l.  All City of Miami Beach Violation Records, Permits and Notifications;
      m.  All other relevant documentation of the Debtor.

8. CHMC failed to deliver all Books and Records in CHMC's possession.

9. On May 26, 2015 and again on June 2, 2015, the Debtor requested that CHMC turn over all Books and Records to Debtor.

10. To date, CHMC has not delivered all Books and Records to Debtor.

## ARGUMENT

11. Section 542(e) of the Bankruptcy Code provides, in pertinent part, "Subject to any applicable privilege, after notice and a hearing, the court may order an attorney accountant, or other person that holds recorded information, including books, documents, records and papers, related to the debtor's property or financial affairs to turn over or disclose such recorded information on the trustee."

12. The Debtor, as a Chapter 11 debtor-in-possession, has substantially all of the rights, powers and duties of a trustee. 11 U.S.C. 1107(a) ("a debtor in possession shall have all of the rights, other than the right to compensation under section 330 of this title, and powers and shall perform all the functions of duties … of a trustee serving in a case under this chapter.").

13. "Bankruptcy Code Section 542(e) (11 U.S.C. § 542(e)) requires an attorney, accountant or other professional that holds recorded information relating to a debtor's property or financial affairs, to surrender it to the trustee or the debtor in possession if there is no trustee." *In re Beef N'Burgundy, Inc*., 21 B.R. 69, 70 (Bankr. N.D. Ga. 1982)(internal footnote omitted).

14. The party in possession of a debtor's books and records has an obligation to turn such documents over to the debtor even if said party would otherwise have a lien against same

under state law. *In re Herrera*, 390 B.R. 746, 748 (Bankr. S.D. Fla. 2008) (finding that "the turnover obligation [of §542(e)] exists in this case since the prepetition documents are property of the estate and clearly necessary for the administration of the case.").

15. Accordingly, Section 542(e) of the Bankruptcy Code requires CHMC to turnover all of Debtor's Books and Records to Debtor.

16. The Debtor requests that this Court enter an order compelling CHMC to turn over all of Debtor's Books and Records in its possession to the Debtor within three (3) business days.

WHEREFORE, the Debtor respectfully requests an Order compelling the CHMC to turnover the Books and Records to the Debtor within three (3) business days of entry of an Order on this Motion; and for such other and further relief as this Court deems just.

Respectfully submitted this December 12, 2016.

> MESSANA, P.A.
> *Putative Counsel for the Debtor*
> Post Office Drawer 2485
> Fort Lauderdale, Florida. 33303
> Office (954) 712-7400
> Facsimile: (954) 712-7401
> e-mail: blieberman@messana-law.com
>
> By: _/s/ Brett D. Lieberman_____
>     Thomas M. Messana, Esq.
>     Florida Bar No. 991422
>     Brett D. Lieberman, Esq.
>     Florida Bar No. 69583

Exhibit "A"

# CONDOMINIUM MANAGEMENT AGREEMENT

This agreement made this 20 day of March, 2013, between 6060 Condominium Association, Inc., a Florida not. For-profit corporation hereinafter referred to as the "Association," and CONDOMINIUM HOTEL MANAGEMENT CORP, LLC having its principal offices at 6345 Collins Ave. Miami Beach, Florida 33141, hereinafter referred to as "Manager". In consideration of the terms, conditions and covenants set forth, the parties hereto mutually agree as follows:

The Association consists only of the units described herein and the Common Elements better described in the Declaration of condominium of 6060 Condominium Association Inc., many of the recreational and other commonly used facilities are **not** part of the Common Elements, but rather are part of the Shared Component (Which are owned and operated by the Hotel Unit). Accordingly, control of those facilities is vested in the Hotel Unit Owner, rather than the Association.

1. The Association hereby employs the Manager, and the Manager hereby accepts management under the terms and conditions hereinafter provided as Manager of the Association known as 6060 Condominium Association, Inc., a Florida not-for profit Corporation. The Association fully understands that the function of the Manager is the management of the association an of the association property define on "EXHIBIT A" of the Declaration of 6060 Condominium Association, Inc, and that the Manager will, notwithstanding the authority given to the Manager in this agreement, confer fully and freely with the Directors of the Association in the performances of its duties as herein set forth and will attend membership and Directors meetings at any reasonable time as set forth in Exhibit A, unless otherwise directed.

2. The Manager shall render services and perform duties as described on and attached hereto and incorporated herein as Exhibit A, with the following additions:

I. Manager agrees that it shall employ personnel who shall devote the number of hours weekly to perform the services hereinafter provided as specified in Exhibit "A".

II. Collect all monthly assessments, special assessments, and all other monies due from the members, and under the Association's authorization, request, demand, collect, and receive any and all charges or rents that may at any time be or become due to the Association and to take such action in the name of the Association by way of legal process or otherwise as may be required for the collection of delinquent monthly assessments. Such costs, legal and otherwise incurred shall be for the benefit of the Association without deduction. The Manager shall be in charge of all collections. The manner of and extent of his efforts such as the decision to institute a lawsuit or to file a lien against a unit owner shall be at the sole discretion of the Association acting through its Board of Directors or legal counsel. All monies collected by the manager shall, upon receipt, be deposited in a mutually agreed upon bank account in the name of the Association.

3. This contract shall be in force from the commencement date through activation of the cancellation provision Cancellation provision may be activated by either party upon thirty (30) days written notice, with or without cause, by certified mail return receipt requested or FedEx or similar nationally recognized overnight delivery service. On termination, the contracting parties shall account to each other with respect to all matters outstanding as of the date of termination and all official records of the Association will be turned over to the Association, within ten (10) days of termination or cancellation, without regard to any other outstanding issues or disputes between the parties.

4. Manager shall be paid on the 1st day of each and every month, for the term of this contract. There shall be an 5% per annum late charge applied to any invoice not paid within thirty (30) days of issuance due monthly. Manager will be paid the portion of the Shared Components owned by the HOTEL UNIT as define by on the Declaration of 6060 Condominium association, Inc

5. Association shall indemnify and pay for defense (as duty to defend versus reimbursement) on behalf of Manager, and hold Agent (Manager) harmless from and against all claims, damages, and costs (including counsel) arising out of or in connection with the management of the property and the operation thereof, except for acts of negligence of Agent and acts of Agent (collectively "Unauthorized Acts") or a material breach of this Agreement. Agent shall indemnify and hold Association harmless from any and all claims, damages, and costs, including attorney fees, arising out of or in connection with "Unauthorized Acts" of Agent.

6. The Manager hereby agrees to maintain at all times and to provide evidence of the following insurance coverage's:

   A. Commercial General Liability Insurance extended to include: 1) $1,000,000.00 limit each occurrence for bodily injury and property damage, $1,000,000.00 general aggregate limit, $1,000,000.00 limit for personal and advertising injury, and $1,000,000.00 products and completed operations limit; 2) contractual liability coverage; and 3) the Association and any and all of its officers and directors, employees and agents to be specifically designated as "additional insured" using ISO additional Insured Endorsement similar to CG 2010 or an endorsement providing equivalent or broader coverage to the additional insured. Coverage for additional insured shall apply as primary and non-contributing insurance before any other insurance or self insurance, including any deductible, maintained by or provided to the additional insured. This coverage shall apply as primary with regard only to perils for which Association would be entitled to be indemnified.

   B. Commercial Auto Liability with a combined single limit of $1,000,000.00 and $1,000,000.00 limit for non-owned and hired automobile liability.

   C. Workers' Compensation Insurance according to State statutory limits covering all employees or subcontractors of the Manager, with employer's liability limits of not less than $500,000.00 each accident for bodily injury, $500,000.00 each employee for bodily injury caused by disease, and $500,000.00 policy limit for bodily injury caused by disease.

   D. Umbrella or Excess Liability Insurance with limits of not less than $1,000,000.00 each occurrence and aggregate providing follow-form coverage over the General Liability and Employers' Liability policies.

   E. Prior to the commencement of work under this Contract, the Manager shall provide a current and original Certificate of Insurance showing the coverage's outlined above.

7. All authorized actions taken by the Manager with respect to management and maintenance under the provisions of this Agreement shall be taken, as Agent for the Association, and all obligations or expenses incurred in the performance of the Manager's duties and obligations shall be for the account, on behalf and at the expense of the Association. Since the Manager will be acting for and on behalf of the Association, it is understood and agreed that the public liability insurance carried and maintained by the Association shall be extended to and shall cover the Manager, its agents and employees, as well as the Association, all at the expense of the Association. The Association agrees to indemnify and hold the Manager harmless from any and all liabilities for any injury, damage or accident to any member of the Association, a guest, lessee or invitee of any such member, or to any third person, and for a damage to the property, arising out of or in the course of the performance of its authorized duties.

8. The Manager, by the execution of this Agreement, assumes and undertakes to perform, carry out and administer all management, operations, and maintenance responsibilities imposed upon the Association. Such assumption of obligations is limited, however, to operation, management and maintenance as agent, and does not require the Manager to pay any of the costs and expenses which are the obligation of the Association, except as specifically assumed in this Agreement by the Manager.

9. Manager and Association acknowledge and recognize that in the event of hurricane or other Acts of God or any major projects other than the normal day-to-day operations, Manager may be called upon to perform extraordinary services for the Association beyond the scope of their management function contracted under this Association Management Agreement.

10. Major projects are define as other than the normal day-to-day operations which will likely require intensive use of human and other resources beyond those normally dedicated by Manager under their contracted management function. The Parties acknowledge and recognize that Manager's available human and other resources will be heavily in demand during occurrences such as hurricane and other Acts of God, or any major projects other than the normal day-to-day operations and that Manager will use its best efforts to promptly assist and support the Association's needs. No work on these projects will begin until the Board of Directors and Condominium Hotel Management Corp have agreed on the scope of work and a fee.

11. Manager reserves the right to increase said schedule of fees and expenses based on actual market forces. Any fees, expenses, or increases thereof shall, in any event, be approved in writing by the Association before Manager proceeds to dedicate its resources to the performance of such extraordinary services.

12. The Association agrees to indemnify and hold Manager harmless from all claims, demands, charges, costs, damages, or expenses (including legal fees, costs, and legal interest) arising from Manager's performance of the aforesaid extraordinary services including without limitation, claim of misrepresentation, misfeasance, malfeasance, fraud, or falsification of documents unless such claim is a result of manager's negligence.

13 It is understood that the Association will not hire directly or indirectly any employees hired by Manager, should this contract be terminated, for a period of one year from date of termination. This would include any employee hired by a subsequent management company or manager, working or assigned by the Association property or for the Association. Should the Association wish to utilize any employee directly or indirectly, previously on Manager' payroll, said Association agrees to pay Manager a one-time charge of fifteen thousand for the manger and five thousand ($5,000.00) per employee for all other employees.

14. In the event of a dispute, prior to the institution of any legal proceedings, the parties shall mediate the dispute before a supreme court of Florida designated mediators. In the event it becomes necessary to institute legal action to enforce the terms of this agreement, the prevailing party shall be entitled to recover reasonable legal costs and attorney's fees.

Any signed and executed Addendums attached hereto are made a part thereof of the entire contract between said Association and Manager. The fees and services shall be described in Exhibit A as attached. The commencement date shall be __March 20,__ 2013

**SIXTY SIXTY CONDOMINIUM ASSOCIATION, INC.**

By: _____
Its: _Yenvy Truong, President_
Date: _3/20/13_

**CONDOMINIUM HOTEL MANAGEMENT CORP.**

By: _____
Print Name: _Annet Rojas_
Date _3/20/13_

# MANAGEMENT & ADMINISTRATIVE SERVICES TO BE PROVIDED BY
# CONDOMINIUM HOTEL MANAGEMENT CORP, LLC

Collection and allocation of all assessment and funds.

Negotiations of all service contracts subject to approval by the Hotel Unit.

Responsibility for the overseeing of all services provided to the Association.

Daily review of property conditions and providing appropriate recommendations, after thorough investigation, as part of a continuing program to secure performance by the members of all maintenance teams which serve the Association.
Work towards establishing a program of preventive maintenance to effectively reduce future capital expenditures consistent with the Board of Directors, the Hotel Unit and approved budget.

Recommendations for the betterment of the aesthetics of the common element and . property.

Maintain a fidelity bond on the Management Company in amount not less than $1,000,000.

Work in conjunction with an accountant to prepare for execution of filing of forms, reports, and returns required by law.

Coordinate with accountant the filing of all internal Revenue Service Returns and year-end statements upon receipt of completed accounting work.

Supervise and instruct Manager's Representative to direct all condominium association operations.

Hire and supervise on-site maintenance and janitorial personnel in their day to day responsibilities.

Hire, train, and direct any other on-site personnel or subcontractors that may be required to successfully operate the association property .

Purchase all supplies and materials at the Association expense insuring that the association is receiving competitive prices for all goods and services. Dollar amounts to be limited to $150.00 unless the expenses are part of the Association's budget.
Assure that all contracts and agreements between the Board of Directors and suppliers or employees are performed in accordance with their terms and to inform the Board in the event performance is considered by Manager to be inadequate or contrary to the agreed terms.

Set up the billing and collection system for the maintenance assessments.

Set up system for Association to screen new owners and renters and update the unit owner lists (if applicable).

Respond in a systematic and business-like fashion to all requests for services or emergencies.
Establish system for notification of all Rules and Regulations violations in accordance with policies established by the Board of Directors.

Prepare and file Corporate Annual Report

Provide ideas and suggestions on improvements to the property.

Prepare all the forms and paperwork necessary in the conduct of any Meeting of Membership or Board, including notices of meeting, proxies, ballots, check-in sheets etc.

If required by the Board of Directors, conduct all annual and special meetings of the members of the Association, including the official

check-in, acting as presiding officer, assist in ballot counting, verification of quorums, etc.

- Have representative present at all monthly and annual meetings of the Board of Directors, unless otherwise noticed by the Board of Directors (Maximum twelve (12) per year).

  Maintain an updated computerized list of unit owners and provide to the Association mailing labels to assist the Association in its contact with unit owners.
- Respond in writing, within a reasonable time or in accordance with the Florida Statutes, to all written request or complaints from members of the Association. A copy of each response will be provided to the President of the Board. Unless the Board has previously directed the Management Company as to Association policy with respect to the type of complaint received, or unless circumstances require an immediate response, all requests and complaints will be forwarded to the Board immediately upon receipt to allow the Board to direct the Management Company as to the response desired.

## FINANCIAL AND ACCOUNTING SERVICES TO BE PROVIDED BY

## CONDOMINIUM HOTEL MANAGEMENT CORP, LLC

### Accounts Receivable: (Maintenance Fees and Special Assessments)

o  Set up the billing and collection system for maintenance assessments. o Collection and allocation of all assessments and funds

- Maintain an up-to-date owner list complete with most current known address.

- Maintain an up-to-date listing of residences occupied by renters (where applicable).

### Accounts Payable:

- Process all accounts payable using an approved voucher system.

- Verify all incoming invoices with regard to accuracy insuring all unit prices, extensions: and discounts are reflected.

- Prepare all checks to be drawn against the Association' accounts.

### Monthly Financial Reports:

- Provide the Board of Directors with complete financial and accounting records every month within twenty two-day after the closing of the prior month. The reports to be provided will include, but not be limited to:

- General Ledger showing revenues and each disbursement by check number and category for the month and year-to-date.

- Budget Report which will include each month's actual expenditure category compared with the approved budget indicting any variances. A year-to-date report comparing actual expenditures vs. the approved budget.

- A Delinquency Report prepared on the twentieth of each month showing all past due accounts.

### Budgets:

- Prepare at least ninety (90) days prior to the end of the fiscal year and work with the budget committee of the Board to develop a final budget for approval of the board and the unit owners.

SUMMARY OF SERVICES TO BE PROVIDED BY CONDOMINIUM HOTEL MANAGEMENT CORP, LLC TO

50 Condominium Association, Inc., a Florida not-for-profit corporation

<u>Full Management Administration Package</u>

Includes property inspections, attendance at meetings, etc.

<u>Full Accounting Package</u>

Includes accounts payable, accounts receivable, monthly financial reports, etc.

<u>Personnel</u>

Please see below

THE ABOVE SERVICES WILL BE PROVIDED AT THE FOLLOWING COST

Management, Administration & Accounting................................................ Including on the Hotel Unit Budget

One Time Set-Up Fee ............................................................................................ Waived

## DDITIONAL SERVICE COSTS

a. Copies, postage, long distance telephone calls, payment envelopes, faxes, etc. will be billed on a monthly basis. This does not include the cost of the coupon books which will be paid directly by the association.

"Transfer fee for initial sale and resale processing (including initial set up fee) at $100.00 per application will be billed if applicable. This is not an expense of the Association however paid for by the buyer.

**b.** **Optional** interactive community website. One time set up cost of $250.00 and a $150.00 per month fee which covers hosting, maintenance of technology, etc.

Collections fee of $50 per file turned over to attorney for collections. This fee is paid by the delinquent owner, not by the association process all applications for Resale and/or Rentals,

c. committee, reviewing applications to be sure they are completed, certification of Statement of Assessment, change or update of Association records, issuance of welcome package (where appropriate), and issuance of new payment envelopes (where appropriate). The process outlined above shall have a fee of one hundred dollars ($100.00) per application and will be collected on behalf of the association from the new unit owner.

d. Oversee that the common areas, appurtenances, recreational facilities are maintained according to standards acceptable to the Association. The Manager shall not place any single order or execute any single contract obligation for the Association in excess of one hundred and fifty dollars ($150.00) to anyone party, unless specifically authorized by the association; excepting, however, that emergency repairs immediately necessary for the preservation and safety of life and property or required to avoid suspension of an necessary service to the Association may be made by the Manager, irrespective of the cost limitation imposed by this paragraph. Notwithstanding this authority as to emergency, the Manager will, if at all possible, confer immediately with the Association regarding every such expenditure

e. Take such action as may be necessary to comply promptly with any and all orders or requirements affecting the Association by any federal, state, county or municipal authority having jurisdiction thereof The Manager, however, shall not take any action under this paragraph so long as the Association is contesting or has confirmed its intention to contest any such order or requirement. The Manager shall promptly, and, in no event, later than three (3) business days from the

time of their receipt, notify the Association, in writing, of all orders and notices of requirements.

f. Prepare an annual operating budget and supporting documentation in coordination with Association's accountant and submit same to the Association for review and approval not less than sixty (60) days prior to the end of the association's fiscal year.

g. Operate the Association property according to the overall plan of the Association consistent with the direction of the Board of Directors, and the approved budget. The Manager shall make every reasonable effort to see that all members are informed with respect to such rules, regulations and notices as may be promulgated by the Association from time to time. The Manager shall be expected to perform such other acts and deeds as are reasonable, necessary and proper in the discharge of its duties under this agreement.

h. Everything done by the Manager under the provisions as noted in the attached Exhibit A, shall be made out of such sums as are available in the accounts of Association. The Manager shall not be obligated to make any advance to or for the account of the Association or to pay any sum, except out of funds held or provided as aforesaid, the Manager shall not be obligated to incur any liability or obligation for the account of the association.