UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

Sixty Sixty Condominium Association, Inc.                Case No. 16-26187-ram

     Debtor-in-Possession.                                          Chapter 11

_____/

### DEBTOR'S MOTION FOR SANCTIONS AGAINST SCHECHER GROUP, INC. AND RICHARD SCHECHER FOR VIOLATION OF THE AUTOMATIC STAY AND TO COMPEL ACCESS TO ESTATE PROPERTY

     Sixty Sixty Condominium Association, Inc., the debtor and debtor-in-possession (the "Debtor"), pursuant to 11 U.S.C. §§ 362(a) and 105(a), and Federal Rules of Bankruptcy Procedure 9020 and 9014, by and through undersigned counsel, moves for entry of an order holding the Schecher Group, Inc. and Richard Shecher (collectively, the "Hotel Owner") in violation of the automatic stay for exercising control over estate property, sanctioning the Hotel Owner for such violations and to compel the Hotel Owner to provide unit owners, including the Debtor, access to their units (the "Motion"), and in support thereof states as follows:

### Introduction

     The Debtor owns, among other things, four commercial units and one residential unit (the "Units") within a condominium located at 6060 Indian Creek Drive in Miami Beach, Florida (the "Condominium"). The other residential units are owned by private individuals and entities.

     The Hotel Owner owns what are typically considered "common elements" within the Condominium (including all hallways, staircases, etc.). These include all paths necessary for the Debtor to access its Units. To date, the Hotel Owner has failed and refused to provide all unit owners (including the Debtor) access to their units (including the Units).

     In fact, the Hotel Owner has taken control over certain of the Debtor's commercial Units and is employing them for its own use. Without authority, it is also attempting to collect debts that would properly belong to the Debtor's estate.

To facilitate its lock out, the Hotel Owner replaced all of the locks on the residential units with electronic key pads and secured the elevators with electronic 'fob' keys. The Hotel Owner has not provided the codes or fob key to the Debtor.

It almost goes without saying that, absent access to its Units, the Debtor cannot employ these estate assets to generate income for the estate to benefit all constituencies.

The Hotel Owner is acting like a pirate. It ought to be sanctioned for its willful violations of the automatic stay and ought to be compelled to provide all unit owners (including the Debtor) access to their respective units (including the Units).

The Hotel Unit ought also be enjoined from exercising any control over the Debtor's Units without Debtor's permission and appropriate compensation.

## Relevant Background

1.     Since on or about April of 2015, residential and commercial unit owners (including the Debtor) have not had access to their units (including the Units).

2.     On December 5, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. (ECF No. 1). Notice was provided to the Hotel Owner's counsel via e-mail on December 6, 2016.

3.     On December 7, 2016, the Hotel Owner hosted a private meeting in one of the Debtor's Units (the "Restaurant Unit") without seeking (or obtaining) Debtor's approval. Presently, and since April of 2015, the Debtor has had no access to the Restaurant Unit.

2

4.      Prior to the Petition Date and continuing today, the Hotel Owner advertises of its ownership and control of certain of Debtor's Units (the "Penthouse Terrace").[1]  Presently, and since April of 2015, the Debtor has had no access to the Penthouse Terrace.

5.      On December 8, 2016, the Debtor attempted to gain access to its Units. Access could not be obtained because the Hotel Owner installed an electronic 'fob' key system for the elevators (no 'fob' key has been provided to the Debtor) and the staircases were all locked.

6.      On December 9, 2016, the Hotel Owner represented that the "building is open, and [the Hotel Owner is] booking reservations thru [sic] April 2017 already."[2]

7.      However, the Hotel Owner has also threatened that the Debtor's bankruptcy, "may cause our building to close again and for a much longer and more extended period of time…."[3] The Hotel Owner is also presently seeking to take over the Debtor and has promised, "HUGE SAVINGS TO ALL OWNERS SAVING OWNERS AT LEAST $300,000 compared to what [the President of the Debtor] is doing today" if unit owners vote him in.[4]

8.      In fact, the Hotel Owner has falsely accused the Debtor of, "trying to stop owners from using their own property."  *Id.*

9.      **Nothing could be further from the truth.**

---

[1] See Exhibit "A", www.sixtysixtyhotel.com accessed on December 11, 2016 ("Accommodations at the New Sixty Sixty on the Bay include 82 deluxe spacious studio suites all with fantastic views from our collection of select rooms with private patios. Relax on **our penthouse floor terrace** and enjoy the Miami Beach sunset.") (emphasis added).

[2] E-mail: From: rschecher@████████ To: victorfox850@████████ cc: bbandell@████████ Subject: "Unit Owner Update – Velez Bankruptcy Deception Uncovered", Date: December 9, 2016 at 12:24 am.

[3] E-mail: From: rschecher@████████ To: mgomez@████████ and others, Subject: "Velez Bankruptcy Filing – She is trying to close the building again", Date: December 7, 2016 at 1:10 pm.

[4] E-mail: From: rschecher@████ To: Richard Schecher and, upon information and belief, unit owners, Subject: "Sixty Sixty Update: Velez's Attorney wants to stop owners from using our own property", Date: December 11, 2016 at 11:44 pm (*also* "Owners can RECOVER from VELEZ in less than 7 days if they: (1) vote to get rid of Velez and her fellow Board Members (2) Vote to appoint the HU Owner and others to the Board (3) Vote to approve the  HU ASSOCIATION PLAN that would eliminate the 2017 Debt from the Commercial Units and pay off all outstanding creditors based upon a sound plan.")(emphasis in original).

10.     In addition to the Hotel Unit's exercise of control over Debtor's Units, it appears that the Hotel Unit is attempting to collect, directly from unit owners, debts that would properly be payable to the Debtor. Upon information and belief, the Hotel Owner is converting such funds to its own use.

11.     On December 4, 2016 and continuing to the present, the Hotel Owner posted a video on YouTube entitled "Cost of Ownership does not stop with the purchase price" (the "Collections Video").[5] The Collections Video demonstrates, among other things, that the Hotel Owner is attempting to collect, directly from unit owners, approximately $522,219 that, if payable, ought to be paid directly to the Debtor to satisfy Debtor's creditors. *Id.*

12.     Through this Motion, the Debtor seeks, among other things, to prevent the Hotel Owner from further violations of the automatic stay and to compel the Hotel Owner to provide unit owners (including the Debtor) access to their units (including the Units).

## **RELIEF REQUESTED**

13.     The Debtor seeks entry of an order, pursuant to 11 U.S.C. §§ 362(a) and 105(a), and Federal Rules of Bankruptcy Procedure 9020 and 9014 finding that the Hotel Owner has violated the automatic stay and providing, among other things: (A) non-monetary sanctions against the Hotel Owner in the form of: (i) compelling the Hotel Owner to provide access to all unit owners (including the Debtor) access to their units (including the Units); (ii) providing an accounting of any monies collected on account of the $522,219 Claim (defined herein); and (iii) enjoining the Hotel Owner from accessing the Units without Debtor's approval; and (B) monetary sanctions against the Hotel Owner in the form of: (i) all damages suffered on account

---

[5] https://www.youtube.com/watch?v=-ofFhpJgi4A.

of the Hotel Unit's violations of the automatic stay, including Debtor's attorneys fees and costs; and (ii) damages in the amounts of all monies collected on account of the $522,219 Claim.

14.     11 U.S.C. section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

15.     "The stay of section 362 is extremely broad in scope and . . . applies to almost any type of formal or informal action taken against the debtor or the property of the estate." 3 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 362.03 (16th rev. ed. 2013).

16.     The Hotel Owner is violating the automatic stay by, among other things, (i) using the Restaurant and Penthouse Terrace for its own purposes; and (ii) preventing the Debtor from accessing the Restaurant, Penthouse Terrace and its other Units.

17.      "To 'exercise control' is ''to exercise restraining or directing influence over' or 'to have power over.'''" *In re Weidenbenner*, 521 B.R. 74, 79 (Bankr. S.D.N.Y. 2014) (*citing Amplifier Research Corp. v. Hart,* 144 B.R. 693, 694 (E.D. Pa. 1992). "Holding onto an asset, refusing to return it, and otherwise prohibiting a debtor's beneficial use of an asset all fit within this definition, as well as within the commonsense meaning of the word." *Amplifier* at 694.

18.     Moreover, failing to return estate property to the Debtor is also an exercise of control in violation of the automatic stay. *See In re Belcher*, 189 B.R. 16, 18 (Bankr. S.D. Fla. 1995)(following the majority position and finding that a creditor has a duty under 11 U.S.C. §352 to return property to the Debtor) (*citing In re Ryan*, 156 B.R. 321 (Bankr. M.D. Fla. 1993); In re Abrams, 127 B.R. 239 (9th Cir. BAP 1991); *In re Miller*, 22 B.R. 479 (D.C. Md. 1982); *In re Johnson*, 18 B.R. 755 (Bankr. S.D. Ohio 1982); *Matter of Endres,* 12 B.R. 404 (Bankr. E.D. Wis. 1981); *In re Knaus*, 889 F.2d 773 (8th Cir. 1989)).

5

19.     Additionally, in the Collections Video, it appears that the Hotel Unit asserts a claim against the Debtor in the amount of approximately $522,219 (the "$522,201 Claim").  In the Collections Video, it appears that the Hotel Unit is sidestepping due process by collecting the $522,219 Claim directly from the Debtor's principle funding source; the unit owners. Accordingly, it appears that the Hotel Unit is attempting to effectuate post-judgment collection efforts against the Debtor without having ever obtained a judgment and <u>while the Debtor is under the protection of Section 362.</u>

20.     11 U.S.C. Section 105(a) allows "[t]he court [to] issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

21.     "Section 105(a) 'grants courts independent statutory powers to award monetary and other forms of relief for automatic stay violations to the extent such awards are 'necessary or appropriate' to carry out the provisions of the Bankruptcy Code.'" *In re Trafford Distrib. Ctr., Inc.*, 414 B.R. 849, 857 (Bankr. S.D. Fla. 2009) (*citing Jove Eng'g v. IRS,* 92 F.3d 1539, 1555 (11th Cir. 1996)). The *Trafford* Court specifically found that the movant's damages included attorney fees and costs associated with defendant's stay violation (defendant's attempt to collect on assets which were property of the bankruptcy estate). *Id.*

22.     Sanctions under Section 105(a) are appropriate to make whole a party damaged by a violation of the automatic stay. *See In re Roxwell Performance Drilling, LLC,* No. 13-50301-RLJ-11, 2014 WL 2800767, at *4 (Bankr. N.D. Tex. June 19, 2014) (citing *In re San Angelo Pro Hockey Club, Inc.,* 292 B.R. 118, 124 (Bankr. N.D. Tex. 2003) (a "major purpose of civil contempt is to compensate a party for damages sustained as the result of a violation of a court order or injunction. The automatic stay is a self-executing injunction, and therefore, for contempt purposes, constitutes an order issuing from the bankruptcy court.").

23.     A violation of the automatic stay is "willful if the violator (1) knew of the automatic stay and (2) intentionally committed the violative act, regardless whether the violator specifically intended to violate the stay." *In re Govero*, 439 B.R. 917, 921 (Bankr. S.D. Fla. 2010) (internal quotations omitted).

24.     Here, the Hotel Owner had knowledge of the Debtor's bankruptcy filing and acted and continues to act intentionally to exercise control over Debtor's Units (and deprive Debtor of control over same).

25.     In doing so, the Hotel Owner harmed the estate and its creditors. Among other things, the Restaurant, Rooftop Terrace and the Debtor's residential unit have value to the Debtor and may be used as a source to generate income for the benefit of Debtor's creditors. Moreover, if valid, the $522,219 Claim may constitute a claim of the Debtor that it may be able to collect from its funding sources. It is not a claim that the Hotel Owner ought to advance directly against unit owners.

26.     The Court is authorized to enter monetary and non-monetary sanctions when appropriate to redress stay violations. *Jove Eng'g, Inc. v. IRS,* 92 F.3d 1539, 1554 (11th Cir. 1996).

27.     Accordingly, it is appropriate to find that the Hotel Owner has violated the automatic stay and to enter an Order awarding: (A) non-monetary sanctions against the Hotel Owner in the form of: (i) compelling the Hotel Owner to provide access to all unit owners (including the Debtor) access to their units (including the Units); (ii) providing an accounting of any monies collected on account of the $522,219 Claim; and (iii) enjoining the Hotel Owner from accessing the Units without Debtor's approval; and (B) monetary sanctions against the Hotel Owner in the form of: (i) all damages suffered on account of the Hotel Unit's violations of

the automatic stay, including for attorneys fees and costs; and (ii) damages in the amounts of all monies collected on account of the $522,219 Claim.

WHEREFORE, the Debtor respectfully requests that the court enter an order (1) finding the Hotel Unit in violation of the automatic stay; (2) awarding appropriate sanctions including: (A) non-monetary sanctions against the Hotel Owner in the form of: (i) compelling the Hotel Owner to provide access to all unit owners (including the Debtor) access to their units (including the Units); (ii) providing an accounting of any monies collected on account of the $522,219 Claim; and (iii) enjoining the Hotel Owner from accessing the Units without Debtor's approval; and (B) monetary sanctions against the Hotel Owner in the form of (i) all damages suffered by the Hotel Unit's violations of the automatic stay, including for attorneys fees and costs; and (ii) damages in the amounts of all monies collected on account of the $522,219 Claim; and (4) granting such other and further relief as the Court deems just and proper.

Respectfully submitted this 12th day of December

MESSANA, PA
*Putative Counsel for the Debtor*
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Telephone: (954) 712-7400
Facsimile: (954) 712-7401
Email: blieberman@messana-law.com

/s/ Brett D. Lieberman
Thomas M. Messana
Florida Bar No. 991422
Brett D. Lieberman
Florida Bar No. 69583

Exhibit "A"



| ~ e-Offers Signup ~ | ~ Local Weather ~ | ~ VIP Links ~ | ~ Contact Us ~ |

## THE NEW SIXTY SIXTY ON THE BAY

The **New Sixty Sixty on the Bay** is perfectly located in the heart of Millionaires Row. Ten minutes front the elegant and chic shops of Bal Harbor and the excitement and action of South Beach's Art Deco District. The port of Miami, Downtown Miami and Miami International Airport are easily accessible within thirty minutes or less.

This Miami Beach Hotel boasts a spectacular view of the intra coastal waterway for your rooms private patio, located just two blocks from the blue waters of the Atlantic Ocean and the New Sixty Sixty on the Bay Beach & Cabana Club where you can enjoy an early morning cup of coffee or a continental breakfast.

This contemporary Art Deco-inspired resort includes an outdoor splash pool overlooking the Intra Coastal Waterway located on Indian Creek Drive just a short walk to the New Casablanca on the Ocean its sister property where you are entitled to enjoy all the amenities of both properties including the pool side restaurant, private pool & beach side cabana, and much more.

Accommodations at the **New Sixty Sixty on the Bay** include 82 deluxe spacious studio suites all with fantastic views from our collection of select rooms with private patios. Relax on our penthouse floor terrace and enjoy the Miami Beach sunset.

Be sure to check back and book direct from our website and take advantage of any special rates or offers that might be taking place from time to time year-round. Join our VIP Club and book direct with us and save over any published Internet rate. We love our VIP Club Members and we go out of our way to show you how.

6060 Indian Creek Drive Miami Beach, FL 33141 (305) 865-2565

Vip Links / Terms & Conditions / Privacy Policy / Sitemap