UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

Sixty Sixty Condominium Association, Inc.          Case No. 16-26187-RAM
    Debtor-in-Possession.                         Chapter 11
_____/

## DEBTOR'S JOINDER IN AND SUPPLEMENT TO
### *UNIT OWNERS' MOTION FOR SANCTIONS*
### *AGAINST SCHECHER GROUP, INC. AND RICHARD SCHECHER*

Sixty Sixty Condominium Association, Inc., the debtor and debtor-in-possession (the "Debtor"), pursuant to 11 U.S.C. §§ 362(a) and 105(a), and Federal Rules of Bankruptcy Procedure 9020 and 9014, by and through undersigned counsel, hereby joins and supplements (the "Joinder") the *Unit Owners' Motion For Sanctions Against Schecher Group, Inc. and Richard Schecher* (ECF #68) (the "UO Sanction Motion") and moves for entry of an order finding the Schecher Group, Inc. and Richard Schecher (collectively, the "Schecher") in violation of the automatic stay and this Court's *Order on Stay Violation Motion* (ECF #38) (the "Access Order"), sanctioning Schecher for such violations by compelling the Schecher to provide unit owners, including the Debtor, reasonable access to and use of their units by enjoining certain restrictions Schecher has imposed upon same, and in support thereof states as follows:

### Introduction

Schecher is strong-arming unit owners into joining his "Hotel Program" by enforcing unreasonable restrictions on the use of, and access to, their units.

These restrictions circumvent the Access Order, violate the automatic stay, and prevent the Debtor and other unit owners from reasonable access and use of their units.

The Debtor is formulating a plan of reorganization that requires access to, and use of, its real property (including four commercial units and one residential unit). On December 22, 2016,

after notice and a hearing, this Court ordered Schecher to provide Debtor (and all other unit owners) access to their units.

This Court's December 22, 2016 Access Order was intended to provide Debtor (and other unit owners) access to, and use of, their units free from unreasonable restriction. Schecher has not complied with the Access Order.

Instead, Schecher is enforcing abusive and coercive restrictions affecting an unconscionable restraint on property of the estate (and unit owners' property rights).[1]

This Court ought to determine that the unreasonable restrictions imposed by Schecher are unenforceable, violate the Access Order and the automatic stay, and enjoin Schecher from further violations.

### Summary of Applicable Debtor, Unit Owner and Schecher Rights

1.     Under the operative documents, among other things, each and every individual unit owner (including the Debtor) has the right to lease their own unit, to their own tenants, on their own terms.[2] Declaration §6.7 ("there shall be no minimum lease term for the rental of Units, nor shall there be a maximum number of times a Unit may be leased.").

2.     All unit owners and members of the Debtor, their guest, invitees, and tenants hold a non-exclusive easement for, among other things, "pedestrian traffic over, through and across such portions of the Hotel Unit as are designated by the Hotel Unit Owner and intended to provide direct pedestrian access to and from the applicable Residential Unit and/or Commercial Unit and the public right-of-way adjacent to the Condominium Property, and (ii) use and

---

[1] To the extent the Debtor's Joinder advances interests of other unit owners, the Debtor relies on the authority provided pursuant to Florida Statute Section 718.111.
[2] Unit owners are not permitted to establish a permanent residency in the units. Declaration §3.4, 16.1, & 16.7.

enjoyment of the Shared Components, subject to regulation as may be established … by the Hotel Unit Owner and subject to other provisions of this Declaration….” Declaration §3.4(e).

3.     Schecher offers a *voluntary* "Hotel Program" that was designed and intended to be an ancillary benefit of unit ownership; not a means of suffocating unit owner rights.

4.     By imposing a combination of one-time and daily fees, Schecher has made alternatives to its "Hotel Program" cost prohibitive impossibilities.

5.     Schecher is only permitted to establish **reasonable** regulations regarding check-in, services provided by third parties, and parking. Declaration §3.3, 3.4, & 16.3.

6.     As set forth herein at ¶ 18, 23, 27, 31 and others, Schecher has enacted unconscionable regulations specifically designed to restrict unit owner access and use of units in circumvention of the Access Order and in violation of the automatic stay.

7.     Schecher's intimidation and bully tactics are carefully calculated to coerce the Debtor and all unit owners into his "Hotel Program" (where Schecher controls all of the monies and allocates same as deemed fit).

**Relevant Background**

8.     Since on or about April of 2015, residential and commercial unit owners (including the Debtor) have not had reasonable access or use of their units.

9.     On December 5, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (ECF No. 1).

10.    On December 13, 2016, Debtor filed a motion for sanctions against Schecher to compel Schecher to provide access to its property (ECF #13) (the "Access Motion").

11.    The Access Motion argued, among other things:

    a.   that Schecher refused Debtor access to its units;

3

    b.   that Schecher used Debtor property without permission; and

    c.   that Schecher attempted to collect pre-petition claims against the Debtor directly from the unit owners, including Debtor, after the Petition Date.

12.    On December 21, 2016, this Court held a hearing on the Access Motion. Among other things, counsel for Schecher disputed the allegations of the Access Motion and represented that at all times unit owners were permitted access to their units.

13.    The Debtor vigorously disputes this representation.

14.    On December 22, 2016, this Court entered the Access Order ostensibly granting Debtor (and all unit owners) access to their units.

15.    After the entry of the Access Order, Schecher prevented Debtor and the unit owners from reasonable access and use of their units though various deceptive and unfair practices including the imposition and enforcement of unreasonable "rules and regulations" (the "HU Rules and Regs")[3].

16.    On January 12, 2017, certain unit owners filed the UO Sanction Motion seeking sanctions for Schecher's violation of the Access Order.

17.    In addition to the abusive events supporting the UO Sanction Motion, Schecher has instituted broad sweeping restrictions on access and use that are aimed to prevent the Debtor and unit owners from reasonable access and use of their units. These unreasonable restrictions are in direct and willful violation of the Access Order and the Automatic Stay.

**The Unreasonable and Unenforceable Restrictions**

18.    Schecher purports to disclose its HU Rules and Regs online at www.sixtysixtycondo.com (the "Website").[4] The HU Rules and Regs purport to be available online at http://www.sixtysixtycondo.com/rules--regulations/. However, Schecher takes the

---

[3] Attached hereto as Exhibit "A" is a screenshot of the HU Rules and Regs from the Website as of January 20, 2017.
[4] Many of the unit owners are elderly, do not have familiarity with the internet, or are not fluent English speakers.

position that the HU Rules and Regs are subject to change at Schecher's whim without any notice to the Debtor or other unit owners and without consultation with the Debtor.

19.     Among the HU Rules and Regs are certain restrictions that make it <u>impossible</u> for unit owners to exercise their rights to rent their units to tenants outside of Schecher's "Hotel Program".

20.     These following restrictions are purposeful, unreasonable, unconscionable, and violate the operative documents, the Access Order and the automatic stay:

### A. *Unit Owners Must Carry a Current Balance with Schecher*

21.     According to the HU Rules and Regs, "Owners who rent their own unit 'independently' outside of the Hotel Operation apporved [sic] and authorized by the HU <u>must not have a delinquent balance due the HU Owner</u>.  All rents collected must be paid to the HU Owner to reduce the Unit Owner's Balance as described in Florida Condominium Laws- this is the Number #1 Requirement for any individual Hotel Unit Owner wishing to rent his or her own unit on their own." (the "Current Balance Requirement"). HU Rules and Regs (emphasis added).

22.     There is no authority for Schecher to prohibit use and access to units on account of their being a balance owed to Schecher.  Schecher has certain rights under the governing documents and state law, none of which are preventing unit owners from accessing (or leasing) their units.

23.     In that Schecher physically holds the keys to the units,[5] he is affecting alleged self-help akin to an overzealous landlord (which would also be prohibited). Here, Schecher has

---

[5] Without consent, Schecher replaced all unit owners' locks with electronic locks to which only Schecher is able to program the electronic keys. Schecher can cancel access to any electronic key at any time. Even if a unit owner obtains an electronic key to their unit, at any moment Schecher can terminate the unit owner's access.

no ownership interest in any of the residential units and no lawful authority to impose the Current Balance Requirement.[6]

24.    In addition to the Current Balance Requirement, in a letter dated December 20, 2017 (the "Termination Letter") and posted to the Website, Schecher threatened to "terminate"[7] the provision of gas, water, electric, and trash pickup of "Seriously Past Due" unit owners.[8]

25.    Schecher's self-serving restrictions and tyrannical threats seek to force unit owners to pay the (disputed) sums he claims are due. Such tactics ought not to be countenanced by this Court.

### B.  *Maximum Stay Requirement*

26.    The HU Rules and Regs #1 unreasonably prohibit unit owners from renting their unit for more than 28 days (the "Maximum Stay Requirement").

27.    The Maximum Stay Requirement eliminates the option of unit owners to rent their units out seasonally. Many unit owners find that these longer-term rentals are more practical as they tend to reduce the administrative and operational costs for unit owners.

28.    Prior to the implementation of the HU Rules and Regs, unit owners regularly rented their units for more than 28 days.

29.    The Maximum Stay Requirement serves only as a burden to unit owners and prevent them use, lease, and enjoyment of their units.

---

[6] Presently, it appears that Schecher is, among other things: (i) foreclosing on units in state court; (ii) using units for the "Hotel Program" that are not enrolled in the "Hotel Program"; and (iii) threatening to cut off unit owners' utility services. All the while, the Debtor is investigating Schecher's expenses to determine whether it had received an honest count.

[7] It is unclear what the quotation marks surrounding the word "terminate" in the Termination Letter are meant to convey. Perhaps the threat of "terminating" utilities is somehow different from the threat of terminating utilities?

[8] Attached hereto as Exhibit "B" is a copy of the Termination Letter. **The Termination Letter is also an impermissible solicitation of a plan during the exclusivity period in direct violation of 11 U.S.C. §1125 and will be the subject of a further motion seeking sanctions against Schecher for such violations**.

### C.  *$250 Registration Fee*

30.    The HU Rules and Regs require unit owners outside Schecher's "Hotel Program" to pay a $250 "registration fee" "<u>regardless of term of rental.</u>" HU Rules and Regs #2.

31.    Presently, rooms at the Condominium can be rented on www.reservations.com from $209 per night.[9]

32.    The $250 Registration Fee is designed to eliminate unit owners' from entering into overnight and short-term rentals. The $250 Registration Fee itself exceeds the daily rate charged by Schecher. The $250 Registration Fee is intended to make short term rentals cost prohibitive for unit owners outside the "Hotel Program".

33.    Moreover, according to Schecher, 100% of the costs of managing, maintaining, operating and repairing the Shared Components (including the lobby and reception desk) are borne by the unit owners.[10]

34.    <u>It is wholly unreasonable to charge 100% of the costs of the operations to unit owners, and also layer in an additional expense as punishment for those unit owners, **like the Debtor**, who are not participating in Schecher's "Hotel Program."</u>

### D.  *$18 Daily Resort Fee*

35.    HU Rules and Regs #4 provide that in addition to the $250 Registration Fee, unit owner guests are required to pay: (i) an $18 per day "Resort Fee" (the "Resort Fee"); and (ii) a $30 per day valet fee (the "Valet Fee").

36.    Combined, the daily Resort Fee and Valet Fee are approximately $48 per day.

---

[9] See attached as Exhibit "C" a screen shot of http://www.reservations.com/hotel/sixty-sixty-resort?rmcid=rcc4 on January 20, 2017.

[10] Attached hereto as Exhibit "D" is an excerpt from Schecher's vendor expense spreadsheet demonstrating that operational costs of the hotel, such as front desk, housekeeping, maintenance and management charges of Condominium Hotel Management Corp. were included as shared costs and passed on to unit owners.

37.     These daily fees are entirely unreasonable and effectively prohibit rental of the units for extended periods of time. For example, a one month rental would cost a potential tenant approximately $1,440 in Resort and Valet Fees alone (which are pocketed 100% by Schecher and serve no value to unit owners).

38.     <u>Buttressed with the Registration Fee, Schecher's HU Rules and Regs effectively prohibit unit owners, including the Debtor, from entering into leases of any length.</u> Prohibiting unit owners (including the Debtor) from access and use of their units, even through economic exploitations, is in direct violation of the governing documents, the Access Order, the automatic stay and common decency.

## **RELIEF REQUESTED**

39.     The Debtor seeks entry of an order, pursuant to 11 U.S.C. §§ 362(a) and 105(a), and Federal Rules of Bankruptcy Procedure 9020 and 9014: (i) finding that Schecher has violated the Access Order and automatic stay by imposing unreasonable and unenforceable restrictions upon use and access of estate property (and other unit owners' units) in the form of the HU Rules and Regs; and (ii) sanctioning Schecher by, among other things: (A) compelling Schecher to provide reasonable access to, and use of, all units to all unit owners (including the Debtor); and  (B) enjoining Schecher from enforcing the unreasonable HU Rules and Regs.

40.     11 U.S.C. section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

41.     "The stay of section 362 is extremely broad in scope and . . . applies to almost any type of formal or informal action taken against the debtor or the property of the estate." 3 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 362.03 (16th rev. ed. 2013).

42.    Schecher has violated the automatic stay by, among other things, imposing unreasonable restrictions upon the access to and use of the Debtor's property. The Debtor is currently seeking a broker to operate a rental program for its own unit. The HU Rules and Regs have rendered the Debtor's units unmarketable.

43.    "To 'exercise control' is ''to exercise restraining or directing influence over' or 'to have power over.''" *In re Weidenbenner*, 521 B.R. 74, 79 (Bankr. S.D.N.Y. 2014) (*citing Amplifier Research Corp. v. Hart,* 144 B.R. 693, 694 (E.D. Pa. 1992). "Holding onto an asset, refusing to return it, and otherwise prohibiting a debtor's beneficial use of an asset all fit within this definition, as well as within the commonsense meaning of the word." *Amplifier* at 694.

44.    11 U.S.C. Section 105(a) allows "[t]he court [to] issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

45.    "Section 105(a) 'grants courts independent statutory powers to award monetary and other forms of relief for automatic stay violations to the extent such awards are 'necessary or appropriate' to carry out the provisions of the Bankruptcy Code.'" *In re Trafford Distrib. Ctr., Inc*., 414 B.R. 849, 857 (Bankr. S.D. Fla. 2009) (*citing Jove Eng'g v. IRS,* 92 F.3d 1539, 1555 (11th Cir. 1996)). The *Trafford* Court specifically found that the movant's damages included attorney fees and costs associated with defendant's stay violation (defendant's attempt to collect on assets which were property of the bankruptcy estate). *Id.*

46.    Sanctions under Section 105(a) are appropriate to make whole a party damaged by a violation of the automatic stay. *See In re Roxwell Performance Drilling, LLC,* No. 13-50301-RLJ-11, 2014 WL 2800767, at *4 (Bankr. N.D. Tex. June 19, 2014) (citing *In re San Angelo Pro Hockey Club, Inc.,* 292 B.R. 118, 124 (Bankr. N.D. Tex. 2003) (a "major purpose of civil contempt is to compensate a party for damages sustained as the result of a violation of a

court order or injunction. The automatic stay is a self-executing injunction, and therefore, for contempt purposes, constitutes an order issuing from the bankruptcy court.").

47.    A violation of the automatic stay is "willful if the violator (1) knew of the automatic stay and (2) intentionally committed the violative act, regardless whether the violator specifically intended to violate the stay." *In re Govero*, 439 B.R. 917, 921 (Bankr. S.D. Fla. 2010) (internal quotations omitted).

48.    Here, Schecher had knowledge of the Debtor's bankruptcy filing, was served with a copy of the Access Order, and acted and continues to act intentionally to exercise control over Debtor's (and other unit owners') property.

49.    In doing so, Schecher continues to harm the estate and its creditors.

50.    The Court is authorized to enter monetary and non-monetary sanctions when appropriate to redress stay violations. *Jove Eng'g, Inc. v. IRS,* 92 F.3d 1539, 1554 (11th Cir. 1996).

51.    Accordingly, it is appropriate to find that the Hotel Owner has violated the automatic stay and Access Order to enter an Order: (A) compelling Schecher to provide reasonable and unfettered access to (and use of) all units to the owners of such units (including the Debtor); and  (B) enjoining Schecher from enforcing the unreasonable HU Rules and Regs.

52.    WHEREFORE, the Debtor respectfully requests that the court enter an order: (1) finding that Schecher has violated the Access Order and automatic stay by imposing unreasonable and unenforceable restrictions upon use and access of estate property (and other unit owners' units) in the form of the HU Rules and Regs; (2) sanctioning Schecher by, among other things: (A) compelling Schecher to provide reasonable access to, and use of, all units to all unit owners (including the Debtor); and (B) enjoining Schecher from enforcing the unreasonable

10

HU Rules and Regs; and (3) granting such other and further relief as the Court deems just and proper.

Respectfully submitted this 23rd day of January.

> MESSANA, PA
> *Putative Counsel for the Debtor*
> 401 East Las Olas Boulevard, Suite 1400
> Fort Lauderdale, FL 33301
> Telephone: (954) 712-7400
> Facsimile: (954) 712-7401
> Email: blieberman@messana-law.com
>
> /s/ Brett D. Lieberman
> Thomas M. Messana
> Florida Bar No. 991422
> Brett D. Lieberman
> Florida Bar No. 69583

11

Exhibit "A"

# The New Sixty Sixty on the Bay

Home   Mail Box   Hotel Program   RULES & REGS   Owner Registration Forms
VELEZ FACTOR     Today's Update   Owner's Video Library   Deadbeat Owners
2017 VELEZ BOARD-RECALL PETITION (AGREEMENT)

## RULES & REGULATIONS



Owners who rent their own unit 'independently" outside of the Hotel Operation apporved and authorized by the HU must not have a delinquent balance due the HU Owner. All rents collected must be paid to the HU Owner to reduce the Unit Owner's Balance as described in Florida Condominium Laws- this is the Number #1 Requirement for any individual Hotel Unit Owner wishing to rent his or her own unit on their own.

CAUTION: The Condo Declarations are very clear regarding any such commercial hotel operations conducted on the Hotel premises by anyone other than the HU Owner and\or the Hotel Operator. More specific, all the hotel relate services or operations related to renting and servicing any unit offered for rent by anyone other than the HU Hotel Operation are clearly addressed in the Sixty-Sixty Condo Declarations - NO OUTSIDE CONTRACTORS are permitted on the Sixty-Sixty property to provide any type of Hotel Service of any kind to individual Hotel Unit Owner - please refer to the Sixty Sixty Condominium Declarations for more particulars.

PLEASE NOTE - The Schecher Group HU Owner is NOT the Hotel Operator. The Hotel Operator rents the HU property from the Schecher Group and the Hotel Operator is "Casablanca Rental Services" the "official HU authorized Hotel Operator for our Building.

As we reopen in 2017 there are approximately 50 Unit Owners under contract with "CRS" and part of the Hotel Program. These owners are the people responsible for getting our building open and operational by participating in the "PLAN" created by the HU Owner in cooperation with Casablanca Rental Services. The Hotel Operation has approximately 50 out of 82 Units on the Program with another 16 indicating that they wish to join in 2017. This means that today we have 61% of all owners under contract on the Hotel Program and the projection for 2017 is that 80% of all Owners will be on the Hotel Program before the end of 2017 and this will guarantee our building will never close again.

## SIXTY SIXTY HU RULES & REGULATIONS

1. <u>TERM OF UNIT OCCUPANCY PERMITTED</u>: Owners who are not delinquent in their HU Fees (No Balance Due HU) may rent their unit for no more than one month or 28 days which ever is less.  If an Owner is delinquent in HU Fees, the rental revenue must be paid to the HU until such time as the HU Balance Due is $0.00.

2. <u>Owners renting outside of the Hotel Program</u>, on their own or thru an outside agent, are required to pay a $250 Registration Fee for all rentals effective 12/1/2016 regardless of the term of rental.  NOTE- the $250 Fee applies only to Owners with a "Past Due" or delinquent HU Balance.  All other owners pay a $30 per reservation Registration Fee. Owners are required to submit a guest pre-registration form at least 48 hours prior to the guest arrival. No exceptions.

3. <u>Owners renting outside of the Hotel Program</u> must provide: (1) Copy of transient rental license from the City of Miami Beach (2) Copy of Florida Sales Tax Certificate with Sales Tax Number (3) Proof of filing of Florida Sales Tax (4) A copy of a valid Certificate of Liability Insurance naming the Schecher Group, Inc as an "Additional Named Insured" with limits no less than $1,000,000 CSL.  Note- in the absence of proof of tax being collected, the guest will pay the required state & resort tax at time of registration based upon the average daily rate of a Hotel room per the Internet booking sites for the Hotel.

4. <u>GUEST FEES</u>:  Upon registration, in addition to the fee listed in #2 above, guests are required to pay the following upon registration:  Daily Resort Fee of $18, Daily Valet Parking Fee of $30, Refundable Key Deposit of $10. There will be a 4.5% surcharge for all payments made by credit card and AMX Cards are not accepted.

5. <u>PARKING</u>:  Effective 12/1/2016, All Parking at the Sixty Sixty is by Valet Only. Owners who are not delinquent on their HU Fees are able to valet park for FREE provided their unit is not rented to a Hotel guest. Delinquent Owners are subject to the same valet parking fee of $30 as registered guests. <u>Only the Deed Holder  owner of the unit</u> is entitled to valet park for FREE and all FREE parking for Owners is at the discretion of the HU Owner at all times.

6. <u>COOKING IN ROOMS</u>:  There is no cooking permitted in any hotel rooms at any time. Any owner or owner's guest who violate this rule will be fined $150 per day and access to the building may be denied until such time as the fine is paid in full. Note- Owners are responsible for all damages and\or fines levied or created by their guests.

7. <u>TOWING RULES</u>:  All parking at the Sixty Sixty is Valet Only. Any vehicles parked without the proper valet sticker will be towed at the owners expense. NO EXCEPTION & NO WARNING WILL BE GIVEN.

8. <u>OUTSIDE CONTRACTORS</u>:  All Outside Contractors must register with the HU Management Office during regular business hours and MUST provide (1) Copy of Business License (2) Proof of Insurance (Certificate of Insurance) naming the Schecher Group as "additional insured" (3) Proof of WORKERS COMPENSATION Insurance

9. <u>CONTRACTOR WORK HOURS</u>: Contractors are permitted to work in an Owner's Individual Unit Only. (1) No work may take place or be preformed on any "Shared Components" (2) Contractors may only work Monday thru Friday between the Hours of 8:30am to 4:30pm (3) Contractors violating this rule will be ejected from the property and future access will be denied.

Exhibit "B"

# SCHECHER GROUP, Inc.

Sixty Sixty HU (Shared Component)

120 Piper Blvd.
Port Orange, Florida 32128954-304-4956
Email: rschecher@schechergroup.com

December 20, 2017

Dear Sixty Sixty Owners:

RE:  HU Unit Balance Seriously Past Due

You are receiving this letter (Email), in the event you may be one of the <u>Delinquent Owners</u> at the Sixty Sixty with a seriously "past due" HU Balance.  Seriously Past Due being defined as someone who has not made any HU payments for 3 months or more.  Regretfully it is now necessary to take drastic action to collect payments from this class of owners and the "Collection\Delinquent Fees" will be huge but easily avoidable if you pay or at least start making a reasonable effort to make payments that will reduce your balance to an acceptable level.  <u>Effective immediately, for all Seriously Delinquent Owners, your Unit's Shared Component Services as well as your use of the HU "Amenities" are are scheduled to be "suspended" until such time as you have paid your HU Balance in full or made arrangements to reduce your HU Unit Balance based upon a reasonable repayment plan.</u>

You failure to make any effort to pay your HU Account will no longer be tolerated as it creates a financial hardship for the responsible owners who have paid, or who are on an approved "payment plan". In addition your unwillingness to pay jeopardizes the ability of the building to remain open and operational.  Therefore, as a direct result of your unwillingness or refusal to pay the following action becomes necessary:

1.    Per the Sixty Sixty Condominium Declarations, you will be charged the maximum late fee allowable by the Sixty Sixty Condominium Declarations which is a monthly <u>amount up to or equal to your HU Monthly Shared Component Fee.</u>  Your February HU Monthly Ledger will reflect these revised charges for each delinquent month which could be as much as $20,000 for certain owners.

2.    All Shared Component Services including but not limited to: gas, water, electric, trash pickup, use of building amenities will be "terminated" effective immediately (subject to a 5 day grace period to allow payment of your outstanding HU Balance or the acceptance of an approved payment plan).

You are encouraged to make the required payment or payment arrangements to "avoid" the termination of your building Shared Component Services & Amenities as no other "Notice" will be provided.  If your Unit

is on the Casablanca Hotel Program "HOTEL PROGRAM" and you have a contract that authorized CRS to make your monthly "HU Shared Component" payments your services will not be "terminated". However, you are required to make arrangements to commence a reasonable payment plan to reduce your outstanding balance as the monthly Hotel Revenue will most likely offset future maintenance fees and not the huge outstanding balance you currently maintain.  However, in order to avoid the Late Penalty you are encouraged to make arrangements to pay down your current balance with at least a 40% deposit of the outstanding balance.

If you have a financial hardship, you are encouraged to make an appointment with the HU Owner to review your particular situation and work out possible alternative options, if possible. It is important to note that once the balances of the "seriously delinquent owners" have been paid or when the majority of seriously Delinquent Owners become "current under a payment plan" the likely hood of a monthly HU Fee "reduction" should become a reality and we could experience monthly fee reductions in the 22%  to 40% range moving forward into late 2017 and 2018.

Moving into the future our building is "guaranteed" to remain open and operational thanks to the 50+ Owners who are on the Hotel Program.   It is the cash flow generated by the Hotel Program and the participating unit owners who use the Hotel to pay their monthly fees which in turn, keep our building open that provides the "guarantee" that our building will never close again.

I would like to personally thank every participating owner on the Hotel Program as our building would still be closed if it had not been for these Owners and the cash flow generated by the Hotel that pays our monthly bills required to keep the building open.

The "GOOD NEWS" is that I have been able to lower many of the bills associated with our Building and I have been able to negotiate a reduction in many of the "Past Due Balances" such as getting the Phone Company to lower the $150,000 Demand down to $50,000 which is almost now paid in full.

I will be updating Owners in the next several weeks on many very positive things taking place at the Sixty Sixty including my "Alternative Association Budget" that will lower the Association Dues by over 90% and totally remove the financial responsibility of the Association to pay the costs associated with the Commercial Units which represent almost $3,000,000 in savings over the next 10 years.

Today, we are open, we are operational and we are making progress as our building is like NEW and our bills are being paid thanks to the Hotel and the individual unit owners who participate on the Hotel Program.   For those Owners on the HOTEL Program they should be receiving fantastic news about the Hotel Operator's new contract with Booking Partners that should SELL OUT at least 90% of our room nights for the entire 2017 year.  This Good News means we need more unit owner to join the Hotel Program

and start enjoying the monthly revenues that put money directly into your pocket or help pay your cost of ownership at the Sixty.

BIG SAVINGS NOW! - In the next 10 days I will be mailing (email) every Sixty Sixty Owner an ALTERNATIVE BUDGET to Velez recently passed $750,000+ Association Budget along with a PLAN to exit Bankruptcy immediately.   My <u>BUDGET & BANKRUPTCY EXIT PLAN</u> will immediately do several things: (1) Reduce the Association Budget by approximately 90%- save you over $500 per month (2) End the bankruptcy and all the related costs - save you over $350,000 immediately (3) Eliminate the Associations financial obligation to fund the Commercial Units - saves you over $3,000,000 over the next 10 years (4) Announce "Huge Savings" in the HU Budget which includes insurance, payroll, and other key expenses.

Sincerely yours,

Richard J. Schecher, Sr.

Exhibit "C"

**RESERVATIONS•COM**                              RESERVATIONS  |  855-516-1090

# (HTTP://WWW.RESERVATIONS.COM)

## SIXTY SIXTY RESORT ★★★                                    RESERVE

6060 INDIAN CREEK DRIVE,  MIAMI BEACH,  FL  33140   ☎ 855-516-1090

(http://www.facebook.com/Reservationscom-242476565936780/)

(https://plus.google.com/107433878023833468727)

(http://twitter.com/intent/follow?source=followbutton&variant=1.0&screen_name=reservationscom)

(http://www.pinterest.com/reservememories)



3.0  **Poor** ▰▰▰
     138 reviews

from **$209** per night

**SEE ROOMS & RATES**



VIEW ALL 22 PHOTOS

| CHECK IN | CHECK OUT | ROOMS | ADULTS | KIDS |
|---|---|---|---|---|
| | | 1 | 2 | 0 |

**CHECK ROOM RATES**

Click here for Group Reservations (5+ Rooms) (http://groups.reservations.com/)

## CHECK ROOM TYPES & RATES


**STANDARD ROOM**
View room details and amenities ()

CHECK RATES

⏱ Limited time unbeatable rates!

**CITY ROOM, 1 QUEEN BED WITH SOFABED, PARTIAL SEA VIEW**
View room details and amenities ()

CHECK RATES

⏱ Limited time unbeatable rates!





**STANDARD ROOM, 1 QUEEN BED WITH SOFABED, BAY VIEW**

View room details and amenities ()

CHECK RATES

⏱ Limited time unbeatable rates!



**STANDARD ROOM**

View room details and amenities ()

CHECK RATES

⏱ Limited time unbeatable rates!



**CITY ROOM, 2 DOUBLE BEDS, PARTIAL SEA VIEW**

View room details and amenities ()

CHECK RATES

⏱ Limited time unbeatable rates!



**STANDARD ROOM, 2 DOUBLE BEDS, BAY VIEW**

View room details and amenities ()

CHECK RATES

⏱ Limited time unbeatable rates!

## GROUP RATES (5+ Rooms)

**Save up to 70%! Get group rates for Weddings, Meetings or Any Event!**
Lowest Group Rates Available
We have special group rates and discounts for any type of group!



GROUP RATES (5+ ROOMS) (HTTP://GROUPS.RE

## ABOUT THE HOTEL

TRUSTSCORE

38 Reviews

**60**
*by TrustYou™*

★ 5
★ 4
★ 3
★ 2
★ 1

16
43
32
26
44

ⓘ

Couples
**100%**
(138)

### AT A GLANCE

Relax and simply enjoy your much deserved break when you book your stay at the Sixty Sixty Resort. Take advantage of the hotels central location as well as the modern facilities featured in the hotel. Well-trained and friendly hotel staff will even make your stay even more rewarding.

**IN AND AROUND**

- Enjoy shopping or great ashion ind and souvenirs featured at the Lincoln Road Mall
- Bike around the pretty lawn and landscaped areas around the vibrant South Beach
- Book or interesting historical tours that starts at the amous landmark, The Art Dco Welcome Center
- Marvel at the one of a kind artworks treasured at the Bass Musuem of Arts
- Stroll and unwind around the hotel and entertainment venues located around the busy town of Miami Beach

**YOU SHOULD KNOW**

- Complimentary breakfast can be enjoyed while staying in the hotel
- Enjoy free coffee and tea served at the lobby to hotel guests
- Take advantage of the complimentary wireless internet access available in your rooms and public areas
- Complimentary parking spaces are featured onsite
- Discount can be availed by guests who would want to try the fitness center available onsite

**FEATURED AMENITIES** 

- 24-hour front desk
- Free wired high-speed Internet
- Luggage storage
- Outdoor pool
- Total number of rooms - 50

- Accessible bathroom
- In-room accessibility
- Multilingual staff
- Porter/bellhop
- Tours/ticket assistance

- Concierge services
- Laundry facilities
- Number of floors - 16
- Smoke-free property
- Valet parking (surcharge)

## LOCATION

Distances are calculated in a straight line from the property's location to the point of interest or attraction, and may not reflect actual travel distance.

Distances are displayed to the nearest 0.1 mile and kilometer.
North Shore Open Space Park - 2.3 km / 1.5 mi
Eden Roc Renaissance Miami Beach - 2.7 km / 1.7 mi
Fontainebleau - 2.9 km / 1.8 mi
Mount Sinai Medical Center - 3.7 km / 2.3 mi
Surfside Beach - 4.4 km / 2.7 mi
Bal Harbour Shops - 5 km / 3.1 mi
Miami Beach Golf Club - 5 km / 3.1 mi
Miami City Ballet - 5.2 km / 3.2 mi
Bass Museum of Art - 5.2 km / 3.2 mi
Miami Beach Botanical Garden - 5.5 km / 3.4 mi
Holocaust Memorial - 5.6 km / 3.5



## TRAVELER SENTIMENTS



## GUEST REVIEWS

tripadvisor®

Sorry! We can't find the content you're looking for.

To make a new reservation call 855-516-1090    |    Group Reservations (http://groups.reservations.com)

Need help with existing reservation? **Contact Customer Support** (http://support.reservations.com)

*All prices in USD

Home (http://www.reservations.com)    About (http://www.reservations.com/about)    Terms (http://www.reservations.com/terms)    Privacy
(http://www.reservations.com/policy)

© Reservations.com. All rights reserved.

http://www.reservations.com/hotel/sixty-sixty-resort?rmcid=rcc4                    1/20/2017

Exhibit "D"

Date 01/13/17        SG Sixty Sixty Shared Component       #8304   Page: 33

### V E N D O R   H I S T O R I E S

Starting name: A&D        Starting date: 05/22/13
Ending name:  ZURWHI      Ending date:  01/12/17





| Vendor: | CONDOMINIUM HOTEL MANGT CORP | Contact: | |
| | 6345 Collins Ave | Phone #: | |
| | miami Bech,FL. 33141 | First date: | 00/00/00 |
| | | Comment: | |

| Date | Type | Doc-# | Reference | Amount | Balance |
|------|------|-------|-----------|--------|---------|
| 05/26/13 | Bill | 5/13-5/2 | 5/13-5/26 Fdesk | 3,238.63 | 3,238.63 |
| 05/26/13 | Bill | 5/13-5/2 | 5/13-5/26 Hskp | 893.35 | 4,131.98 |
| 05/26/13 | Bill | 5/13-5/2 | 5/13-5/26 Maint | 857.33 | 4,989.31 |

Date 01/13/17  SG Sixty Sixty Shared Component  #8304  Page: 34

VENDOR HISTORIES

Starting name: A&D  Starting date: 05/22/13
Ending name:  ZURWHI  Ending date:  01/12/17

| Date | Type | Ref | Description | Amount | Balance |
|---|---|---|---|---|---|
| 05/26/13 | Bill | 5/13-5/2 | 5/13-5/26 Mangt | 1,040.00 | 6,029.31 |
| 05/26/13 | Bill | 5/13-5/2 | 5/13-5/26 W.Comp | 863.99 | 6,893.30 |
| 07/23/13 | Check | 1060 | Computer check | 3,238.63 CR | 3,654.67 |
| 07/23/13 | Check | 1060 | Computer check | 893.35 CR | 2,761.32 |
| 07/23/13 | Check | 1060 | Computer check | 857.33 CR | 1,903.99 |
| 07/23/13 | Check | 1060 | Computer check | 1,040.00 CR | 863.99 |
| 07/23/13 | Check | 1060 | Computer check | 863.99 CR | .00 |
| 06/01/13 | Bill | JUNE MAN | June Mangt Fees | 2,009.00 | 2,009.00 |
| 06/10/13 | Check | 1022 | Computer check | 2,009.00 CR | .00 |
| 06/09/13 | Bill | 5/27-6/0 | 5/27-6/09 P/R1 F.D. | 3,593.77 | 3,593.77 |
| 06/09/13 | Bill | 5/27-6/0 | 5/27-6/09 P/R2 Hskp | 985.75 | 4,579.52 |
| 06/09/13 | Bill | 5/27-6/0 | 5/27-6/09 P/R3 Maint | 909.19 | 5,488.71 |
| 06/09/13 | Bill | 5/27-6/0 | 5/27-6/09 P/R4 Mangt | 1,040.00 | 6,528.71 |
| 06/09/13 | Bill | 5/27-6/0 | 5/27-6/09 P/R5 Wcomp | 899.64 | 7,428.35 |
| 08/23/13 | Check | 1091 | Computer check | 3,593.77 CR | 3,834.58 |
| 08/23/13 | Check | 1091 | Computer check | 985.75 CR | 2,848.83 |
| 08/23/13 | Check | 1091 | Computer check | 909.19 CR | 1,939.64 |
| 08/23/13 | Check | 1091 | Computer check | 1,040.00 CR | 899.64 |
| 08/23/13 | Check | 1091 | Computer check | 899.64 CR | .00 |
| 06/23/13 | Bill | 6/10-6/2 | 6/10-6/23 P/R 1 FD | 3,250.49 | 3,250.49 |
| 06/23/13 | Bill | 6/10-6/2 | 6/10-6/23 P/R 2 Hskp | 941.17 | 4,191.66 |
| 06/23/13 | Bill | 6/10-6/2 | 6/10-6/23 P/R 3 Maint | 913.57 | 5,105.23 |
| 06/23/13 | Bill | 6/10-6/2 | 6/10-6/23 P/R 4 Mangt | 1,040.00 | 6,145.23 |
| 06/23/13 | Bill | 6/10-6/2 | 6/10-6/23 P/R 5 WComp | 841.58 | 6,986.81 |
| 08/21/13 | Check | 1088 | Computer check | 3,250.49 CR | 3,736.32 |
| 08/21/13 | Check | 1088 | Computer check | 941.17 CR | 2,795.15 |
| 08/21/13 | Check | 1088 | Computer check | 913.57 CR | 1,881.58 |
| 08/21/13 | Check | 1088 | Computer check | 1,040.00 CR | 841.58 |
| 08/21/13 | Check | 1088 | Computer check | 841.58 CR | .00 |
| 07/01/13 | Bill | JULY MAN | July Mangt | 2,009.00 | 2,009.00 |
| 07/12/13 | Check | 1052 | Computer check | 2,009.00 CR | .00 |
| 07/07/13 | Bill | 6/24-7/7 | 6/24-7/7 P/R 1 | 3,710.61 | 3,710.61 |
| 07/07/13 | Bill | 6/24-7/7 | 6/24-7/7 P/R 2 | 828.08 | 4,538.69 |
| 07/07/13 | Bill | 6/24-7/7 | 6/24-7/7 P/R 3 | 925.06 | 5,463.75 |
| 07/07/13 | Bill | 6/24-7/7 | 6/24-7/7 P/R 4 | 1,040.00 | 6,503.75 |
| 07/07/13 | Bill | 6/24-7/7 | 6/24-7/7 P/R 5 | 875.64 | 7,379.39 |
| 09/10/13 | Check | 1113 | Computer check | 3,710.61 CR | 3,668.78 |
| 09/10/13 | Check | 1113 | Computer check | 828.08 CR | 2,840.70 |
| 09/10/13 | Check | 1113 | Computer check | 925.06 CR | 1,915.64 |
| 09/10/13 | Check | 1113 | Computer check | 1,040.00 CR | 875.64 |
| 09/10/13 | Check | 1113 | Computer check | 875.64 CR | .00 |

Date 01/13/17                          SG Sixty Sixty Shared Component                          #8304  Page: 35

V E N D O R   H I S T O R I E S

Starting name: A&D              Starting date: 05/22/13
Ending name:  ZURWHI             Ending date:  01/12/17

| Date | Type | Ref | Description | Amount | Balance |
|------|------|-----|-------------|-------:|--------:|
| 07/21/13 | Bill | 7/08-07 | 07/08-07/21P/R1F.Desk | 3,461.49 | 3,461.49 |
| 07/21/13 | Bill | 7/08-07 | 07/08-07/21 Hskp | 944.72 | 4,406.21 |
| 07/21/13 | Bill | 7/08-07 | 07/08-07/21P/R3 Maint | 886.31 | 5,292.52 |
| 07/21/13 | Bill | 7/08-07 | 07/08-07/21 Mangt | 1,040.00 | 6,332.52 |
| 07/21/13 | Bill | 7/08-07 | 07/08-07/21 WComp | 865.00 | 7,197.52 |
| 10/15/13 | Check | 1147 | Computer check | 3,461.49 CR | 3,736.03 |
| 10/15/13 | Check | 1147 | Computer check | 944.72 CR | 2,791.31 |
| 10/15/13 | Check | 1147 | Computer check | 886.31 CR | 1,905.00 |
| 10/15/13 | Check | 1147 | Computer check | 1,040.00 CR | 865.00 |
| 10/15/13 | Check | 1147 | Computer check | 865.00 CR | .00 |
| 08/01/13 | Bill | AUG MANG | AUG MANGT FEES | 2,009.00 | 2,009.00 |
| 07/22/13 | Check | 1053 | | 2,009.00 CR | .00 |
| 08/04/13 | Bill | 7/22-8/4 | 7/22-8/4 P/R1 F.D. | 3,613.12 | 3,613.12 |
| 08/04/13 | Bill | 7/22-8/4 | 7/22-8/4 P/R2 Hskp | 949.62 | 4,562.74 |
| 08/04/13 | Bill | 7/22-8/4 | 7/22-8/4 P/R3 Maint | 820.53 | 5,383.27 |
| 08/04/13 | Bill | 7/22-8/4 | 7/22-8/4 P/R4 Mangt | 2,963.08 | 8,346.35 |
| 08/04/13 | Bill | 7/22-8/4 | 7/22-8/4 P/R5 W.Comp | 1,125.52 | 9,471.87 |
| 10/15/13 | Check | 1148 | Computer check | 3,613.12 CR | 5,858.75 |
| 10/15/13 | Check | 1148 | Computer check | 949.62 CR | 4,909.13 |
| 10/15/13 | Check | 1148 | Computer check | 820.53 CR | 4,088.60 |
| 10/15/13 | Check | 1148 | Computer check | 2,963.08 CR | 1,125.52 |
| 10/15/13 | Check | 1148 | Computer check | 1,125.52 CR | .00 |
| 08/14/13 | Bill | 8/05-8/1 | 8/05-8/18 P/R3 Maint | 922.08 | 922.08 |
| 11/01/13 | Check | 1169 | Computer check | 922.08 CR | .00 |
| 08/18/13 | Bill | 8/05-8/1 | 8/05-8/18 P/R1F.D. | 3,494.69 | 3,494.69 |
| 08/18/13 | Bill | 8/05-8/1 | 8/05-8/18 P/R2 Hskp | 935.31 | 4,430.00 |
| 08/18/13 | Bill | 8/05-8/1 | 8/05-8/18 P/R4 Mangt | 1,040.00 | 5,470.00 |
| 08/18/13 | Bill | 8/05-8/1 | 8/05-8/18 P/R5 | 862.35 | 6,332.35 |
| 11/01/13 | Check | 1169 | Computer check | 3,494.69 CR | 2,837.66 |
| 11/01/13 | Check | 1169 | Computer check | 935.31 CR | 1,902.35 |
| 11/01/13 | Check | 1169 | Computer check | 1,040.00 CR | 862.35 |
| 11/01/13 | Check | 1169 | Computer check | 862.35 CR | .00 |
| 09/01/13 | Bill | SEPT MAN | Sept Mang | 2,009.00 | 2,009.00 |
| 09/01/13 | Bill | 8/19-9/1 | 8/19-9/1 P/R1 F.Desk | 3,468.23 | 5,477.23 |
| 09/01/13 | Bill | 8/19-9/1 | 8/19-9/1 P/R2 Hskp | 911.45 | 6,388.68 |
| 09/01/13 | Bill | 8/19-9/1 | 8/19-9/1 P/R3 Maint | 808.45 | 7,197.13 |
| 09/01/13 | Bill | 8/19-9/1 | 8/19-9/1 P/R4 Mangt | 1,040.00 | 8,237.13 |
| 09/01/13 | Bill | 8/19-9/1 | 8/19-9/1 P/R5 | 827.61 | 9,064.74 |
| 08/29/13 | Check | 1092 | Computer check | 2,009.00 CR | 7,055.74 |
| 11/14/13 | Check | 1182 | Computer check | 3,468.23 CR | 3,587.51 |
| 11/14/13 | Check | 1182 | Computer check | 911.45 CR | 2,676.06 |