## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

In re:

Sixty Sixty Condominium Association, Inc.                    Case No. 16-26187-RAM

        Debtor-in-Possession.                                Chapter 11

_____/

## DEBTOR'S MOTION FOR AUTHORITY TO ENGAGE
## PROPERTY MANAGER AND APPROVE MANAGEMENT TERMS

---

**Special Set Hearing Requested on May 2, 2017**

**Through this Motion, Debtor seeks authority, but not the obligation, to enter into a property management agreement to manage and rent its real property and offer residential unit owners the option of engaging said property manager for the rental of their units. Debtor also seeks to provide an opportunity for alternative managers to make higher or better proposals to Debtor prior to the hearing on this Motion (the "Hearing"). Debtor requests that such proposals be delivered to Debtor's undersigned counsel on or before 4:30 pm EST on April 28, 2017 pursuant to the terms herein. Debtor respectfully requests that this Motion be set on or after May 2, 2017 to provide alternative potential managers an opportunity to submit "higher and better" offers in advance of, and to be considered at, the Hearing.**

---

Sixty Sixty Condominium Association, Inc., the Chapter 11 debtor and debtor-in-possession herein (the "Debtor"), by and through undersigned counsel, pursuant to 11 U.S.C. §§327, 330, and 331, Rule 2014 of the Federal Rules of Bankruptcy Procedure, and Rule 6005-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida, applies for the entry of an Order[1] authorizing, but not requiring, Debtor to enter into a management agreement (a "Management Contract") with Florida Luxury Rentals ("FLR") or any other qualified manager (including FLR, a "Manager") as debtor's real estate manager and to assist in the rental and management of Debtor's (and other residential unit owners who choose to participate) property on terms substantially similar to, or better than, those contained within the *Management Agreement*[2] proposed by FLR, subject to the terms and conditions delineated

---

[1] Pursuant to Local Rule 6005-1, a proposed form of order is annexed hereto as Exhibit A.
[2] FLR's "*Management Agreement*" is attached hereto as Exhibit "C" and as Exhibit "C" to the Disclosure Statement (ECF #150).

herein, to approve the payment scheme in accordance therewith, and to authorize the Debtor to take any and all action necessary to manage and rent its units (this "Application"), and in support thereof states as follows:

## Preliminary Statement

1.      By this Application, Debtor seeks authority, but not the obligation, to retain a Manager pursuant to a Management Agreement in terms substantially similar to, or better than, the FLR Management Agreement. Debtor believes that a Manager's services may be essential to market and promote the Debtor's property and maximize the property's rental value and that having the authority to enter into such retention is in the best interests of the estate.

## Jurisdiction and Background

2.      On December 5, 2016, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (ECF #1).

3.      The Debtor is a not-for-profit condominium association for a condominium located at 6060 Indian Creek Drive in Miami Beach, Florida (the "Condominium").

4.      The Condominium is composed of 87 "units", which includes: (i) 82 residential units (the "Residential Units") that are owned by the Residential Unit owners (the "RUOs");[3] (ii) four commercial units (the "Commercial Units")[4] and, (iii) generally speaking, all areas not within a Residential Unit or Commercial Unit are deemed to be a part of a hotel unit (the "HU") owned and operated by the Schecher Group, Inc. (the "HUO").

5.      The Debtor owns, among other things, four commercial units and one residential unit (the "Units") within the Condominium. The other residential units are owned by non-debtors.

---

[3] The Debtor owns one of the Residential Units; unit 505.
[4] The Commercial Units are comprised of a restaurant space (the "Restaurant") and three open terraces (the "Terraces" that have challenges to producing income possibilities.

6.      The Debtor filed its *Plan of Reorganization of Sixty Sixty Condominium Association, Inc.* (ECF No. 149) (the "Plan") and its *Disclosure Statement in Support of Plan of Reorganization of Sixty Sixty Condominium Association, Inc.* (ECF No. 150) (the "DS") on March 17, 2017.

7.      The Plan and DS contemplate the Association facilitating a rental program for its own units and for those Residential Units who choose to participate (the "Rental Program").

8.      As of the date hereof, no creditors' committee has been appointed in this case. In addition, no trustee or examiner has been appointed.

9.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(A), (M) & (O).

<u>**Relief Requested**</u>

10.     Section 327(a) of the Bankruptcy Code authorizes "a trustee, with court approval, to employ one or more attorneys, accountants, appraisers, auctioneers or other professional persons that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties."

11.     Debtor has the powers of a trustee under 11 U.S.C. § 1107.

12.     Debtor desires the authority to employ a Manager to assist in the rental of Debtor's Units pursuant to a Management Contract, subject to the terms and conditions delineated in this Motion, and to effectuate the Rental Program.

13.     Debtor also seeks authority to retain a Manager to conduct leasing of certain Residential Units who choose to participate and the Units in advance of a potential sale of the Property. Debtor believes that Manager's services would maximize value for the creditors and

the estate and that retention of Manager is in the best interests of the estate.

**A.      Qualification and Selection of Manager**

14.      Debtor has selected FLR due to its excellent reputation, resources, and experience with rentals and leases of properties like the Property.

15.      FLR is one of the premier, full-service leasing, brokering, and marketing residential real estate companies in South Florida.

16.      FLR is comprised of highly trained and skilled individuals with backgrounds in real estate, development, sales, and marketing.

17.      Granting the Debtor authority to retain a Manager is in the best interest of the estate.  A Manager will set forth a comprehensive and robust marketing plan designed to increase revenues from the participating Residential Units and the Units through leasing and renting those properties.  By creating a thriving market and increased demand for the Units, the Manager will maximize the value through increased revenue stream.

**B.      The Manager's Disinterestedness**

18.      As stated in the Declaration of FLR attached hereto as Exhibit B, FLR does not hold or represent an interest adverse to Debtor's estate and is "disinterested" within the meaning of sections 101(14) and 327(a) of the Bankruptcy Code.

19.      The terms of FLR's engagement are more fully set forth in Management Agreement attached hereto as Exhibit "C".

**C.      Manager's Employment and Compensation[5]**

20.      The Manager's compensation will be based upon a "contingency fee" model. That is, the Manager is entitled to a fee in an amount equal to fifty percent (50%) of the Gross

---

[5] To the extent there is any conflict between the Management Agreement attached hereto as Exhibit "C" and this Motion, the terms of the Management Agreement shall control.

Revenue, as that term is defined in the attached Management Agreement, which is actually collected during the month. Manager's compensation will be paid out of the rents from the rental of the Units and those Residential Units which opt-in to the Rental Program.

**D.**     **"Best and Final" Offer Submission Procedures**

21.     Alternative potential Managers, must deliver an executed management agreement in a form substantially similar to, but "higher and better" than, the Management Agreement (a "Best and Final Offer") by 4:30 pm EST on April 28, 2017 to undersigned counsel via e-mail. However, FLR reserves the right to amend the terms of its proposed Management Agreement at or prior to the Hearing.

22.     For consideration, a Best and Final Offer must be accompanied by (i) a form management agreement which is substantially similar to, but "higher and better" than, the Management Agreement; and (ii) a declaration of manager which establishes the proposed Manager's disinterestedness in an appropriate form.

23.     All Best and Final Offers shall be kept confidential until one business day prior to the Hearing, upon which time all such offers shall be available for disclosure to any prospective Manager who submitted a Best and Final Offer and to the Court. Best and Final Offers shall not contain confidentially provisions.

24.     The "highest and best" Best and Final Offer, in the Debtor's sole determination (the "Winning Management Agreement"), shall be submitted to the Court at the Hearing whereupon Debtor shall request authority, but not the obligation, to enter into the Winning Management Agreement on the terms therein.

25.     Debtor hereby requests that the Court grant this Motion after notice to parties-in-interest and upon a hearing. In order to preserve and maximize the value of the Units, it is

critical for the Debtor to obtain authority, but not the obligation, to enter into a Management Agreement to provide Debtor an opportunity to coordinate a program to lease participating Residential Units and Units on an expedited basis.

26.     Additionally, to the extent Debtor has to take any steps to acquire any license necessary to facilitate the Rental Program, Debtor requests authority to do so.

Wherefore, Debtor respectfully requests an Order in substantially the form attached hereto as Exhibit A (i) granting this Motion; (ii) approving the Winning Management Agreement as this Court determines; (iii) approving the retention and compensation of the Manager of the Winning Management Agreement on terms substantially consistent with the Winning Management Agreement; (iv) authorizing the Debtor to take and any all action necessary to effectuate the Rental Program including applying for and obtaining any and all licenses necessary to do so; and (v) for such further relief as this Court deems just and proper.

Dated: April 7, 2017.                 Respectfully Submitted,

                                     MESSANA, P.A.
                                     *Counsel for Debtor*
                                     401 East Las Olas Boulevard, Suite 1400
                                     Fort Lauderdale, Florida 33301
                                     Telephone:  (954) 712-7400
                                     Facsimile:   (954) 712-7401
                                     Email:  blieberman@messana-law.com

                                     /s/ Brett D. Lieberman
                                     Thomas M. Messana, Esq.
                                     Florida Bar No. 991422
                                     Brett Lieberman, Esq.
                                     Florida Bar No. 0730041

# EXHIBIT "A"

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:

Sixty Sixty Condominium Association, Inc.                Case No. 16-26187-RAM

      Debtor-in-Possession.                Chapter 11
_____/

**ORDER GRANTING DEBTOR'S MOTION FOR AUTHORITY TO ENGAGE**
**PROPERTY MANAGER AND APPROVE MANAGEMENT TERMS**

THIS MATTER came before the Court on May _, 2017 at 2:00 p.m., upon *Debtor's*

*Motion for Authority to Engage Property Manager and Approve Management Terms* (D.E. #

____) (the "Motion") and the Court, having reviewed the Motion, the Winning Management

Agreement,[6] and the and the Declaration of _____ in support thereof, and finding that due and

adequate notice was provided to all parties-in-interest and otherwise finding good cause to grant

the relief requested, it is

      **ORDERED** as follows:

      1.     The Motion is GRANTED.

---

[6] All capitalized terms not defined herein shall have the same meaning as ascribed to them in the Motion.

2.      Debtor is authorized, but not required, to retain _____, as the Manager to perform those services identified in the Motion and the Winning Management Agreement and the payment processes referenced in the Motion and the Winning Management Agreement are approved.

3.      The Court hereby approves the Winning Management Agreement.

4.      The Court finds that _____ is disinterested.

5.      Specifically, Debtor is authorized to compensate _____, the Manager, as described in the Motion and Winning Management Agreement in the ordinary course of business without further order of this court.

6.      The Debtor is authorized to enter into the Winning Management Agreement with _____ on substantially the same terms as the Winning Management Agreement.

7.      The Debtor is authorized to take and any all action necessary to effectuate a Rental Program including applying for and obtaining any and all licenses necessary to do so.

###

Submitted by:

Brett D. Lieberman, Esq.
Messana, P.A.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Telephone:  (954) 712-7406
Facsimile:  (954) 712-7401

Copy furnished to

Brett D. Lieberman, Esq., who is directed to serve a conformed copy of this order on all interested parties and file a certificate of service with the Court.

# EXHIBIT "B"

**Declaration of Manager**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:

Sixty Sixty Condominium Association, Inc.                Case No. 16-26187-RAM

      Debtor-in-Possession.                                      Chapter 11

_____/

**DECLARATION OF F. SCOTT HOUSE OF FLORIDA LUXURY RENTALS,**
**PROPOSED PROPERTY MANAGER FOR DEBTOR AND DEBTOR-IN-POSSESSION**

I, F. Scott House, declare and state as follows pursuant to 28 U.S.C. § 1746:

1.      I am an agent of Florida Luxury Rentals ("FLR"), with offices located at 2501 E

Commercial Blvd # 208, Fort Lauderdale, FL 33308.  I am also a licensed real estate agent and

have many years of experience.  Our management proposal reflecting the experience and

background of FLR is attached as Exhibit 1 hereto.

2.      I am familiar with the matters set forth herein and make this Declaration in

support of Sixty Sixty Condominium Association, Inc. (the "Debtor") *Motion for Authority to*

*Engage Property Manager and Approve Management Terms* (the "Motion").

3.      Neither I nor FLR hold or represent any interest adverse to the estate, and we are

disinterested within the meaning of 11 U.S.C. § 327(a).  We have not represented any of

Debtor's creditors in any related or unrelated matters.

4.      FLR has agreed to provide property management services to the Debtor in the

above-captioned Chapter 11 case before this Court, pursuant to the terms and conditions of the

Management Agreement between the Debtor and FLR (a copy of which is attached as Exhibit C

to the Motion) pertaining to the improved real property located at 6060 Indian Creek Drive in

Miami Beach, Florida.

4

5.      Insofar as I have been able to ascertain, FLR is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code in that FLR:

(a)      is not a creditor, equity security holder or insider of the Debtor;

(b)      is not and was not, within two (2) years before the date of the filing of the petitions, a director, officer, or employee of the Debtor; and

(c)      does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

2.      Neither I, FLR, nor any other officer of FLR, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtor herein or its estate in the matters upon which FLR is to be engaged.

3.      Neither I, FLR, nor any officer of FLR insofar as I have been able to ascertain have any connection with the Debtor except as follows:

(a)      Debtors counsel, Messana, P.A., represented me previously in my capacity as a Court-appointed receiver; and
(b)      Debtor's counsel, Messana, P.A., represented Diane Schaffer, a principal of FLR, as a buyer in a property acquisition.

2.      To the best of my knowledge, FLR has not represented the Debtor's creditors, equity security holders, or any other parties in interest, or their respective attorneys and accountants, the United States Trustee for the Southern District of Florida, or any person employed in the Office of the United States Trustee, in any matters relating to the Debtor or its estate.

3.      No agreement presently exists to share any compensation received by FLR for its services with any other person or firm.  If any such agreement is entered into, FLR will undertake to amend and supplement this Declaration to disclose the terms of any such

5

agreement.  No promises have been received by FLR or by any member or employee thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

4.     To the best of my knowledge, information and belief, FLR is disinterested and neither holds nor represents any materially adverse interest as to the matters upon which FLR is to be retained.  To the extent I discover any facts bearing on these matters described herein during the period of the FLR's retention, I will supplement the information contained in this Declaration.

5.     I have read the Motion and agree to be bound by the terms and conditions represented therein.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 27, 2017.

F. Scott House

6

Exhibit "1"



# Florida Luxury Rentals

**P R E S E N TA T I O N**
**FOR**
**SIXTY SIXTY**
**CONDOMINIUM**
**ASSOCIATION, INC.**

# Florida Luxury Rentals

# Introduction

- Management Team
- Background
- Operations
- Sales and Marketing
- E Commerce
- Revenue Management

# Florida Luxury Rentals

# Management Team

**F. Scott House**

**Key Positions:**

| | |
|---|---|
| Co-Owner Florida Luxury Rentals | 2014-Present |
| Owner of Florida Advantage Realty (Broker) | 2009-Present |
| President of South Florida Vacation Rentals association | 2010-Present |
| Brand President of LEXINTON HOTELS | 2005-2008 |
| President of MATRIX HOSPITALITY | 2002-2005 |
| Franchise Director (East Coast) Wyndham Hotels and Resorts | 1996-2002 |
| Federal Department of Justice | 1992-1996 |
| USAF | 1986-1992 |

**Key Achievements:**

- Professional court appointed receiver with experience in numerous types of monetary and non-monetary loan defaults, workouts, mortgagees-in-possession, turnaround transactions and foreclosures, including judicial and non-judicial foreclosures, bankruptcies and deeds in lieu, with over $200 Million dollars in resolved settlements.
- Operated, Consulted, Liquidated and redeveloped multi site/ multi brand Hotel resort developments throughout North America & International, specializing in distressed turnaround.
- Manage franchise and property development projects from concept, sales and site selection through staffing to ongoing operations in the field of resort hotel, fractional and whole ownership.
- Invitational guest speaker at national functions that include moderator or panelist appointments at major Hotel Trade Shows specializing in resort and timeshare/ whole & fractional development.
- Instrumental in launching "Lexington Hotels" brand for Vantage Hospitality, served as President and recognized with industry awards such as Hotel business "Best New Brand Launch 2006."
- Instrumental in launching "3 Palms Hotels" brand for Americas Best Franchising.
- Nationally recognized hospitality industry expert, frequently serves on US and International travel boards, industry speaker.
- Consulted for major hotel franchises to include Marriott, Blackstone, Intercontinental & Hilton properties
- Top 10 producer overall within Wyndham Hotels and Resorts Hotel Division inclusive of 9 different hotel brands.

**EDUCATION/LICENSES:**

- Bachelor of Science in Marketing, St. Leo University, Florida
- CCIM Member
- Real Estate Broker's License "Florida"
- Life/Health Accident; Property and Casualty Licenses "Florida"
- Granted a Top Secret Security Clearance, USAF
- Valedictorian, Saint Leo University, FL "Magna Cum Laude"
- 2 Meritorious Service Medals for Distinction of Valor in Operation Desert Storm, highly decorated
- Combat disabled veteran Operation Desert Storm

# Industry Renovators and Leaders

## Our Background includes



- Lexington Hotels
- ABVI Hotels
- Wyndham Hotels



# Experience Where It Counts

- Condo Hotel Management
- Vacation Rental Management
- Opening Experience
- Renovation Experience
- Rebranding Experience
- Hotel Show and Sale Experience
- Brokerage Relations
- Investor and Bank Relations
- Rebuild Experience

# The FLR Difference

› Personalized Attention

› Local First Hand Experience

› Strong Rental Sales Experience

› Excellent Operational Experience

› We Work Well With Unit Owners





# Operations

Our Team is prepared to guide your property every step of the way with years of experience and knowledge with some of the industries leaders in refined excellence. FLR has the capability to offer position specific and area specific instruction to assist with growing sales, customer service and containing cost. Some of the areas we specialize in are:

Front Desk

Reservations Support

Maintenance Coordination

Housekeeping

Engineering

Accounting

Human Resources

General Management





# Operations: Front Desk

› Teach the Desk to Up Sell

› Focus on Customer Satisfaction

› Be the Face of the Hotel

› Encourage Loyalty through Programs

› Encourage the Return Stay

› Implement SOP's

› Review Cash Handling

› Focus on Accuracy

  ○ …and much, much, more!



# Operations: Reservations

- Focus on the Up Sell
- Continued Training
- Work with Off Property Res Agents
- Work with GDS, Vacation Rental Sites
- Develop Booking Procedures
- Never Say No…and No Guest Gets Away Programs
- Deliver the Guest Expectations
- Develop Team
- Drive the APR

# Operations: Housekeeping

- Focus on Room Cleanliness Scores
- Develop SOP's
- Standardize Rooms
- Improve Purchasing
- Outsource when Available
- Train the Checkers
- QA Checks and Scores
- Productivity Driven Schedules



# Operations: Engineering

- Develop Work Order System
- Focus on Preventative Maintenance
- Reduce Labor Cost
- Reduce Vendor Contracts
- Monitor Purchasing
- Develop Effective Team
- Effective Oversight When Outsourcing Labor

# Operations: Accounting

- Develop SOP's
- Cash Handling Procedures
- Bank Auditing
- Daily Revenue Report
- Daily Labor Report
- Purchase Order System
- Budget Control
- Accounts Receivable/Payable
  - ...and Much, Much More

# Operations: Human Resources

- Continued Training
- Asset Protection and Liability Prevention
- State Regulations
- EEOC, State and Federal Violations
- Hiring Procedures
- Termination Protection
- Unemployment Claims
- Employee Moral
  - ...and Much, Much More

# Operations: General Manager

› We have Contacts with the Industries Leaders
› We will Recommend the Right Fit
› Local, First Hand Knowledge that Meets the Needs
› Focus on Sales
› Experience in Cost Containment
› Willing to Develop the Staff
› Hands On and Eager
› Goal Orientated, Results Driven

# FLR Operations

- Local Knowledge, Experienced Team
- Understands Operations
- Value Training
- Value the Associate
- Value the Consumer
- Focused and Determined



FLR Operational Program is a Leader Driven, Cost Containing, Revenue Growing, Asset Protecting Program Designed with Professional Experience to Bring the Most out of Your Hotel!

# FLR: Sales and Marketing

- Introduction
- Building the Marketing Plan
- Developing the Team
- Focus on Progress
- Executing the Plan



# FLR: Sales and Marketing

- Comprehensive Sales and Marketing Strategic Plan
- Property Specific  Planning
- Outline Key areas to Maximize Revenues and Exposure.
- We Research Your Market Mix
- Evaluate Steps to Improve Sales Through Creative Marketing Techniques
- Guide the Sales Team, Set Goals and Hold Team Accountable

# FLR: Sales and Marketing



- SWAT Analysis
- Competitor Grid
- Pricing Strategy
- Revenues to Marketing Budget
- Collateral Review
- Travel Schedule
- Market Segmentation
- Immediate vs Long Term Programs
- Define the Marketing Message

# FLR: Sales and MARKETING

- E Brochure
- Hard Collateral
- Wedding and Special Events





# FLR: Sales and MARKETING

- Group Meetings
- Family Reunions

Target market PDF brochures





- Marketing Tailored to Your Consumer

# We Know Marketing

## Market Experience throughout Florida





Destination...Any Where!

# FLR: Sales and Marketing

- Marketing Designed to Fit Your Needs
- Strategies designed to Sale
- Performance Based, Goal Orientated
- Proven ADR Performance
- YOY Results

# E Commerce

## Introduction

- OTA
- Franchise E Commerce
- E Wholesalers
- Property Specific E Commerce

## Florida Luxury Rentals

- Getting the Most out of Your E Commerce

# OTA's & E Commerce

OTA  Online Travel Agents

Major OTA's

- Expedia/Hotels.com
- Orbitz
- Travelocity
- BookIt.com
- Hotwire.com
- AirBnB
- Homeaway
- Booking.Com



# OTA's & E Commerce

## Advantages of the OTA

- Worldwide Consumer Base
- OTA's are not Brand Loyal
- OTA's offer Loyalty Rewards
- OTA's offer Best Rate Guarantee's
- OTA's offer sophisticated searches
  - Best Value Search, Search By Customer Review, Trends
- Property Specific Marketing



**Trend Tracker helps you plan the best time to travel based on price and weather trends**

 **Discover Expedia Exclusives**

# OTA's & E Commerce



- **OTA's Property Specific Marketing**
  - Pay per Click
  - Banner Advertising
  - Participation in E Blast
  - Participation in OTA Specific Specials
  - Package Path Implementation



# OTA's & E Commer





























# Franchise Specific E Commerce

› Brand Specific Website

› Focuses on Driving Brand Awareness

› Advertising Brand Banners

› Focuses on Loyalty and Rewards

› Advertises with Major OTA's

› Offers Guest Best Rate Guarantee

› Not property specific

# E Wholesalers & E Commerce

- Large Individual Marketing Programs
- Wholes Sale Contracts for 1 Year
- Can be any number of avenues
  - True Wholesalers
  - True E Commerce
- Advertising on the Web
  - Opaque Rates
  - Package Pathways

# E Wholesalers & E Commerce



**Travalco** is interested to work and partner with those suppliers that appreciate the needs of international visitors and are able to contribute to their memorable experiences.
We have established preferred wholesale status with all major Hotel Chains and attraction companies.

*What are we looking for?*
- Hotels, Attractions and Transportation companies in the USA, Canada and Caribbean
- Best value in category
- Receptive - Wholesale pricing
- Year round availability
- Solid allocations or free-sale
- Commitment to Hospitality

*What can we offer?*
- Qualified distribution to Touroperators in 56 countries on all continents
- Balanced usage of allotments (no weekend effect)
- Year round production due to complimenting travel patterns
- Above average length of stay
- Above average incremental spending while in hotel
- Preferred partners also qualify for Group and Incentive Department business
- 22 Years of solid performance and integrity





**Destination consultants**
From over 80 local offices worldwide our destination consultants provide local expertise.

# Property Specific E Commerce

- Your Website, Your Way



- Bring Them Back, Again and Again



- Google it...Yahoo it...Pay Per Click It

Clarion Resort and *Waterpark* hotel for your *Orlando*, Florida ...

Our state-of-the-art *waterpark* competes with pricier *Orlando* area hotels, *water parks* and attractions. And it is conveniently located on our property – just **...** *www.clarion**waterpark**.com/**Orlando**_Florida-Vacations.shtml - 14k* - Cached - Similar pages

# Property Specific E Commerce

› Easy to Maintain

› Easy to Market

   o **Lifestyle Resort Hotel at the Doorstep of South Florida beaches**

› Sets the Standard for E Wholesale & OTA's Sites

› No Margins on Reservations

› Market it How You Want

   o **Packages for hundreds of South Florida destinations**

› Convert OTA Reservations

› E Blast Return Stays

# E Commerce

Re-Branding E Commerce to Be Effective Online Marketing Tool

Execute a Positioning Strategy

Concise Message and Location Identifiers

Ensure Parity with All OTA's

Support on E Commerce Budget and Expectations

Oversee Creation of Property Specific Website

Reviewing and Monitoring Property Specific Website

Key Word Marketing Optimization

Supporting Franchise Specific Programs

Google Add Words and Pay Per Click Campaigns

Review OTA positioning

Market Area Specific or Location Specific Sites

Recommend Localized E Wholesalers



# E Commerce

## Recommend and Implement

- Pay Per Click
- Banner Advertising
- Participation in E Blast Campaigns
- Participation in OTA Specific Specials
- Package Path Implementation

Support Also Includes:

- Monthly Conference Call, Reporting as needed and any additional E Commerce support as requested by the Hotel

# FLR: Revenue Management

- Strategic Rate Plans for Group, Internet, Wholesale and Transient Markets
- 30/60/90 Approach
- Utilize E Commerce to Gap Fill
- Build Rate with Group
- Build Base with Wholesale
- Yielding Transient Rate Structures
- Day of and Desk Yielding

# FLR: Revenue Management Difference

- Increase Bottom Line Productivity
- Grow ADR
- Maximize REVPAR
- YOY Result Driven



By Consistent, Watchful Rate Manipulation your Hotel will be more Profitable and the Goals we set, More Attainable.



# The Florida Luxury Rentals Difference

# FLR Difference

- Local Management Company

- Expert Knowledge Where It Counts

- Cutting Edge of Technology and Marketing

- Results Driven Sales Team



- Excellent Operational Background



# Florida Luxury Rentals Difference

## EXCEEDING YOUR HOTELS EXPECTATIONS

# EXHIBIT "C"

**Management Agreement**

Exhibit "1"

# <u>*MANAGEMENT AGREEMENT*</u>

by and between

## Florida Luxury Rentals

*And*

## Sixty Sixty Condominium Owners

<u>MANAGEMENT AGREEMENT</u>

This AGREEMENT dated <mark>this _____ day of _____, 2017</mark>, by and between Unit #_____Located: 6060 Indian Creek Drive, Miami Beach, 33140 (hereafter called "Owner") and Florida Luxury Rentals (hereinafter "Manager").

WHEREAS, the Manager has the right to collect rents from, lease and manage a certain property, described in Schedule A hereto affixed and made a part hereof, and the Owner desires to engage the Manager to manage and operate the same.

NOW, THEREFORE, the parties agree as follows:

# ARTICLE 1. THE APPOINTMENT

1.1 <u>Management</u>. The Owners hereby appoints the Manager and the Manager hereby accepts the appointment, to manage in accordance with the terms of this Agreement, the real property described in Schedule A attached hereto (herein called the "Property") for the term set forth in Article 2.

1.2 <u>Leasing</u>. The Owners hereby appoints Manager, and the Manager hereby accepts the appointment, as the sole and exclusive leasing agent of the Property to rent rooms and other facilities on a daily basis and to lease appropriate portions of the Property to further the hotel business being conducted on the Property.

# ARTICLE 2. TERM

2.1 <u>Term</u>. The Manager's duties and responsibilities under this Agreement shall commence the <mark>_____ day of _____</mark> 2017 and shall expire on the date that is three (3) years after the commencement date, unless sooner terminated as herein provided.

2.2 <u>Renewal Term</u>.   After expiration of the initial term, this Agreement shall automatically continue on a two year (2) basis, unless canceled with or without cause, in writing by the Manager.

2

## ARTICLE 3. MANAGER'S RESPONSIBILITIES

3.1 <u>Management</u>. The Manager shall manage, operate and maintain each Property unit in an efficient and satisfactory manner in accordance with this Agreement and all applicable laws, rules and regulations.  Manager shall act in a fiduciary capacity with respect to the proper protection of and accounting for Owner's assets. Throughout the term of this Agreement, Manager shall have responsibility for all management decisions consistent with industry standards and Owner agrees not to impede Manager, counterman instructions by Manager to its employees or otherwise interfere with Manager's performance of its duties.

3.2 <u>Employees</u>. The Manager shall insure a sufficient number of capable employees to enable it to properly, adequately, safely and economically manage, operate, maintain, and account for the Property.  Employees will be Managers employees.  All matters pertaining to the employment, supervision, training, compensation, promotion and discharge of such employees are the responsibility of the Manager. Manager may negotiate with any union lawfully entitled to represent such employees and may execute with Owner Approval as agent for Owner, collective bargaining agreements or labor contracts resulting therefrom.  Manager shall fully comply with all applicable laws and regulations with respect to worker's compensation, social security, unemployment insurance, hours of labor, wages, working conditions, and other employer-employee related subjects.  Manager represents that it is and will continue to be an equal opportunity employer.

3.3 <u>Compliance with Laws, Mortgages, etc.</u> Manager shall be responsible for full compliance with federal, state and municipal laws, ordinances, regulations and orders relative to the leasing, use, operation, and maintenance of the Property.  Manager shall promptly notify Owner of any violation of any such law, ordinance, rule, regulation or order which comes to Manager's attention and, at Owner's expense and prior approval, promptly remedy any such violation.

Manager shall, at its own expense, keep in full force and effect all licenses and permits necessary or convenient to operate its management services similar to other hotels of comparable size, class and standing, including, but not limited to, licenses and permits, required for the rental of rooms. Manager shall also obtain all new and renewal licenses and permits necessary to accomplish the foregoing.

Actions in remedying violations may be implemented prior to obtaining Owner's approval if the estimated expenses to be incurred do not exceed $1,500.00 in any one instance. When more than such amount is required or if the violation is one for which the Owner might be subject to penalty, Manager shall notify Owner so that prompt arrangements may be made to remedy the violation.

Manager shall be responsible for full compliance with all terms and conditions contained in any ground lease, space lease, mortgage, deed of trust, restrictive covenant, management and brokerage agreement or other instrument affecting the Property; provided, however, Manager

3

shall not be required to make any payment or incur any liability on account thereof.  Owner shall assist Manager in obtaining copies of any existing ground, space or other lease affecting the property.

Owner shall cooperate with Manager and keep Manager advised of any mortgage, lease, deed of trust, covenant, law, regulation, ordinance or other requirement of which it has actual knowledge, which concerns the operation of the Property.

3.4 <u>Approved Budgets</u>. Manager shall prepare and submit to Owner, prior to December 1 of each year, a proposed operating budget and a proposed capital budget for the promotion, operation, repair, management and maintenance of the Property for the forthcoming calendar year.  The operating budget shall include a price schedule for room sales, licensing, concessions and other services provided by the hotel business being conducted on the Property.

The Owner will consider the proposed budgets and will consult with the Manager prior to the commencement of the forthcoming calendar year in order to agree on an "Approved Operating Budget" and an "Approved Capital Budget".

Manager agrees to use diligence and to employ all reasonable efforts to ensure that the actual costs of maintaining and operating the Property shall not exceed the amount necessary. All expenses must be charged to the proper account in accordance with Uniform System of Accounts for Hotels, as approved and adopted by the American Hotel & Motel Association (the "Uniform Accounting System"). Manager shall secure Owner's prior written approval for any expenditure that will result in an excess of the annual budgeted amount in any one accounting category of the Approved Operating Budget or the Approved Capital Budget.

During the calendar year the Manager shall inform the Owner of any major increases in costs and expenses that were not foreseen during the budget preparation period and thus are not reflected in either Approved Budget.

Manager shall prepare budget and either arrange necessary maintenance, cleaning services with Unit owner or with Hotel owner, whichever is appropriate under current rules as outlined in the Condo Documentation or otherwise approved by a State or Federal court.

3.5 <u>Reports</u>. Within twenty (22) days after the end of each month, Manager shall prepare and submit to Owner a monthly report summarizing the operations of the Property for the previous month.

Manager shall also prepare and forward to the Owner monthly reports set forth in Schedule C attached hereto within twenty (22) days after the end of each month.

Manager shall also keep the accurate books and records of the Property in accordance with the Uniform Accounting System consistently applied.  Owner shall have the right from time to time to inspect the books and records of the Property in the Manager's office at the Property or at the Manager's main office.  All books and records of accounts are and shall remain the

4

property of the Owner; and shall be delivered to Owner upon termination of this Agreement within five (5) business days of any written demand by Owner, subject to the provisions of Paragraph 7.5.

3.6 <u>Collection of Rents and Other Income</u>. Manager shall use diligent efforts to collect all room rents, and other charges due from guests, tenants, concessionaires and other use of the facilities of the Property. (Including percentage rents and tenants' share of operating expenses, taxes) and other charges which may become due at any time from any tenant or from others for services provided in connection with or for the use of the Property or any portion thereof. Manager shall collect and identify any income due the Owner from miscellaneous services provided to tenants or the public including, but not limited to, parking income, tenant storage, and coin operated machines of all types (e.g., vending machines, pay telephones, etc.).   All monies will be deposited immediately in a separate checking account and maintained by the Manager at a bank approved by the Owner (the "Owner's Account"). No funds of the Manager or of any other property shall be deposited in the Owner's Account.  The Manager shall have two (2) officers of the Manager as designated check signers and all checks over $1,500.00 shall require two signatures.  The Owner shall also have designated check signers.  Manager may not, without the prior written approval of Owner, terminate any lease; lock out a tenant, institute suit for rent or for use and occupancy, or proceedings for recovery of possession.  In connection with any collection efforts, only legal counsel or a collection firm designated by Owner shall be retained.  All legal and collection fees and expenses incurred in bringing such approved suit or proceeding shall be submitted to Owner for its approval.  Manager shall not write off any income without prior approval of Owner.

3.7 <u>Competitive Bidding</u>.  All contracts for repairs, capital improvements, goods and services exceeding $2,000.00 shall be awarded on the basis of competitive bidding, solicited in the following manner:

(a)    A minimum of two (2) written bids shall be obtained for contract up to $10,000.00. A contract for over $10,000.00 will require a minimum of three bids;

(b)    Each bid will be solicited in a form prescribed by Owner so that uniformity will exist in the bid quotes;

(c)    Manager may accept low bid without prior approval from Owner, if the expenditure is for a line item on an Approved Budget and such expenditure, together with previously incurred and estimated future expenditures for such line item, will not result in an excess of the annual budgeted amount of the applicable Approved Budget for such line item; otherwise, approval of a bid will be required by Owner;

(d)    If Manager advises acceptance of other than the lowest bidder, Manager shall adequately support, in writing its recommendations to Owner;

(e)    Except as set forth in (c) above, Owner shall be free to accept or reject any and all bids;

5

(f)      Manager shall prepare bids and arrange necessary maintenance, cleaning services with Unit owner or with Hotel owner, whichever is appropriate under current rules as outlined in the Condo Documentation or otherwise approved by a State or Federal court.


3.8  Service Contracts. Manager shall not enter into any contract service for cleaning, maintaining, repairing or servicing the Property or any of the constituent parts of the Property except as consistent with the Approved Operating Budget.

All service contracts shall: (a) be in the name of the Owner, (b) be assignable, at Owner's option, to Owner's nominee, (c) not be for a term of more than one year and include a provision for cancellation thereof by Owner upon not more than 30 days written notice, and upon three (3) days notice for cause, (d) shall require that all contractors provide evidence of sufficient insurance and (e) shall be within the guidelines set forth in the Approved Operating Budget. Unless Owner specifically waives such requirement, all service contracts shall be subject to bid under the procedure as specified in Section 3.8.

3.9  Repairs. The Manager shall supervise all ordinary and extraordinary repairs, decorations and alterations, capital improvements, remodeling and tenant improvements, all subject to the terms of this Agreement.

In case of an emergency, Manager may make expenditures for repairs without prior written approval of the Owner, if such repair is necessary to prevent damage or injury.  Owner must be informed of any such expenditure before the end of the next business day.

3.10  Taxes The Manager shall obtain and pay bills approved by Owner and for all Florida transient taxes (509) and remit to the State of Florida (Treasury).


3.11  Advertising. Manager shall prepare advertising plans and promotional material for the benefit of the Property. Advertising and promotional materials shall be prepared in full compliance with Federal, State and Municipal laws, rules, regulations and orders.

3.12  Cooperation. Should any claims, demands, suits or other legal proceedings be made or instituted by any person against Owner, the Manager shall give Owner all pertinent information and reasonable assistance in the defense or other disposition thereof.

6

## ARTICLE 4. PAYMENT OF EXPENSES

4.1 <u>Processing of Invoices</u>. Manager shall receive, review and approve all invoices for expenses incurred in operating the Property and shall timely pay such invoices if they are within the Approved Budget or if they have otherwise been approved by the Owner.

4.2 <u>Manager's Reimbursable Costs</u>. The following costs paid by Manager in connection with the management of the Property shall be reimbursed by the Owner:

(a)    Actual cost of all items set forth in the Approved Operating Budget.

(b)    Actual cost set forth in the Approved Capital Budget after the approval of Owner of the contractors' contracts and plans and specifications, if appropriate.

(c)    Cost of collection of delinquent rentals collected through a collection agency, which has been approved in writing in advance by Owner.

(d)    Legal fees of attorneys provided such attorneys have been approved by Owner in advance of retention and the specific amount of such attorney's fee has been approved of by Owner in advance of payment.

(e)    Cost of Owner approved advertising.

(f)    Costs associated with filing of state/local taxes and incorporation.

4.3 <u>Non-reimbursable Costs</u>. The following expenses or costs incurred by Manager in connection with the management of the Property shall be at the sole cost and expense of Manager and shall not be reimbursable by Owner:

(a)    Cost of gross salary and wages, payroll taxes, insurance, worker's compensation and other benefits of Manager's office personnel not identified in the Approved Operating Budget.

(b)    General accounting and reporting services which are considered to be within the Manager's office not associated with the operations of the Property.

(c)    Cost of forms, papers, ledgers, and other supplies and equipment used in the Manager's office not associated with the operations of the Property.

(e)    Manager's Office overhead not contained within the Approved Budget.

7

4.4 <u>Method of Reimbursement</u>. Manager may pay from Owner's Account all costs and expenses in this Article 5 and the payment of fees referred to in Section 6.1 and 6.2. Owner agrees to maintain a i.) balance in the Owner's Account  and/or iii.) a line of credit accessible to Manager, which together total not less than 1/12th of the Approved Operating Budget, so as to provide for sufficient liquidity in operation of the property.  If the funds in the Owner's Account are not sufficient to pay amounts approved to be paid under this Agreement, Manager will give Owner at least ten (10) days written notice of any additional funds Owner must deposit in the Owner's Account.

4.5 <u>Use of Commercial Space by Manager owned by Owner:</u> Owner agrees to support all efforts of the Manager to obtain a lease with adequate space within property (Hotel) owned by the Sixty Sixty Association for the sum no greater than Five Hundred Dollars per month ($500), Starting on the effective date of this agreement.

# ARTICLE 5. COMPENSATION

5.1 <u>Management Fee</u>.

(a)      Each month the Manager shall receive a management fee for its services in managing the Property in the amount of Fifty Percent (50%) of the Gross Revenue (hereinafter defined) actually collected and remitted to the Owner during the month. The term "Gross Revenue" for the purpose of calculating the monthly management fee includes all room rent.

5.2 <u>Accounting Fee</u>.  Manager shall receive a fee per month for centralized accounting services, actual expenses paid by manager.

5.3 <u>Late Fees</u>.  All fees and reimbursable expenses are due and payable on the first (1st) day of the month in advance.  All fees and reimbursable expenses not received by the first of the month shall bear interest at the rate of one and one-half percent (1 1/2%) per month.  If an attorney or collection agency is engaged by the Manager to collect any fees due under this Agreement, the Owner shall pay all collection, legal or court expenses, costs and fees including, but not limited to, reasonable attorney fees whether or not suit is actually filed or if filed, whether the suit proceeds to judgment or not.

# ARTICLE 6. TERMINATION

6.1 <u>Termination by Manager for Cause</u>.  Manager may terminate this Agreement for cause upon the Owner's material breach of this Agreement, including Owner's failure to pay fees or reimbursable expenses, or to fund Owner's Account.  Manager shall give Owner 15 day's notice of Manager's for cause termination under this paragraph.  Upon Manager  does termination for cause under this paragraph Owner shall pay to Manager all monies then owe with all accrued interest.  Further, the Owner and Manager acknowledge and agree that any material breach of this agreement by Owner upon which Manager elects to terminate the Agreement under this paragraph, shall cause Manager to suffer actual and substantial damages which would be extremely difficult or impossible to accurately quantify in a reasonable and timely manner.  In recognition of the difficulty to Manager of quantifying its damages the Manager and Owner hereby agree that as reasonable compensation for damages Manager will suffer by way of the Owner's material breach Owner shall pay to Manager the equivalent of the remainder of the contract.  Payment of all monies called for under this paragraph shall be made by Owner to Manager within 10 days of Owner's receipt of the notice of Termination by Manager for Cause.

6.2 <u>Termination by Owner for Cause</u>.  In the event that the Manager is in material breach of its responsibilities under Article 3 of this Agreement, the Owner shall provide Manager with a written notice which states the breach and the steps necessary to cure the breach.  Upon receipt by the Manager of the aforesaid notice, the Manager shall have a period of one hundred and eighty days (180) to cure the breach.  If the Manager has not cured the breach at the end of such one hundred and eighty days (180) period, Owner can terminate this Agreement for cause.  Upon the Owner's termination for cause under this paragraph, Owner shall pay to Manager all monies then owing with all accrued interest as of the date of termination.

6.3 <u>Termination on Sale</u>. This Agreement shall terminate upon the sale of the Property with ninety (90) days' notice.

6.4 <u>Termination Without Notice</u>. This Agreement shall terminate immediately without notice upon cessation on the Manager's part to continue to do business; or bankruptcy, insolvency, or assignment for the benefit of the creditors of the Manager, or theft by Manager.

6.5 <u>Final Accounting</u>. Upon termination of this Agreement for any reason, Manager shall complete the necessary accounting work for the property upon its departure for 90 days at a cost of one month's management fees, payable upon termination.  Upon completion Manager will immediately deliver to Owner all records, books, accounts, contracts, leases, receipts for deposits, unpaid bills and other papers or documents which pertain to the Property with the exception of employee records which must be retained by Manager according to law.  Owner shall have the right to inspect Manager's employee records, upon reasonable notice, or in the alternative, Manager shall provide Owner with copies of these records, upon Owner's request.

9

Manager shall have the right to keep and maintain copies of any records, which it delivers to Owner, provided that the same is kept in confidence by Manager.   Upon such termination or withdrawal Owner will assume responsibility for payments of all approved or authorized unpaid bills of the Property.

6.6 <u>Final Payment of Taxes</u>.  Upon termination of this Agreement for any reason, at the time Manager delivers to Owner all records, books, accounts, contracts, leases, receipts for deposits, unpaid bills and other papers or documents which pertain to the Property, Manager shall provide Owner with an estimate of all accrued taxes as of the date of termination for which the Manager may be held legally responsible for nonpayment.  By way of example, and not by way of limitation, said taxes may be:  unemployment insurance tax, sales and use tax and taxes specific to the sale and/or consumption of liquor.

Within ten (10) days of its receipt of Manager's estimate of accrued taxes, Owner agrees to place an amount equal to the Manager's estimate of accrued taxes in an interest bearing escrow account which will provide for the payment of said taxes at the same bank where the Owner's Account is located.  Owner agrees to provide Manager with written verification of the existence and the balance of the escrow account within three (3) days thereafter.  The escrow account funds may only be disbursed by the direction and with the written approval of both Owner and Manager.  Such approval not to be unreasonably withheld.


# ARTICLE 7. MISCELLANEOUS

7.1 <u>Notices</u>. All notices, demands, consents and reports and other notices provided for in this Agreement shall be in writing and shall be given by Express Mail, return receipt requested, with postage prepaid, or delivered by a recognized overnight delivery service, which service obtains a signature on delivery.

MANAGER:  Fredrick Scott House & Diane J. Schaffer
Florida Luxury Rentals
2501 E. Commercial Blvd. Suite 208
Ft. Lauderdale, Florida 33308

OWNER:     Unit #      (Owner
6060 Indian Creek Drive, Miami Beach


Any party may designate another addressee (or a different address) for notices hereunder by notice give pursuant to this Section.  A notice sent in compliance with the provisions of this Section shall be deemed given on the business day next following the day on which the notice is sent.

7.2 <u>Consent and Approvals</u>. Owner's consent or approval may be given only by

representatives of Owner from time to time designated in writing by Owner.  All such consents or approvals shall also be in writing.

7.3 <u>Amendments</u>. No amendments, additions or deletions to this Agreement shall be effective unless approved by the parties in writing, excepting that change in the Leasing Guidelines set forth in Schedule B and in the Monthly Report Forms set forth in Schedule C and the Uniform System of Accounting may be made by Owner, effective upon written notice thereof by Owner to Manager, so that upon receipt of such notice by the Manager, the respective schedule shall be deemed to have been amended.

7.4 <u>Headings</u>. All headings herein are inserted only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of this Agreement.

7.5 <u>Indemnification by Manager</u>. Manager shall indemnify, defend and hold Owner harmless from any and all claims, demands, causes of action, losses, damages, fines, penalties, liabilities, costs and expenses, including attorney's fees and court costs, sustained or incurred by or asserted against Owner by reason of or arising directly from Manager's Gross Negligence.

7.6 <u>Indemnification by Owner</u>. Owner shall indemnify, defend and hold Manager harmless from any and all claims, demands, causes of action, losses, damages, fines, penalties, liabilities, costs and expenses, including attorney's fees and court costs sustained or incurred by or asserted against Manager in performing its duties under this Agreement, except in cases of gross negligence of the Manager, said indemnity expressly to include Owner's reimbursement to Manager for Manager's payment of any accrued taxes in the event Owner violates the terms of paragraph 7.5 above.

7.7 <u>Arbitration</u>.    Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, including the Emergency Interim Relief Procedures, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.  The Arbitrator shall be limited to an award of actual loss to a party arising directly from a breach of this Agreement, and shall not be permitted to award to either party its expense associated with the arbitration (including the expense of attorney fees) it being the intent of the parties that each party shall bear its own costs in such arbitration, provided however, that the arbitrator may award to the prevailing party the fees it has paid to the American Arbitration Association, including the initial filing fee, the case service fee, and the arbitrator's fee.  Notwithstanding any provision to the contrary, Manager may file suit to recover any fees or other obligations owed to it under this Agreement for any amount not to exceed $10,000.00.


The place of arbitration shall be Ft. Lauderdale, Florida. The language of the arbitration shall be English.

11

Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties.

7.8 <u>Complete Agreement</u>. This Agreement and Schedules A, B and C attached hereto and made a part hereof, supersede and take the place of any and all previous management agreements entered into between the parties hereto relating to the Property covered by this Agreement.

7.9 <u>Governing Law</u>. This Agreement shall be governed, construed and interpreted by the laws of the State of Florida, as a contract under seal.

7.10 Manager shall Manage, arrange necessary maintenance, cleaning services with each Unit owner or with Hotel owner, whichever is appropriate under current rules as outlined in the Condo Documentation or otherwise approved by a State or Federal court.

IN WITNESS WHEREOF the parties hereto have executed this Agreement under seal as of the date and year first written above:

OWNER:  Unit #

By:_____
Authorized Signature

MANAGER:  Florida Luxury Rentals

By:_____
Authorized Signature

## SCHEDULE A

Property Description

Unit #      (Owner)
6060 Indian Creek Drive, Miami Beach
Ft. Lauderdale, Florida 33304

## SCHEDULE B

## LEASING GUIDELINES

[Intentionally left blank]

## SCHEDULE C

## MONTHLY REPORTS

Manager shall generate, update and maintain the following reports, using the Uniform Accounting System:

Income Recaps
Rents Receivable Report
Property Profit and Loss Statement
Capital Expenditure and Leasing Commissions Report
Management Reports


Income Recap, Identify all income and security deposits billed and amounts collected. The ending accounts receivable balance equal the sum of: 1) The beginning accounts receivable, plus 2) The billing of the current month, less 3) Amounts collected. The ending accounts receivable balance should agree to the Accounts Receivable Report. The advance deposit report should reflect the Owner's total liability for advance deposits outstanding at report date.

Property Profit & Loss Statement: Report monthly and year to date property income and expenses using Uniform Code of Accounts Schedules and Chart of Accounts. Prepare budget variance analysis. Explain any significant operating issues and significant budget to actual variances. Include cash receipts and disbursements journals, reconciled bank statements and reconciliations. Reconcile the bank statement cash balance to the operating statement ending balance. Indicates the amount available to be available by the Owner (Owner's Cash Flow).

Capital Expenditure, Describe and cost all capitalized disbursement items.