## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

IN RE:

**SIXTY SIXTY CONDOMINIUM**                      **CASE NO.: 16-26187-RAM**
**ASSOCIATION, INC.**                                    **Chapter 11**

      **Debtor.**

_____/

### MOTION AND APPLICATION BY SCHECHER GROUP, INC. FOR (I) ALLOWANCE AND COMPELLING PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. §§ 503(a) & (b)(1)(A) AND/OR,  ALTERNATIVELY (II) RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362(d)

#### (Expedited Hearing Requested)

> **Schecher Group respectfully requests an expedited hearing on this Motion because, as set forth herein, since the Petition Date, the Movant has continued to incur and advance payment of certain Shared Costs consisting of, among other things, electric and utilities to the 6060 Building which continue to accrue post-petition while the Debtor and Residential Unit Owners fail to pay the Hotel Unit for their respective percentages of Shared Costs under the Declaration or any portion thereof. Accordingly, because the Schecher Group is continuing to incur thousands of dollars per month in advanced out of pocket expenses for utility services being provided to the Debtor and Residential Unit Owners, the Movant seeks to implement procedures to defray the utility costs while obtaining appropriate relief from the Court on these issues.**

      **SCHECHER GROUP, INC.** ("Schecher Group", "Movant" or "Hotel Unit"), by and through counsel, and pursuant to 11 U.S.C. §§ 105, 362(d), 503(B)(1)(A) and 507(A)(2), Federal Rule of Bankruptcy Procedure 4001 and 9013, and Local Rule 4001-1, files this Motion And Application By Schecher Group, Inc. For (I) Allowance And Compelling Payment Of Administrative Expense Claim Pursuant To 11 U.S.C. §§ 503(a) & (b)(1)(A) And/Or, Alternatively (II) Relief From The Automatic Stay Pursuant To 11 U.S.C. §362(d)(the "Motion") and states, as follows:

## I.    **PROCEDURAL BACKGROUND**

1.      By way of brief background, on December 5, 2016 (the "Petition Date"), the Sixty Sixty Condominium Association, Inc. (the "Debtor" or "Association") filed a voluntary petition for relief under Chapter 11 (the "Petition") of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Case")[ECF No. 1]. Since that time, the Debtor has operated as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.      The Debtor is a not-for-profit corporation formed in April, 2006, to act as the condominium association for the Sixty Six Condominium, a hotel-condominium property located at 6060 Indian Creek Drive, Miami Beach, Florida (the "6060 Building" or "Condominium"). Presently, the 6060 Building is comprised of eighty-seven (87) units consisting of (a) eighty-two (82) "Residential Units" owned by the Residential Unit owners (the "Residential Unit(s)" or RUO(s)"); (b) four (4) "Commercial Units" owned by the Association (the "CUO"); and (c) one non-residential unit designated as the "Hotel Unit" owned by the Schecher Group (the "HUO"), that encompasses the "Shared Components" of the 6060 Building as defined within the Declaration of Sixty Sixty Condominium (the "Declaration").

3.      The Declaration is, among other things, a covenant running with the land and governs the relationship and obligations of the Debtor, Schecher Group and RUOs. Significantly, on March 20, 2013, the Schecher Group acquired the Hotel Unit pursuant to that certain Special Warranty Deed from Optima Hospitality Associates, LLC (the former HUO and Movant's predecessor) and has operated the 6060 Building as a hotel, offering short term rentals, maintaining a front desk, and other common hotel amenities such as housekeeping services, etc., for the Residential Unit owners electing to participate in the rental program.

4.      In this capacity, the Schecher Group is vested with certain rights, duties and powers under Sections 12.1, 12.3 & 12.4 of the Declaration, to collect, charge, lien, impose, and foreclose the Debtor, along with the other RUO's, for "the costs incurred by the Hotel Unit Owner in….the repair, replacement, improvement, maintenance, management, operation, ad valorem tax obligations and insurance of the Shared Components".

5.      The term "Shared Components" is broadly defined, in pertinent part, in Section 2.32 of the Declaration, as follows:

> 2.32     "Shared Components". Together, the Improvements constituting the Common Elements, Residential Units, Commercial Units and the Hotel Unit have been, or shall be,

constructed as a single structure and operated as an integrated project. Given the integration of the structure of those improvements, and notwithstanding anything to the contrary depicted on the survey/plot plan attached hereto as Exhibit "2", the following components of the improvements (the "Shared Components") shall be deemed part of the Hotel Unit, whether or not graphically depicted as such on said survey/plot plan: any and all structural components of the Improvements, including, without limitation, all exterior block walls and all finishes (glass, paint, stucco etc.) and balconies, terraces and/or facades attached or affixed thereto; the roof; all roof trusses, roof support elements and roofing insulation; **all utility, mechanical, electrical, telephonic, telecommunications, plumbing Life Safety Systems and other systems, including, without limitation, all wires, conduits, pipes, ducts, transformers, cables and other apparatus used in the delivery of the utility, mechanical, telephonic telecommunications, electrical, plumbing Life Safety Systems and/or other systems; all heating, ventilating and air conditioning systems, including, without limitation, compressors, air handlers, ducts, chillers, water towers and other apparatus used in the delivery of HVAC services…..".**

*See, Notice of Declaration [EFC No. 138], Section 2.32, Exhibit "2".*

6.      Furthermore, the Schecher Group, as the HUO and through Casablanca Rental Services, Inc. ("CRS") has been providing hotel services and operated the rental program for the RUOs electing to participate in the rental program in accordance with the Declaration. The RUO's may, but are not obligated, to participate in the hotel program by retaining Schecher Group as the exclusive agent for rental of their Units as a hotel room.

7.      Pursuant to Section 12.3(a) of the Declaration, all "Shared Costs" for the Shared Components shall be paid to the Schecher Group, as the Hotel Unit, by each "Owner of any Residential Unit and/or Commercial Unit," which Shared Costs are attributable to 100% of such Unit Owners (excluding the HUO)(the "Non-Hotel Units Allocated Share"), in accordance with the covenants and agreements of the Debtor and Owners of Residential Units. Furthermore, the Debtor as the owner of the Commercial Units and RU #505, has expressly covenanted and agreed to pay the Schecher Group its 'proportionate share' of the Shared Costs. Likewise, the Debtor has powers to assess for Common Expenses to each of the Unit Owners in order to pay its own percentage of Shared Costs to the HUO.

8.      Equally important, there are two (2) other provisions of the Declaration, which are also relevant to the relief requested herein. Section 12.1 – Maintenance states, in pertinent part, that:

"Notwithstanding anything herein contained to the contrary, the Hotel Unit Owner shall be excused and relieved from any and all maintenance, repair and/or

3

> replacement obligations with respect to the Hotel Unit to the extent that funds necessary to perform same, to the extent that obligations of the Residential Unit Owners and/or the Commercial Unit Owners, are not available through the charges imposed and actually collected. The Hotel Unit Owner shall have no obligation to fund and/or advance any deficit or shortfall in funds which were the obligation of the Residential Unit Owners and/or the Commercial Unit Owners in order to properly perform the maintenance, repair and/or replacement obligations described herein."
>
> (emphasis added).

Furthermore, Section 16.1 (second paragraph), provides, in part, that:

> "The rights of Unit Owners to use the Shared Components shall be limited to the extent granted in, and subject to the restrictions hereof, Section 3.4(e), and the obligation for payment of the assessments and charges set forth in Section 12 (provided, however, that in no event shall an Owner be denied access to and from the Owner's Unit) or be denied the use and enjoyment of those certain easements granted in Section 3.4 herein."

As part of the "maintenance" of Life Safety Systems and other systems of the Shared Components noted above, the Schecher Group has been maintaining the flow of electric and other utilities to the 6060 Building, despite budget substantial budget shortfalls and operational deficits that have plagued the Hotel Unit caused by delinquent Shared Cost accounts of the Debtor and RUOs, including the Collective Unit Owners[1] currently in foreclosure.

9.      During the administration of the Bankruptcy Case, the Debtor has filed the Debtor's Standard Monthly Operation Reports (the "DIP Monthly Reports"). As of the Petition Date, the Debtor has collected approximately $54,779.89, in assessments from the RUOs.

10.     On April 11, 2017, the Schecher Group timely filed its secured Proof of Claim, Claim No. 40 (the "Secured POC") in amount of $1,075,516.08 plus accrued interest thereon, attorneys' fees and costs, including any other expenses, charges and special late charges, assessments or special assessments (the "Indebtedness").

11.     Moreover, in accordance with Sections 12.3 of the Declaration, the Schecher Group has determined, established and prepared an annual operating budget for the 6060 Building for the years 2014, 2015, 2016 and 2017 (the "Budgets"). Consistent with the Debtor's own annual budgets for 'Assessments' of the Common Expenses, the Budgets reflect projected annual operating expenses as Shared Costs of the 6060 Building, subject to adjustments, special

---

[1] See, ECF No. 171.

assessments and other charges from time to time, in the event of a deficient in the Budgets and/or actual operating costs of the Hotel Unit. Prior and following the Petition Date, the Debtor and Unit owners have been given sufficient notice of the Budgets, along with payment coupons and periodic invoices for the remittance of Shared Costs, for the fiscal years 2016 and 2017.

12.    For years prior to the Petition Date, the Schecher Group has been operating, maintaining and managing the 6060 Building at a substantial deficient caused by approximately seventy (70%) of the Unit owners failure (for whatever reason) to pay their monthly Shared Costs, or any reasonable portion thereof not subject to dispute, while at the same time, enjoying the benefits of the Shared Components owned by the Hotel Unit Owner. By doing so, the Hotel Unit has been placed in a precarious and commercially untenable situation of providing free and unfettered use and enjoyment of the electrical current into delinquent Units not contributing to the overall maintenance and operations of the Hotel Unit in clear violation of the Declaration.

13.    For purposes of this Motion, the Movant is mindful of the Order on Stay Violation (the "Access Order") [ECF No. 38], specifically, paragraph (2) thereof, and in no way seeks to deny nor impede any Unit owner of "access to their units" or "authorized representative of the Debtor access to the commercial units owned by the Debtor and all of the residential units…." as provided therein.

14.    Rather, the Movant is seeking to establish and implement regulations and procedures pursuant to Sections 3.4, 12.1 & 12.3, as well as other provisions of the Declaration, for the maintenance, management and operation of separate elements of the Shared Components with respect to the usage of utilities and electrical services, in an effort to conserve cash flow and financial resources to maintain the systems of the Hotel Unit.

15.    Critically, for the past six (6) months since the filing of the Petition, the Hotel Unit has paid approximately $93,977.29 in expenses for electric and utilities usage for the 6060 Building, which monthly charges are billed directly to and are in the name of the Schecher Group (the "Utilities"). Of course, there are other monthly operational expenses (including insurance, security, real estate taxes, etc.) in addition to the Utilities paid as Shared Components.

16.    Notwithstanding the recent filing of the Adversary Proceeding[2] to determine the amount of Shared Costs owed by the Debtor to the Hotel Unit, the proportional amounts due by

---

[2] Adv. Case No. 17-01171-RAM-BKC.

the Debtor for usage of Utilities is an administrative expense claim against this Chapter 11 estate, however, the Debtor has not paid for such administrative expenses since the Petition Date nor going forward in the Bankruptcy Case.

17.     The Movant is entitled to payment of administrative expenses and, as a secured creditor of the Debtor, at a minimum, is entitled to adequate protection payments to preserve the collateral, namely, the Commercial Units and RU #5, together with the Association Property and Common Elements as defined within the Declaration.

18.     According to the books and records kept and maintained by the Schecher Group, the post-petition Shared Costs for the Utilities attributable to the Debtor are, as follows:

| Utility | Dec-16 | Jan-17 | Feb-17 | Mar-17 | Apr-17 | May-17 | Total up to May 2017 |
|---|---|---|---|---|---|---|---|
| City of Miami Beach- Water | 968.67 | 3730.42 | 6133.58 | 6334.8 | 5988.12 | 5600.16 | $ 28,755.75 |
| Atlantic Broadband-Bulk account | 681.36 | 2577.19 | 681.36 | 640.32 | 1329.92 | 377.49 | $ 6,287.64 |
| Teco-GAS | 1112.25 | -469.53 | -525.39 | 463.15 | 465.15 | -124.94 | $ 920.69 |
| Mirabito-GAS | 0 | 134.6 | 606.73 | 578.68 | 494.65 | | $ 1,814.66 |
| FPL- POWER | 5906.59 | 7326.3 | 8176.8 | 9235.29 | 9215.69 | 10132.35 | $ 49,993.02 |
| Waste Management | | 1370.72 | 54.84 | 2121 | 52.2 | 2606.77 | $ 6,205.53 |
| | | | | | | | $ 93,977.29 |

| units | percentage | % per owner |
|---|---|---|
| C-1 | 2.10% | $1,968.82 |
| C-2 | 1.85% | $1,736.70 |
| C-3 | 0.85% | $795.24 |
| C-4 | 0.74% | $692.89 |
| 505 | 0.36% | $341.89 |

(the "Post-Petition Shared Costs").

19.     The Post-Petition Shared Costs form the basis of the allowance and payment of administrative expenses to the Hotel Unit, including all continued and on-going Utilities and related services provided to the Debtor during the Bankruptcy Case (the "Administrative Expense Claim"). To the extent that the Debtor disputes all or any portion of the Administrative Expense Claim, the Hotel Unit requests that the Court set an evidentiary hearing to determine the amounts owed the Hotel Unit; provided however, that the Schecher Group is not seeking stay relief against the Debtor at this time.

20.     Additionally, because of the contentious history between the Schecher Group and Debtor, including the RUOs with respect to the payment of Shared Costs, the Schecher Group is also filing this Motion, in an abundance of caution, to exercise its rights under the Declaration to, among other things, establish rules and procedures for the continued maintenance and use of the

6

Shared Components relating to the Utilities for all delinquent, **non-debtor** Residential Unit owners currently in foreclosure and not on the hotel rental program (the "Non-Debtor RUO(s)").

21.    Meanwhile, on April 27, 2017, pursuant to the Court's Order Setting Deadline for Debtor File Adversary Proceeding [ECF No. 204], the Debtor filed its Complaint To Determine Validity, Priority And Extent Of Liens, Setoff, Objection To Claim & Request For Declaratory Judgment (the "Answer") to the Complaint To Determine Validity, Priority And Extent Of Liens, Setoff, Objection To Claim & Request For Declaratory Judgment (the "Complaint")[Adv. EFC No. 1] against the Schecher Group in the related Adversary Proceeding, Case No. 17-01171-RAM (the "Adversary Case").

22.    Although the Complaint seeks, among other things, a determination of the "Baseline" amount owed by the Debtor for its portion of the Shared Costs, which may also be binding on the RUOs, the Adversary Case should not preclude the relief requested in this Motion, since there is no disputing that Shared Costs are owed to the Schecher Group whether pre and/or post-Petition. The deadline for the Schecher Group to respond to the Complaint is June 9, 2017.

23.    On May 3, 2017, following the May 2nd Disclosure Statement hearings, undersigned counsel sent an email to counsel for the Debtor advising that (the "Email"):

> "[B]ased upon the hearing yesterday, during which I advised the Court that the Schecher Group will implementing remedial measures to cut down on increasing unpaid Shared Costs by the Hotel Unit owner for Residential Units owners who have not been paying assessments on their Units, pursuant to Section 12 of the Declaration, and other applicable provisions thereof, the Schecher Group will be terminating electricity to select non-debtor Units. Please note, however, that the Residential Unit owners will nonetheless continue to have and enjoy full access to their Units consistent with the Access Order. In this regard, based upon the Court's findings that the automatic stay does not apply to the non-debtor Residential Unit owners, the Schecher Group takes the position that these measures do not violate the automatic stay nor the Access Order."

24.    The next day, on May 4, 2017, the Court entered its Report To State Court On Pending Matters And Collateral Estoppel Effect of Bankruptcy Court Ruling (the "Report")[ECF No. 230] finding, among other things, that:

> "The automatic stay in 11 U.S.C. §362 does not stay the continued prosecution of the Foreclosure Cases and nothing contained in this Order acts as a stay." See, in ¶2.

Yet, a week later, on May 11, 2017, in response to the Email, counsel for the Debtor advised that

the Association would consider such actions to violate the automatic stay. Although counsel for the parties have discussed their respective positions regarding these issue, nevertheless, the Schecher Group disagrees that the automatic stay under Section 362 applies with respect to the Non-Debtor RUOs and is authorized to proceed with the remedial measures outlined above.

25.    For clarity, these remedial measures would entail temporary, but not permanent, non-invasive cessation of electrical power to delinquent Non-Debtor RUO units by simply turning off circuit breakers without causing any damage to the Units nor interfering with the structural integrity of the 6060 Building.

26.    Through this process, the Schecher Group seeks to lower Utility costs it has been forced to absorb by initially identifying unoccupied Units which are not generating revenues to defray the increasing Shared Component costs, particularly, during the summer months. The Schecher Group will also take reasonable and appropriate steps to preserve the status quo of the Non-Debtor RUO units, including periodic inspections to keep ambient temperatures within acceptable levels to avoid any mold or other damage to the Units and 6060 Building. Importantly, because the fab and key cards are battery operated, all RUOs will continue to have uninterrupted access to their respective Units in full compliance with the Access Order.

27.    Notably, the Schecher Group has notified prospective Non-Debtor RUOs concerning the implementation of these procedures and has offered several options to resolve this issue, which included payment plans based upon greatly reduced percentages of current outstanding delinquent accounts – in some instances requiring payment of thirty (30%) or less of Shared Costs attributable to particular Units. To date, the Non-Debtor RUOs have largely ignored these concessions. Unfortunately, instead of taking advantage of working with Hotel Unit to overcome deficiencies, the Shared Costs remain unpaid.

28.    On May 26, 2017, the Debtor filed its First Amended Disclosure Statement in Support of First Amended Plan of Reorganization of Sixty Sixty Condominium Association, Inc. (the "Amended Disclosure Statement")[ECF No. 246] and First Amended Plan of Reorganization of Sixty Sixty Condominium Association, Inc. (the "Amended Plan") (collectively, the "First Amended Plan") [ECF No. 245]. In the First Amended Plan, the Debtor adopts substantially the same terms and conditions of the Proposed Sale (Bulk Sale Alternative)

described above in the Plan.[3]

29.     For these reasons, among others to be argued before the Court, there is no reason to extend or broaden the Court's determination on the limitations of the automatic stay with respect to Non-Debtor RUOs where, as here, the Debtor has no interest in non-debtor property nor are Units owned by Non-Debtor RUOs necessary for the effective reorganization of the Debtor under the First Amended Plan.

## II.    GROUNDS FOR RELIEF

30.     Under 11 U.S.C. §503(a)(1) of the Bankruptcy Code, administrative expenses are allowed for the payment of the "actual, necessary costs and expenses of preserving the estate". The payment of Utilities as a component of Shared Costs by the Schecher Group are necessary and actual expenses being incurred post-petition by the Hotel Unit in order to maintain, manage and operate the 6060 Building for the benefit of the Estate during the Bankruptcy Case with respect to the Debtor's Commercial Units and RU#505.

31.      Indeed, the Hotel Unit has been forced to pay the Utilities while the Debtor and RUOs who have had delinquent Shared Cost accounts for many years prior to the Petition Date, continue to enjoy all of the benefits of the Utilities, without accounting to the Hotel Unit for their respective obligations under the Declaration as outlined above.

32.     Accordingly, the Hotel Unit is entitled to the allowance and payment of the Administrative Expense Claim for the *post-petition* use by the Debtor of the Utilities as a Shared Cost during the Chapter 11 case, and the continued use of such Utilities belonging to the Hotel Unit by the Debtor, following the filing of the First Amended Plan. "When third parties are induced to supply goods and services to the debtor-in-possession . . . the purposes of [Section 503] plainly requires that their claims be afforded priority." *In re Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir. 1984); *see also Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000); and *In re Steward Foods, Inc.*, 64 F.3d 141 (4th Cir. 1995).

33.     Certainly, the Administrative Expense Claim stems from the post-petition services provided by the Schecher Group to the Debtor for which the Hotel Unit is entitled to the allowance and payment of such administrative expenses. Such relief is appropriate regardless of the Adversary Proceeding or other disputes that may exist between the Hotel Unit and Debtor.

---

[3] References to the HUO *Deal* Video is a red-herring designed to fuel more animosity towards the HUO.

34.     With respect to the application of automatic stay under 11 U.S.C. §362 relative the proposed implementation of regulations concerning usage of Utilities by habitually delinquent RUOs, the Schecher Group submits that the Debtor's protestations that the automatic stay extends to non-debtor Units is nothing more than an unreasonable attempt to prop up the First Amended Plan at the expense of the Hotel Unit.

35.     Keeping in mind that the Debtor, not the Hotel Unit, is in bankruptcy, there is no legal authority nor justification for the Hotel Unit to continue providing Utilities to RUOs, particularly where, as here, enforcement of the Declaration against delinquent Units does not violate the Access Order.

36.     However, to avoid any potential stay violations (which are remote), the Schecher Group seeks a ruling from the Court that (i) the automatic stay does not apply to the non-debtor Units, so long as the RUOs are given access to their Units in accordance with the Access Order and Declaration; or alternatively, (ii) if the automatic stay does apply for whatever reason under these circumstances, that "cause" exists to lift and/or modify the stay to allow the Hotel Unit to implement appropriate regulations and procedures regarding the Utilities.

37.     Section 362(d)(1) and (2) provide in relevant part that:

> **(d)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > **(1)** for cause, including the lack of adequate protection of an interest in property of such party in interest;
> >
> > **(2)** with respect to a stay of an act against property under subsection (a) of this section, if--
> >
> > > **(A)** the debtor does not have an equity in such property; and
> > >
> > > **(B)** such property is not necessary to an effective reorganization;

Section 362(d)(1) of the Bankruptcy Code provides that relief from stay shall be granted for cause. The term cause is not defined in the Bankruptcy Code, and whether cause exists should be determined on a case by case basis. *See In re Sonnax Indus.*, 907 F.2d 1280 (2d Cir. 1990).

38.     As explained in this Motion, the Schecher Group owns the Utilities - defined as Shared Components – and is entitled to relief from stay for cause pursuant to §362(d)(1) to enforce the Declaration in order to maintain and operate the 6060 Building. The delinquent RUOs, who are parties in pending state court foreclosure actions, have failed to pay their fair share of Shared Costs for Utilities. In addition, many non-debtor Units are not generating income through the hotel rental program which may be applied to offset the rising costs of Utilities to the Hotel Unit.

39.     Moreover, should there be a determination that any issues raised in this Motion overlap between the jurisdiction of the Bankruptcy Court and any state court tribunal having jurisdiction over the foreclosure actions referenced within the Report, mandatory or discretionary abstention is appropriate to allow the parties to resolve such disputes in another forum. Regardless of these factors, it is generally recognized that "[a]llowing a matter to proceed to another forum may constitute 'cause' to lift the stay". *Id.* (Citations omitted).  *See also In re Bruce,* 2000 WL 968777, 2-3 (Bankr. E.D. Pa. 2000)("A desire to permit an action to proceed to completion in another tribunal may provide another cause.");  *In re Philadelphia Athletic Club, Inc.,*  9 B.R. 280 (Bankr. E.D. Pa. 1981) (permitting state court action which was "almost at an end" to proceed in order to liquidate unsecured creditor's claim).

40.     Further, the Schecher Group is also entitled to relief from stay pursuant to §362(d)(2) because (i) the Debtor does not hold any equity in the non-debtor Units and (ii) the Units are not necessary for an effective reorganization of the Debtor even under the First Amended Plan.

41.     The Schecher Group also requests that, in the event that the automatic stay is imposed on the Hotel Unit, but is lifted and modified, the Court determine that the fourteen (14) day stay provided by Bankruptcy Rule 4001(a)(3), of any order granting relief from the automatic stay, should not be applicable to this Motion given prior the RUO delinquencies and rapidly increasing cost of the Utilities during the upcoming summer months.

## III.    <u>RELIEF REQUESTED</u>

**WHEREFORE**, the Schecher Group, Inc., respectfully requests that this Court enter an Order (i) granting the Motion; (ii) allowing and authorizing the payment of the Administrative Expense Claim by the Debtor during the Bankruptcy Case; (iii) finding that the automatic stay under 11 U.S.C. §362 relative the proposed implementation of regulations concerning usage of

Utilities does not apply to the non-debtor Units and delinquent RUOs; (iv) alternatively, granting the Hotel Unit relief from the automatic stay, pursuant to 11 U.S.C. §362(d)(1) and (2) with respect to the implementing regulations and procedures with respect to the Utilities as set forth herein; (v) determining that the stay period under Bankruptcy Rule 4003(a)(1) shall not be applicable to the non-debtor Units; (vi) allowing the Schecher Group to immediately, upon the entry of an Order granting this Motion, enforce the Declaration with respect to the Utilities; and (vii) granting such other and further relief as it deems just and proper.

**Respectfully submitted this _31st_ day of March, 2017.**

**BECKER & POLIAKOFF, P.A.**
*Attorneys for Schecher Group, Inc. and Casablanca Rental Services, Inc.*
121 Alhambra Plaza, 10th Floor
Coral Gables, FL  33134
(305) 262-4433 Telephone
E-mail: Sdavis@bplegal.com

By: _____
Steven M. Davis
Florida Bar # 894249

**GENOVESE, JOBLOVE & BATTISTA, P.A.**
*Co-Counsel for Schecher Group, Inc.*
100 S.E. 2nd Street, Suite 4400
Miami, FL 33131
Tel: (305) 349-2300
Fax: (305) 349-2310

By:   /s/ Barry P. Gruher
        Barry P. Gruher, Esq.
        Fla. Bar No. 960993
        Email: bgruher@gjb-law.com

12

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion has been furnished to all parties via CM/ECF on this __31st__ day of May, 2017.

By: __/s/ Barry P. Gruher_____
Barry P. Gruher, Esq.
Fla. Bar No. 960993
Email: bgruher@gjb-law.com

## SERVICE LIST

### *Served Via CM/ECF Notification*

Magda Abdo-Gomez, Esq on behalf of Creditor Florida Building & Supply, Inc.
mabdoatty82@bellsouth.net

Chase A Berger on behalf of Interested Party Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust as Owner Trustee of the Residential Credit Opportunities Trust III
chase@bergerfirm.com, paralegal@bergerfirm.com, trosenfeld@bergerfirm.com;
lburgess@bergerfirm.com

David Marshall Brown on behalf of Creditor Penthouse 68, LLC
DavidBrownfll@gmail.com

David Marshall Brown on behalf of Creditor Rodrigo and Maria Veldez Family Trust
DavidBrownfll@gmail.com

David Marshall Brown on behalf of Creditor Sixty Sixty Condominium Unit Owners
DavidBrownfll@gmail.com

Steven M Davis on behalf of Creditor Schecher Group, Inc.
sdavis@bplegal.com

Steven M Davis on behalf of Creditor Richard J. Schecher, Sr.
sdavis@bplegal.com

Steven M Davis on behalf of Interested Party Condominium Hotel Management Corporation, Inc.
sdavis@bplegal.com

Barry P Gruher on behalf of Creditor Schecher Group, Inc.
bgruher@gjb-law.com, vlambdin@gjb-law.com; gjbecf@gjb-law.com; cesser@gjb-law.com;
chopkins@gjb-law.com

Michael D Lessne on behalf of Interested Party Kingfisher Island, Inc.
mlessne@broadandcassel.com, jphillips@broadandcassel.com

Paula Levy on behalf of Interested Party PENTHOUSE 68, LLC
plevy@ritterchusid.com, lglatzer@ritterchusid.com

Brett D Lieberman on behalf of Debtor Sixty Sixty Condominium Association, Inc.
blieberman@messana-law.com, emair@messana-law.com; nbarrus@messana-law.com;
tmessana@messana-law.com; tzeichman@messana-law.com; thurley@messana-law.com;
mwslawfirm@gmail.com

Thomas M. Messana, Esq. on behalf of Debtor Sixty Sixty Condominium Association, Inc.
tmessana@messana-law.com, emair@messana-law.com;blieberman@messana-
law.com;thurley@messana-law.com;tmessana@bellsouth.net;nbarrus@messana-
law.com;ekates@bakerlaw.com;tzeichman@messana-law.com;mwslawfirm@gmail.com

Barry S. Mittelberg on behalf of Interested Party Elaine Robinson
barry@mittelberglaw.com, stacey@mittelberglaw.com

Barry S. Mittelberg on behalf of Interested Party Maria Schoentag
barry@mittelberglaw.com, stacey@mittelberglaw.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Brian L Rosaler, Esq on behalf of Creditor Federal National Mortgage Association
ecfbankruptcy@popkinrosaler.com

Meredith Mishan Silver on behalf of Interested Party Setter, LLC
msilver@phillipslawyers.com,  wcapote@phillipslawyers.com

Ken Taninaka on behalf of Interested Party Ciaraso Corp.
ktaninaka@skdrlaw.com,  rsaetae@skdrlaw.com; vdamian@skdrlaw.com

Ken Taninaka on behalf of Interested Party Rino International, Inc.
ktaninaka@skdrlaw.com, rsaetae@skdrlaw.com; vdamian@skdrlaw.com

Ken Taninaka on behalf of Interested Party Robys 1 Corp.
ktaninaka@skdrlaw.com,  rsaetae@skdrlaw.com; vdamian@skdrlaw.com

Ken Taninaka on behalf of Interested Party Sixty Sixty 706 & 906 LLC
ktaninaka@skdrlaw.com,  rsaetae@skdrlaw.com; vdamian@skdrlaw.com

Ken Taninaka on behalf of Interested Party Hansrah Bhojwani
ktaninaka@skdrlaw.com, rsaetae@skdrlaw.com; vdamian@skdrlaw.com

Ken Taninaka on behalf of Interested Party Martin Lange
ktaninaka@skdrlaw.com, rsaetae@skdrlaw.com; vdamian@skdrlaw.com

Ken Taninaka on behalf of Interested Party Mohini Hotchandini
ktaninaka@skdrlaw.com, rsaetae@skdrlaw.com; vdamian@skdrlaw.com

Ken Taninaka on behalf of Interested Party Nandini Bhojwani
ktaninaka@skdrlaw.com, rsaetae@skdrlaw.com; vdamian@skdrlaw.com

Ken Taninaka on behalf of Interested Party Richard Vasquez
ktaninaka@skdrlaw.com, rsaetae@skdrlaw.com; vdamian@skdrlaw.com

Ken Taninaka on behalf of Interested Party Sunjay Hotchandini
ktaninaka@skdrlaw.com, rsaetae@skdrlaw.com;vdamian@skdrlaw.com

Steve D Tran on behalf of Creditor Wilmington Trust, National Association, Not In Its
Individual Capacity, But Solely As Trustee For MFRA Trust 2014-2
bk@exllegal.com