UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

Sixty Sixty Condominium
Association, Inc.

Case No. 16-26187-RAM

Chapter 11

Debtor.

_____/

**DEBTOR'S RESPONSE TO MOTION AND APPLICATION BY SCHECHER GROUP, INC. FOR (I) ALLOWANCE AND COMPELLING PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. §§ 503(a) & (b)(1)(A), ALTERNATIVELY (II) RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C §362(d)**

Debtor Sixty Sixty Condominium Association, Inc. ("**Debtor**"), by and through undersigned counsel, hereby files this *Debtor's Response to Motion and Application by Schecher Group, Inc. For (I) Allowance and Compelling Payment of Administrative Expense Claim Pursuant to 11 U.S.C. §§ 503(a) & (b)(1)(A) and/or, Alternatively (II) Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* (the "**Response**") responding in opposition to the *Motion and Application by Schecher Group, Inc. For (I) Allowance and Compelling Payment of Administrative Expense Claim Pursuant to 11 U.S.C. §§ 503(a) & (b)(1)(A) and/or, Alternatively (II) Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* (Doc. No. 252) (the "**Motion**") filed by Schecher Group, Inc. ("**Schecher**") and requesting this Court enter an Order denying the Motion and all relief requested therein. In support, Debtor states the following:

1. Debtor is continuing in possession of its property and both operating and managing its business as Debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2. This Court has jurisdiction to consider this Response pursuant to 28 U.S.C. §§ 157 and 1334. The subject matter of this Response is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

3. In 1992 a waterfront Holiday Inn hotel was built in Miami Beach just east of Allison Island and located at 6060 Indian Creek Drive in Miami Beach, Florida. In 2006, the developer, Indian Creek Investors, Ltd. ("**Developer**"), converted the hotel to a hybrid condominium/hotel; the Sixty Sixty Condominium (the "**Condominium**").

1. On or about April 10, 2006, the Condominium was officially created by recording the Declaration in the Official Records Book 24411, Page 1780 of the Public Records of Miami-Dade County, Florida (the "**Declaration**").

2. The Declaration was drafted at the behest of the Developer, by counsel engaged by the Developer, and is signed solely by an agent of the Developer.[1]

4. The Condominium is composed of 87 "units", which includes: (1) 82 residential units (the "**Residential Units**") that are privately owned by the Residential Unit owners (the "**RUOs**"); (2) four commercial units (the "**Commercial Units**") presently owned by the Debtor; and, (3) generally speaking, all areas not within a Residential Unit or Commercial Unit are deemed to be a part of a hotel unit (the "**HU**"). In addition to the Commercial Units, Debtor also owns Residential Unit #505 (collectively, the "**Debtor Units**").

5. On December 5, 2016 (the "**Petition Date**"), Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, in the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

6. On May 26, 2017, Debtor filed the *First Amended Disclosure Statement in Support of First Amended Plan of Reorganization of Sixty Sixty Condominium Association, Inc.* (Doc. No. 246) (the "**Amended Disclosure Statement**").

---

[1] The Declaration is signed by Elizabeth Procaccianti as President of TH Capital GP, Inc. the General Partner of the Developer.

7. Attached to the Amended Disclosure Statement as Exhibit "G," is a budget (the "**Budget**") outlining amounts going forward sufficient to satisfy future obligations and maintain the Condominium. A copy of the Budget is attached hereto as **Exhibit** "**A**."

8. The Budget reflects a 2017 annual expense of approximately $779,016.70 (a monthly budget of approximately $64,918.06).

9. Pursuant to the Declaration, Schecher is responsible for paying approximately 64.5962% of the Debtor's budgeted expenses, approximately $503,215.19 annually and $41,934.60 on a monthly basis.

10. Accordingly, in addition to all pre-petition obligations (approaching a million dollars), Schecher owes the Debtor approximately $293,542.20 for post-petition assessments.

11. To date, notwithstanding demand made upon Schecher for payment, Schecher has not paid a single dollar to the Debtor during its bankruptcy case.

12. Shortly after the Amended Disclosure Statement was filed, on May 31, 2017, Schecher filed the Motion, which is the subject of this Response.

## ARGUMENT

13. Through the Motion, Schecher seeks two forms of relief. First, Schecher demands payment of $5,535.54 as an administrative expense,[2] on account of shared costs for utilities attributable to Debtor (the "**Admin Expense Issue**"). Second, Schecher requests this Court either (1) determine the automatic stay is not applicable with respect to utilities provided to Residential Units, or (2) grant relief from the automatic stay to cease providing electricity to certain Residential Units (the "**Automatic Stay Issue**").

---

[2] **It's worth noting, the mere drafting and arguing of Schecher's Motion will likely cost Schecher more in legal fees than the $5,535.54 administrative claim being asserted.**

3

**The Admin Expense Issue**

14. "An administrative expense claimant has the burden of proving that either the debtor-in-possession incurred the transaction on which the claim is based or that the claimant furnished consideration to the debtor-in-possession and that the transaction resulted in a direct benefit to the debtor-in-possession." *See, e.g.*, *In re Sports Shinko (Florida) Co.*, 333 B.R. 483, 500 (Bankr. M.D. Fla. Sept. 28, 2005) (citing cases).

15. The "actual" and "necessary" provisions of 11 USCS § 503(b)(1)(A) must be narrowly construed, in order to keep fees and administrative expenses at minimum so as to effectuate basic policy of section of preserving estate for benefit of all creditors. *See, e.g.*, *Varsity Carpet Servs. v. Richardson (In re Colortex Indus.)*, 19 F.3d 1371, 1377 (11th Cir. Ga. May 2, 1994) (citing *Otte v. United States,* 419 U.S. 43, 53, 95 S. Ct. 247, 254, 42 L. Ed. 2d 212 (1974)); *In re Finevest Foods*, 140 B.R. 581 * (Bankr. M.D. Fla. May 15, 1992) (explaining: "statutory preference must be strictly construed in order to protect all creditors, as well as the integrity of the bankruptcy system.").

16. An "item-by-item" evaluation is appropriate when determining specific expenses allowable as an administrative claim under 11 U.S.C. § 503(b). *See, e.g.*, *In re Sports Shinko*, 333 B.R. at 492.

17. Utilities cannot be accorded administrative priority under 11 U.S.C. § 503 as a cost of preserving the estate when they are voluntarily supplied in the absence of payment, especially when their continued supply was not induced by an offer of administrative priority. *See In re Woodland Corp.*, 48 B.R. 623, 625 (Bankr. D.N.M. Apr. 24, 1985) (explaining utilities will not "after the fact, be granted the inducement of administrative priority where no inducement was required."); *see also In re Watts*, 85 B.R. 470 * 472 (Bankr. S.D. Ohio Apr. 29, 1988) ("For the

utility to tolerate nonpayment for longer than a reasonable period of time, say two or three months, is to close its eyes to its jeopardy of not being paid at all for that service. This attitude affects not only itself, but is positively detrimental to other creditors of the debtor, for it may well signal that the debtor's estate is being dissipated in such a way as to defeat the rights of other creditors.").

18. In this case, Schecher seeks an administrative expense claim for an allocable portion of the accrued expenses of the following over approximately the past seven months: (1) City of Miami Beach – Water; (2) Atlantic Broadband – Bulk Account; (3) Teco – Gas; (4) Mirabito – Gas; (5) FPL – Power; and (6) Waste Management (collectively, the "**Utilities**").

19. Schecher has done nothing more than assert a blanket demand for administrative expense priority in relation to the Utilities. Schecher has not explained how the Utilities are actual or necessary or that all or any of the Utilities resulted in a direct benefit to Debtor's estate. *In re Sports Shinko*, 333 B.R. at 490 ("The Eleventh Circuit has interpreted this Code provision to not only require that the expense be actual and necessary, but also that there be a concrete benefit to the debtor's estate.")

20. Schecher impermissibly seeks an administrative expense claim for Utilities extending back prior to the Petition Date. *See In re Sports Shinko*, 333 B.R. at 500 ("A key purpose of the rule is to ensure that the benefit was provided to the *postpetition* estate, in contrast to the *prepetition* debtor.").

21. Schecher waited approximately seven months for expenses associated with the Utilities to accrue before "retroactively" seeking an administrative expense claim. Debtor did not bargain for continued access to the Utilities. Schecher was not offered an administrative expense as consideration in exchange for continued provision of the Utilities.

22. Schecher voluntarily continued and still continues providing Utilities because doing so is in its best interest, not as Debtor's creditor, but as a stake-holder in the Condominium.

23. Moreover, in that three of the Debtor's units (CU-2, CU-3, and CU-4) are open air terraces, Schecher's Motion fails to adequately demonstrate (or even allege) how Debtor's terrace units used, or were benefitted by, the provision of the Utilities.

24. Moreover, Debtor's Budget clearly specifies Schecher's obligation to pay the Debtor's assessments in the amount of $41,934.60 per month. Over the approximately seven months since the Petition Date, Schecher's contribution amounts to $293,542.20 (the "**Schecher Obligation**"). As of the Date of this Response, Debtor has received no payment whatsoever of the Schecher Obligation.

25. For all the reasons above, Schecher should not be granted an administrative expense claim for the Utilities. If Schecher is granted an administrative expense claim, Schecher should have to prove on an item-by-item basis, that the expense provided a concrete benefit to Debtor's estate.

26. Even if Schecher carries that burden, Schecher should not be awarded an administrative expense claim retroactively **or** for amounts accruing prior to the Petition Date. In any event, any administrative expense claim awarded to Schecher should be merely setoff against the far more substantial $293,542.20 Schecher Obligation owed to Debtor.

**The Automatic Stay Issue**

27. The automatic stay may act as a shield with respect to a non-debtor party when such an identity of interest exists between the debtor and third party non-debtor, such that action against the non-debtor party will directly affect the debtor. *See Whitney Nat'l Bank v. Safety*

*Guide of Ala.*, LLC, 2008 U.S. Dist. LEXIS 95166 at *13-14 (M.D. Ala. Nov. 21, 2008) (citing cases).

28. Specifically, "…where a particular action against the non-debtor party threatens to adversely affect the debtor's reorganization efforts, courts are willing to extend § 362(a)'s coverage accordingly." *Id.* Application of non-debtor stay is particularly germane when failure to do so threatens serious risk to a reorganization in the form of immediate adverse economic consequences for a debtor's estate. *See id.* at *4-15.

29. Schecher has no authority, under the Declaration or otherwise, to cut off utilities to Residential Units. Doing so would also create an administrative nightmare and create a whole host of issues to which Schecher's Motion does not respond. For example, if Schecher cuts off utilities to certain units, will those units receive a going forward credit for the cost of utilities that they are no longer using? Will the RUOs owning such units still be obligation for their proportionate share of Shared Costs under the Declaration? Will utility cost savings be applied across the board to all other RUOs?

30. Schecher offers no formula or any other means of calculating or accounting for absence of contributions from the several RUOs whose utilities would be terminated (or the effect on the balance of the RUOs, including the Debtor).

31. Even if Schecher had proposed a formula, it would certainly be an unwieldy and burdensome construct. Debtor, HU, and RUO's must all shoulder certain common expenses. The net effect of fewer people paying a larger pool is necessarily an increase in complexity and, most significantly, cost for each person.

32. Schecher is seeking to side-step the automatic stay for, essentially, purposes of pressuring the key constituency (the RUOs) that are going to support and fund the Debtor's reorganization efforts.

33. In that pursuit, Schecher fails to consider the fact that the Condominium does and necessarily must act as a whole. When actions are taken with respect to the Residential Units contiguous to the Debtor Units, the impact is felt by the Debtor.

34. For all the reasons above, the relationship between Debtor and RUO's is sufficiently entwined such that action against the RUO's or the Residential Units will necessarily impact the Debtor. Specifically, the actions Schecher desires to take against the RUO's and the Residential Units will adversely affect Debtor's reorganization efforts through, *inter alia*, immediate adverse economic consequences.

**WHEREFORE**, Debtor requests this Court enter an Order (1) denying the Schecher Motion, (2) denying Schecher's administrative expense claim regarding the Utilities and/or anything else, (3) prohibiting Schecher from taking action at the Condominium adverse to the ROU's or the Residential Units, and (4) granting any further or additional relief this Court deems necessary or appropriate.

Respectfully submitted on June 19, 2017.

**MESSANA, PA**
*Counsel for the Debtor*
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Telephone: (954) 712-7400
Facsimile: (954) 712-7401
Email: blieberman@messana-law.com

/s/ Brett D. Lieberman
Thomas M. Messana
Florida Bar No. 991422
Brett D. Lieberman
Florida Bar No. 69583

# Exhibit "A"

## ESTIMATED OPERATING BUDGET FOR SIXTY SIXTY CONDOMINIUM ASSOCIATION, INC.

## FOR THE ONE YEAR PERIOD FROM JANUARY 1, 2017 THROUGH DECEMBER 31, 2017

|  | 2017 Monthly Budget | 2017 Annual Budget |
|---|---:|---:|
| **INCOME:** | | |
| Common Assessments | 64,918.06 | 779,016.70 |
| Total Income | 64,918.06 | 779,016.70 |
| **EXPENSES** | | |
| **Operating Expenses** | | |
| Legal Fees | 16,666.67 | 200,000.00 |
| Accounting | 1,305.00 | 15,660.00 |
| Insurance | 1,083.33 | 13,000.00 |
| Office Supplies & Postage | 125.00 | 1,500.00 |
| Annual Corporate Report | 5.10 | 61.25 |
| Fees Payable to Division | 29.00 | 348.00 |
| Real Estate Property Taxes For Association Owned Units | 2,464.25 | 29,571.00 |
| Expenses for Assessments of the Association Owned Units & Commercial Units | 2,121.70 | 25,460.45 |
| Contingency for 2017 Uncollected Assessments for Assoc Owned & Commercial Units | 3,825.00 | 45,900.00 |
| Shared Components - Expenses for Assoc. & Commercial Units per 2017 Budget of Hotel Unit Owner | 24,793.00 | 297,516.00 |
| Contingent Liabilities for Pending Litigation Matters - Payable over 5 Years | 12,500.00 | 150,000.00 |
| **Total Operating Expenses** | 64,918.06 | 779,016.70 |
| **Reserve Expenses** | | |
| Reserves for Roof Replacement | N/A | N/A |
| Reserves for Building Painting | N/A | N/A |
| Reserves for Pavement Resurfacing | N/A | N/A |
| TOTAL EXPENSES (INCLUDING RESERVES) | 64,918.06 | 779,016.70 |
| TOTAL EXPENSES (NOT INCLUDING RESERVES) | 64,918.06 | 779,016.70 |
| Net Income / (Loss) | 0.00 | 0.00 |

SIXTY - SIXTY CONDOMINIUM ASSOCIATION, INC.
PERCENTAGE ALLOCATION BY UNIT 2017 PROPOSED BUDGET

| Quantity | Unit % CE | Total | % | 2017 Proposed BUDGET | TOTAL | ANNUAL - 2017 Maintenance Per Unit Type | CU'S & # 505 | MONTHLY - 2017 Maintenance Per Unit Type |
|---|---|---|---|---|---|---|---|---|
| | | | | $779,016.70 | | | | |
| 000-A | 0.3696 | 20 | 7.392 | $57,584.91 | $57,584.91 | $2,879.25 | | $239.94 |
| 000-B | 0.3540 | 28 | 9.912 | $77,216.14 | $77,216.14 | $2,757.72 | | $229.81 |
| 000-C | 0.2996 | 8 | 2.3968 | $18,671.47 | $18,671.47 | $2,333.93 | | $194.49 |
| 0000-D | 0.3638 | 10 | 3.638 | $28,340.63 | $28,340.63 | $2,834.06 | $2,834.06 | $236.17 |
| 0000-E | 0.3706 | 10 | 3.706 | $28,870.36 | $28,870.36 | $2,887.04 | | $240.59 |
| 0000-F | 0.7149 | 2 | 1.4298 | $11,138.38 | $11,138.38 | $5,569.19 | | $464.10 |
| 0000-G | 0.3385 | 1 | 0.3385 | $2,636.97 | $2,636.97 | $2,636.97 | | $219.75 |
| 0000-H | 0.3404 | 1 | 0.3404 | $2,651.77 | $2,651.77 | $2,651.77 | | $220.98 |
| 0000-I | 0.3560 | 1 | 0.356 | $2,773.30 | $2,773.30 | $2,773.30 | | $231.11 |
| 0000-J | 0.3667 | 1 | 0.3667 | $2,856.65 | $2,856.65 | $2,856.65 | | $238.05 |
| UNIT C-1 | 2.0960 | 1 | 2.096 | $16,328.19 | $16,328.19 | $16,328.19 | $16,328.19 | $1,360.68 |
| UNIT C-2 | 1.8480 | 1 | 1.848 | $14,396.23 | $14,396.23 | $14,396.23 | $14,396.23 | $1,199.69 |
| UNIT C-3 | 0.8462 | 1 | 0.8462 | $6,592.04 | $6,592.04 | $6,592.04 | $6,592.04 | $549.34 |
| UNIT C-4 | 0.7373 | 1 | 0.7373 | $5,743.69 | $5,743.69 | $5,743.69 | $5,743.69 | $478.64 |
| HU | 64.5962 | 1 | 64.5962 | $503,215.19 | $503,215.19 | $503,215.19 | | $41,934.60 |
| Totals | | 87 | 100.00 | $779,015.92 | $779,015.92 | | $45,894.21 | |