

**ORDERED in the Southern District of Florida on June 27, 2017.**

Robert A. Mark, Judge
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:

Sixty Sixty Condominium Association, Inc.,                    Case No. 16-26187-RAM

      Debtor-in-Possession.                    Chapter 11

_____/

**ORDER GRANTING *DEBTOR'S EXPEDITED MOTION FOR ENTRY OF AN ORDER:***
***(I) APPROVING JASON WELT AND TRUSTEE REALTY, INC. AS DEBTOR'S REAL***
***ESTATE PROFESSIONAL; (II) APPROVING PROPOSED BIDDING PROCEDURES;***
***(III) APPROVING FORM AND NOTICE THEREOF; AND (IV) SCHEDULING HEARING***
***TO CONSIDER APPROVAL OF "HIGHEST AND BEST" BID***

THIS MATTER came before the Court on April 13, 2017 at 2:00 pm, on May 2, 2017 at

2:00 p.m. and again on June 21, 2017 at 2:00 pm (the "Hearing"), upon *Debtor's Expedited*

*Motion For Entry Of An Order: (i) Approving Jason Welt And Trustee Realty, Inc. as Debtor's*

*Real Estate Professional; (ii) Approving Proposed Bidding Procedures; (iii) Approving Form*

*And Notice Thereof; and (iv) Scheduling Hearing To Consider Approval of "Highest And Best"*

*Bid* (ECF No. 174) (the "Motion"); the *Joinders* in the Motion filed by (i) approximately seven

residential unit owners represented by the Salomon, Kanner, Damian & Rodriguez, P.A. law firm

(ECF No. 185); (ii) approximately 42 residential unit owners represented by the Florida

Litigation Group, P.A. law firm (ECF No. 190); and (iii) Florida Building & Supply, Inc. (ECF No. 199, subsequently withdrawn ECF No. 258); (iv) the *Objection* to the Motion filed by the Schecher Group, Inc. ("Schecher Group" or "HUO") (ECF No. 200); (v) the *Limited Objection* to the Motion filed by Kingfisher Island, Inc. ("KFI") (ECF No. 201); (vi) this Court's *Order (1) Setting Hearing and Deadlines on Amended Disclosure Statement (2) Setting Briefing Schedule on Right of First Refusal Issue (3) Sustaining in Part Objection to Disclosure Statement and (4) Continuing Hearings on Application to Employ Manager and Application to Employ Broker and Approve Bid Procedures* (ECF No. 230) as modified by (ECF No. 247); (vii) *Schecher Group, Inc.'s, Objection To Application To Employ Broker And Approve Bid Procedures And For Enforcement Of Hotel Unit Owner's Right Of First Refusal Under Declaration* (ECF No. 251); and (viii) *Debtor's Response To Schecher Group, Inc.'s Objection To Application To Employ Broker And Approve Bid Procedures And For Enforcement Of Hotel Unit Owner's Right Of First Refusal Under Declaration* (ECF No. 260).

And, the Court, having reviewed the Motion and the Broker's[1] Declaration of Disinterestedness attached as Exhibit "D" thereto, having previously granted the Motion, in-part, by entry of that certain *Order Granting In-Part Debtor's Expedited Motion For Entry Of An Order: (i) Approving Jason Welt And Trustee Realty, Inc. as Debtor's Real Estate Professional; (ii) Approving Proposed Bidding Procedures; (iii) Approving Form And Notice Thereof; and (iv) Scheduling Hearing To Consider Approval of "Highest And Best" Bid and Setting Further Hearing* (ECF NO. 212); having heard argument and proffer of counsel for the Debtor, the HUO and others, finding that due and adequate notice was provided to all parties-in-interest, finding that the Sale Process (as modified on the record during the Hearing) is calculated to obtain a highest and best offer for a potential Bulk Sale that would then be presented to the residential

---

[1] Capitalized terms shall have the same meaning as ascribed to them in the Application.

unit owners (RUOs), including those indicated above, for their review, approval, or rejection. Further, on June 23, 2017, the Court entered its Order Reserving Ruling on Right of First Refusal (the "Partial ROFR Order")(ECF NO. 285) making partial rulings that (i) if a Sale Contract[2] is executed by the Debtor and RUOs, the Schecher Group has a ROFR and (ii) the Debtor's Commercial Units and Residential Unit 505 (the "Debtor Units") are not subject to the ROFR such that the HUO cannot be compelled to buy the Debtor Units under a single Sale Contract. However, the Court reserved ruling on, among other issues, the proper interpretation of the ROFR if and when a Sale Contract is executed; the exercise by the Schecher Group of its ROFR concerning each of the non-Debtor unit(s); and the exercise of jurisdiction, if any, by the Court to rule on the ROFR, which shall be considered at the July 13th hearing scheduled pursuant to this Order.

Notwithstanding the foregoing, and subject to the Partial ROFR Order and objections noted above, the Court finds that the Sale Process (as modified on the record during the Hearing) is reasonable, appropriate and within the Association's and Broker's authority, and otherwise finding good cause to grant the relief requested, it is

**ORDERED,** as follows:

1.      The Motion is Granted.

2.      Debtor is authorized to retain Jason Welt and Trustee Realty, Inc. (together, "Broker"), as Debtor's real estate broker and to assist in and facilitate the Sale Process pursuant to the terms of the Motion and this Order, and the payment terms referenced in the Motion are hereby approved.

3.      This Court finds that the Sale Process (as modified on the record during the Hearing) is fair and reasonable and is approved. The Debtor and the Broker are authorized to

---

[2] All capitalized terms shall have the same meaning as used in the Partial ROFR Order.

take any and all steps reasonable and necessary to implement the Sale Process (as modified on the record during the Hearing).

4.      The form of Bidding Procedures Notice as attached hereto as Exhibit "A" is approved.

5.      The Final Approval Hearing to determine and approve the highest and best offer shall be held on July 13, 2017 at 3:00 p.m. at the C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, Courtroom 4, Miami, Florida 33128 and, if need be, continued to July 14, 2017 at 10:00 a.m. This Court finds good cause to shorten the notice period.

6.      Any objection to be considered at the Final Approval Hearing shall be filed on or before 4:30 p.m. EST two (2) business days prior to the Final Approval Hearing.

###

Submitted by:  Brett D. Lieberman, Esq., Messana, P.A., 401 East Las Olas Boulevard, Suite 1400, Fort Lauderdale, Florida 33301, Telephone:  954-712-7400, Facsimile:  954-712-7401, Email:  blieberman@messana-law.com

Copy furnished to Brett D. Lieberman, Esq., who is directed to serve a conformed copy of this order on all interested parties and file a certificate of service with the Court.

**EXHIBIT A**
**Bidding Procedures Notice**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

In re:

Sixty Sixty Condominium Association, Inc.                  Case No. 16-26187-RAM

       Debtor-in-Possession.                                    Chapter 11

_____/

### NOTICE OF OFFER SUBMISSION PROCEDURES

Sixty Sixty Condominium Association, Inc., the Chapter 11 debtor and debtor-in-possession herein (the "**Debtor**"), hereby gives notice of the offer submission procedures (the "**Submission Procedures**") for any interested party (a "**Proposed Purchaser**") to make offers to participate as a Proposed Purchaser of 82 Residential Units, or so many of them as choose to participate in a simultaneously closed Bulk Sale[1] ("**Residential Units**") and 4 Commercial Units ("**Commercial Units**", together with the Residential Units, the "**Property**") located at 6060 Indian Creek Drive, Miami Beach, FL (the "**Condominium**"),[2] subject to the rights under the Declaration, including rights of first refusal in favor of the Schecher Group, Inc., if and as applicable, and all other improvements related thereto (as hereinafter defined), and states as follows:

### Submission Procedures

1.      Proposed Purchasers are bidding on: (i) the opportunity to have the Debtor's exclusive cooperation as a potential buyer of the Property subject to the terms of a proposed letter of intent or purchase and sale agreement to be offered to all Residential Unit owners; and (ii) the Debtor's commitment to sell its Residential Unit 505 and the Commercial Units (the "**Transaction**").

2.      Proposed Purchasers are encouraged to speak with the Debtor's broker, Jason

---

[1] All capitalized terms not defined herein shall have the same meaning ascribed to them in Debtor's ") *Debtor's Expedited Motion For Entry Of An Order: (i) Approving Jason Welt And Trustee Realty, Inc. as Debtor's Real Estate Professional; (ii) Approving Proposed Bidding Procedures; (iii) Approving Form And Notice Thereof; and (iv) Scheduling Hearing To Consider Approval of "Highest And Best" Bid* (the "Motion").

[2] The Declaration of Sixty Sixty Condominium can be found in the Official Records Book 24411, Page 1780 of the Public Records of Miami-Dade County, Florida (the "Declaration").

1

Welt, Trustee Realty, Inc. (the "Broker"),[3] to discuss the Transaction through and until 4:30 p.m. EST on June 29, 2017.

3.      Proposed Purchasers, must deliver[4] an <u>executed</u> offer "higher and better" than the letter of intent attached hereto as **Attachment "1"** in substantially the same form as in **Attachment "2"** (a "Best and Final Offer")[5] **between the hours of 10:00 am EST and 4:30 pm EST on June 30, 2017** (the "Submission Window") to the Broker via e-mail.

4.      Broker shall not communicate with any Proposed Purchaser from and after 4:30 pm EST on June 29, 2017 until 4:00 pm EST on July 7, 2017 (at which point the identity of the "highest and best" Best and Final Offer will be disclosed) except to confirm that Broker is in receipt of its Best and Final Offer and accompanying documents.

### *Best and Final Offer Qualifications*

5.      For consideration, a Best and Final Offer must submitted during the Submission Window and be accompanied by:

   i.   proof of funds or financing sufficient to evidence the Proposer Purchaser's ability to close on the Best and Final Offer, in the Debtor's sole judgment;
   ii.  proof of an escrow deposit in the amount of at least $50,000;
   iii. an executed confidentially agreement in substantially the form as attached hereto as **Attachment "3"**; and
   iv.  Proposed Purchasers are required to disclose any relationship to the Debtor, any creditor, any Residential Unit owner or any of such parties' principals

(together, the "**Bid Qualifications**").

6.      The terms of all Best and Final Offers shall be kept confidential, except from Residential Unit owners who execute the confidentiality agreement, until July 7, 2017 at 4:00 pm EST upon which time the "highest and best" Best and Final Offer, in the Debtor's sole determination (the "**Winning Offer**"), shall be available for disclosure to any Prospective

---

[3] Broker's e-mail address is jw@jweltpa.com.
[4] Proposed Purchasers are encouraged to call the Broker to confirm receipt of their Best and Final Offer prior to the end of the Submission Window.
[5] Debtor reserves the right to consider all nonconforming offers in its sole and exclusive discretion.

Purchaser who submitted a Best and Final Offer, the Schecher Group, Inc. and the Bankruptcy Court. Best and Final Offers shall not contain confidentially provisions that would interfere with this process. The Schecher Group, Inc. may seek to conduct discovery with respect to the Best and Final Offer.

7.      The Winning Offer shall be submitted to the Bankruptcy Court at the Final Approval Hearing (which is presently scheduled for July 13, 2017 at 3:00 pm at the C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, Courtroom 4, Miami, Florida 33128 and, if need be, continued to July 14, 2017 at 10:00 am).  At the Final Approval Hearing Debtor shall request authority to enter into the contract proposed on the terms therein.

8.      The determination of the Winning Offer shall take into consideration, among other things, the following non-exclusive criteria, in no certain order:

  i.    Total purchase price for the Residential Units;
  ii.   Total purchase price for all Commercial Units;
  iii.  Length of due diligent period;
  iv.   Number of units satisfying a Minimum Participation Requirement;
  v.    Fewest contingencies;
  vi.   Experience and reputation of Proposed Purchaser and its agents.

9.      For any inquires regarding the Submission Procedures, the Property or the Transaction, please contact the Debtor's real estate professional, Jason Welt, Trustee Realty, Inc.

Dated: June 26, 2017                     Respectfully submitted,
                                         MESSANA, P.A.
                                         *Counsel for Debtor*
                                         401 East Las Olas Boulevard, Suite 1400
                                         Fort Lauderdale, FL 33301
                                         Telephone: (954) 712-7400
                                         Facsimile: (954) 712-7401
                                         Email: blieberman@messana-law.com
                                         /s/ Brett D. Lieberman
                                         Thomas M. Messana
                                         Florida Bar No. 0991422
                                         Brett D. Lieberman
                                         Florida Bar No. 69583

3

# Attachment 1

February 24, 2017

Brett Lieberman
Messana, P.A.
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301

**RE:  6060 Association and Residential Units, Miami Beach, FL.**

███████████ ("**KFI**") is pleased to submit this letter of intent ("**LOI**"), on behalf of a to
be formed entity ("**Purchaser**"), for the purchase of condominium interests (the "**Transaction**")
in the 82 Residential Units ("**Residential Units**") and 4 Commercial Units ("**Commercial
Units**", together with the 82 Residential Units, the "Property") located at 6060 Indian Creek
Road, Miami Beach, FL and all other improvements located thereon, to Sixty Sixty
Condominium Association and its' Residential Unit owners (the "**Sellers**").

Please note the following:

- The Purchaser would consider acquiring the Property for a total consideration of Ten
  Million Three Hundred Twenty Thousand Dollars ($10,320,000).

- The Purchaser would deposit into escrow, a Fifty Thousand ($50,000) earnest money
  deposit upon signing a Purchase and Sale Agreement which deposit shall become non-
  refundable upon the expiration of the Due Diligence Period (defined below) in the event
  that the Purchaser elects to proceed with the Transaction.

- The Debtor shall execute this LOI immediately upon Court Approval and sign a
  Purchase and Sale Agreement (PSA) consistent with same.

- The Sixty Sixty Condominum is governed by its Declaration and other governing
  documents found in the Official Records Book 24411, Page 1780 of the Public Records
  of Miami-Dade County, Florida.

This approach provides the Sellers with the certainty of close and the comfort of dealing directly
with a high quality counterparty that can purchase the Property in a compressed time-line and not
be reliant on capital market vagaries.

The following is an outline of the indicative terms and conditions underlying this expression of
interest, which are subject to change and modification, completion of tax, legal and commercial
due diligence, and final investment committee approval:

**Purchaser:**  Newly formed entity affiliated with KFI.

**Property:**  The Property is so many of those certain condominium interests in a hotel resort
consisting of 82 Residential Units and 4 Commercial Units as will participate in the bulk sale
contemplated by this LOI. The condominium also includes a Hotel Unit, but the purchase and
sale of such Hotel Unit is not contemplated by this LOI. The Property is located at 6060 Indian

Creek Road, Miami Beach, FL. The Property shall be sold free and clear of all liens and encumbrances.

**Purchase Price:**  One Hundred Twenty Thousand Dollars ($120,000) per Residential and Commercial Unit. If all Units are purchased, the total purchase price for the entire Property shall be Ten Million Three Hundred Twenty Thousand Dollars ($10,320,000).

**Deposit:**  Fifty Thousand Dollars ($50,000) (the "**Deposit**"), to be deposited with First American Title upon signing the PSA, which will become non-refundable at the end of the Due Diligence Period.  The deposit shall either (i) be refunded to Purchaser in the event a condition precedent of the Purchase and Sale Agreement has not been met or (ii) will act as a credit to the Purchase Price at closing.

**Due Diligence:**  Ninety (90) days (the "**Due Diligence Period**") following the later of i) delivery of the due diligence materials to Purchaser and ii) the execution of a Purchase and Sale Agreement.  In addition to standard legal and property due diligence, KFI will include the satisfactory review of the condominium documents and rules and regulations.

**Dispute Resolution Contingency:**  Purchaser and Sellers acknowledge that the Property is subject to certain disputes and bankruptcy proceedings. Purchaser will seek to settle any outstanding claims with the Hotel Unit owner (including the elimination of the "Administrative Fee" charged by the Hotel Unit operator pursuant to certain rules and regulations imposed by the Hotel Unit Owner) and amend or create certain documents to maintain control of the Residential and Commercial Units. If a resolution is not negotiated or adjudicated by a court of competent jurisdiction upon the expiration of the Due Diligence Period, Purchaser has the right to extend due diligence for an additional sixty (60) day period (the "**Extended DD Period**").

**Exclusivity:**  Purchaser shall have the exclusive right to purchase the Property for 180 days from the acceptance of this LOI (the "**Exclusivity Period**"). The Association shall not solicit or provide any Property or ownership information to any parties other than Purchaser during the Exclusivity Period.

**Minimum Purchase Units:**  Purchaser is paying a premium for the Property and, therefore, requires that it will purchase no less than a minimum of 58 of the Residential Units and all four of the Commercial Units. Purchaser's intent is to purchase all of the residential and commercial units and if Purchaser is unable to purchase One Hundred Percent (100%) of the commercial and residential units, Purchaser reserves the right to adjust the Purchase Price accordingly.

**Anticipated Closing Date:**  The transaction will close Thirty (30) days following the later of (i) expiration of Due Diligence Period (ii) if elected by Purchaser, the Extend DD Period, (iii) receipt of approvals from the Minimum Purchase Units to sell their Units.

**Governing Law & Jurisdiction:**  This LOI shall be governed by Florida Law.

**Confidentiality:**  This LOI, is delivered to the Association and Purchaser on the condition that neither Seller nor Purchaser shall not issue any press release or make public disclosure as to  the existence of this LOI except: (i) to the owners of the Commercial and Residential Units; (ii) to the extent necessary to seek and obtain bankruptcy court approval in that certain bankruptcy case, *In re: Sixty Sixty Condominium Association, Inc.,* Case No. 16-26187-RAM, pending before the United States Bankruptcy Court Southern District of Florida (including attaching a copy of this LOI to a motion seeking authority for the Debtor to execute this LOI, any related Purchase and Sale Agreement, and advance with a bulk sale process of the Commercial and Residential Units

(the "LOI Motion")). It is expressly contemplated that said LOI Motion will contemplate the opportunity for other potential bulk sale purchasers to make offers higher and better than this LOI and the Purchaser expressly reserves the right to revise and modify the terms of this LOI at or before any hearing on the LOI Motion.

Except as expressly set forth herein, this LOI is not intended to be binding and, except for the Confidentiality provisions, shall not give rise to any legal right or obligation between Purchaser and Seller. A binding obligation between the parties will be created only upon the execution of a subsequent formal written PSA, delivered and executed by both parties.

**IN WITNESS WHEREOF**, each of the parties has caused this LOI to be duly executed on its behalf as of the day and year first above written.

Very truly yours,

By: _____

Name: Jonathan Reuser

Title: Authorized Agent

**AGREED AND ACCEPTED**

**Sixty Sixty Condominium Association, Inc.**
By:_____

Print Name:_____

Print Title:_____

Date of Execution:_____, 2017

# Attachment 2

## **CONTRACT FOR PURCHASE AND SALE**

THIS AGREEMENT is made this _____ day of June, 2017, by and between _____, or its assigns (hereinafter "Buyer"), and the parties listed on the attached "Schedule A" (collectively referred to as "Sellers").

## WHEREAS

A.      Sellers are owners of residential and commercial condominium units located at 6060 Indian Creek Dr., Miami Beach, Florida 33140, including all common areas and appurtenances thereto (collectively, the "Condominium Property").

B.      This offer is being presented to the Sellers for their review and determination whether they wish to participate in the sale of their interest in the Condominium Property in one transaction to Buyer.

C.      Upon the acceptance of this offer by Sellers, Sellers desire to sell, and Buyer desires to purchase, the Condominium Property described herein in accordance with the provisions of this Contract.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties agree as follows:

The foregoing recitals are true and correct and are incorporated herein by this reference.

1.      <u>Purchase and Sale</u>.      Upon the terms and conditions set forth herein, Buyer agrees to buy from Sellers and Sellers agree to sell to Buyer all of Sellers' right, title and interest in the Condominium Property in which they have an interest, together with all easements, privileges, and other appurtenances pertaining to or accruing to the benefit of the Condominium Property, including all intangible rights.  This Contract is effective upon being signed by the Buyer and a sufficient number of the Sellers to satisfy the Minimum Participation Requirement (defined herein). The Condominium Property is being sold AS IS.  No personal property is included with this sale.

2.      <u>Price</u>.  The purchase price for the Condominium Property shall be as follows:

   a.      For the Sixty Sixty Condominium Association, Inc.'s (the "Association"): (i) Unit C-1, $_____; (ii) Unit C-2, $_____; (iii) Unit C-3, $_____; (iv) Unit C-4 $____; and (v) Unit 505 $____.

   b.      $_____ for no less than __ residential units (the "Minimum Participation Requirement"). This price will increase by $_____ for each residential unit above the number satisfying the Minimum Participation Requirement that agrees

Sellers _____    Buyer _____

2

to be bound by this Agreement. This contract is contingent upon, among other things, the Minimum Participation Requirement being met.

3.    Term of Contract.    This Contract shall expire after one hundred twenty (120) days, unless extended pursuant to the provisions of this Contract described below.

4.    Deposit.    Buyer will deposit $_____ (_____) towards the purchase of the Condominium Property within three (3) days of all parties executing this Contract to be held by an escrow agent selected by Buyer, with proof given to the Seller's attorneys and title company.

All interest accrued or earned on the deposit shall be paid to Buyer except in the event of a default by Buyer, in which event all of the interest shall be disbursed to Sellers, together with the deposit, as liquidated damages in accordance with the default provisions below.

5.    Commencement Date. The Commencement Date is the first day on which the number of non-debtor residential unit owners necessary to satisfy the Minimum Participation Requirement and the Association have executed this Contract.

6.    Right of First Refusal.  The package of residential units subject to the right of first of refusal in favor of the Schecher Group, Inc. under the Declaration is subject to the right of first refusal under the Declaration. Upon the Commencement Date and Bankruptcy Court approval, this Contract shall be presented to the Schecher Group, Inc. for its consideration to give the Schecher Group an opportunity to exercise its right of first refusal as to the package of residential units subject to the right of first refusal under the Declaration.  The Schecher Group, Inc. shall have no obligation to purchase any unit not subject to its right of first refusal in order to exercise its right of first refusal under the Declaration. If the Schecher Group Inc. exercises its right of first refusal by acquiring the package of all residential units subject to the right of first refusal, this contract shall be null and void.

7.    Due Diligence Period. For a period of sixty (60) calendar days, beginning one day after the Commencement Date ("Due Diligence Period"), Buyer and/or its agents shall be entitled to access to the Condominium Property to conduct such investigations, tests, surveys and other analyses as Buyer determines is necessary, provided (i) Buyer conducts such tests or investigations so as not to unreasonably interfere with current activities on the property, (ii) Buyer restores the property to its condition immediately prior to any such tests and investigations, normal wear and tear excepted, and (iii) Buyer indemnifies, defends, and holds Sellers harmless from and against all claims, costs, expenses, and liabilities arising out of Buyer's entry upon the property and/or the performance of the tests and investigations conducted by Buyer on the property, but not for matters caused by Sellers or otherwise pre-existing and discovered or disclosed by Buyer's inspections.

During the Due Diligence Period, Sellers shall deliver (or cause the condominium association to deliver) copies of all tax bills, existing title insurance policies and claims, surveys, leases, environmental reports, and other documents reasonably requested by Buyer, if in their possession.

Sellers _____    Buyer _____

Buyer may terminate this Contract at any time before the end of the Due Diligence Period by delivering written notice of its decision to terminate ("Notice of Termination") to the Sellers at the addresses or email addresses set forth in paragraph 24. Buyer's timely delivery of a Notice of Termination will relieve the parties of any further obligations under this Contract and the deposit shall be immediately returned to Buyer.

If Buyer fails to timely deliver a Notice of Termination, then Buyer accepts the Condominium Property in its present condition (subject to the representations, warranties and covenants expressly stated herein or in the closing documents), and the deposit becomes non-refundable, except in the event of a default by Sellers, failure of title, condemnation, or failure to satisfy any other conditions precedent to closing hereunder.

8.    <u>Additional Conditions</u>.        The following shall be additional conditions which must be satisfied prior to Buyer's obligation to close:

(a)    All of the representations and warranties of Sellers must be true and correct in all material respects as of Closing.

(b)    Sellers shall have delivered to Buyer an estoppel letter from the Association for all of the units dated no earlier than fifteen (15) calendar days prior to Closing or a waiver of the estoppel letter by the Association.

(c)    The Association shall be responsible for satisfying the allowed claim of Florida Building and Supply, Inc. attributable to Condominium Property, and shall release, indemnify and hold harmless the Buyer and other Sellers from all allowed claims of Florida Building and Supply, Inc. in connection with same.

(d)    All directors and officers of the Association shall tender their resignations effective as of the Closing.

(e)    Sellers shall have complied with all of its obligations under this Contract.

(f)    The Association or any third party has not exercised its first right of refusal to purchase all the units included within this Contract.

(g)    This Contract is **not** contingent upon purchasing the hotel unit, or units in addition to the number necessary to satisfy the Minimum Participation Requirement.

(h)    The Schecher Group, Inc. shall not have exercised its right of first refusal and the period within which the Schecher Group, Inc. could have exercised its right of first refusal has lapsed.

(i)    Buyer's obligation to acquire the Association's units is specifically contingent on the Schecher Group, Inc. failing to exercise its right of first refusal and the period within which the Schecher Group, Inc. could have exercised its right of first refusal to have lapsed.

Sellers _____    Buyer _____

4

(j)    The Bankruptcy Court shall enter an order approving the terms of the purchase and sale contemplated by this Contract.

If any of these conditions is not satisfied or waived in writing by Buyer on or before the Closing Date, Buyer may terminate this Contract and the deposit will immediately be returned to Buyer, whereupon the parties shall be released from all further obligations under this Contract.

9.    <u>Title Commitment</u>.    Within thirty-five (35) calendar days after the Commencement Date, the Title Company, Coastal Title, Inc., 51 E. Commercial Boulevard, Fort Lauderdale Florida 33334 will provide Buyer with a preliminary title insurance commitment ("Preliminary Commitment") for the Condominium Property.    Buyer shall be responsible for obtaining complete and legible copies of all exceptions and encumbrances noted on the Preliminary Commitment.    Buyer shall have a period of fifteen (15) business days following receipt of the Preliminary Commitment, to review title.    Buyer, at Buyer's option, may obtain a survey ("Survey") of the land and improvements comprising the entire condominium property within the time period to examine title as aforesaid.    If Buyer finds title to be unmarketable in accordance with the Florida Bar, including any defects reflected in the Survey, Buyer shall, no later than the expiration of the title review period provided above, notify Sellers in writing specifying the defect(s); provided that if Buyer fails to give Sellers written notice of defect(s) before the expiration of the title review period, the defects shown in the Preliminary Commitment shall be deemed to be waived as title objections to closing this transaction.

Buyer may raise as additional objections, however, any matters first shown by any endorsement of the Preliminary Commitment and/or recertifications of the Survey obtained by Buyer.    If Buyer has given Sellers timely written notice of defect(s) and the defect(s) render the title other than as represented in this Contract, Sellers shall use good faith and diligent effort to cause such defects to be cured by the date of Closing.    Sellers agree at or prior to Closing to (i) satisfy all requirements shown on Schedule B, Section 1, of the Preliminary Commitment, (ii) remove by payment, bonding or otherwise any lien against any of the units capable of removal by the payment of money or bonding (**<u>with the exception of the liability assumed under Section 17(a))</u>,** and (iii) remove any matters appearing of record after the effective date of the Preliminary Commitment.

If the Buyer and Association agree, the date of Closing may be extended for a period not to exceed one hundred twenty (120) calendar days for purposes of eliminating any title defects.    In the event that Sellers do not eliminate any defects as of the date of Closing as the same may be extended under the preceding sentence, Buyer shall have the option of either:  (i) closing and accepting the titles "as is", and deducting from the Purchase Price the amount of any lien or encumbrance which can be satisfied by a liquidated amount, or (ii) canceling this Contract in which event the deposit will be returned to Buyer, whereupon all parties shall be released from all further obligations under this Contract, except those obligations expressly stated to survive such termination.

10.    <u>Title Evidence</u>.        At least fifteen (15) business days before Closing a title insurance commitments with legible copies of instruments listed as exceptions attached thereto, and after Closing, an owner's policy of title insurance shall be obtained by Buyer at Buyer's expense.

Sellers _____    Buyer _____

Buyer shall select the Title Company and closing agent. The Association shall convey marketable title to the Condominium Property at the Closing with respect to the Association's units; such units shall be conveyed pursuant to a bankruptcy court order approving the bulk sale contemplated herein.

11.    Closing Date. This transaction shall be closed within the later of (i) 30 calendar days after the end of the Due Diligence Period or (ii) 15 days after the entry of a bankruptcy court order approving this sale and no timely appeal was taken. If a court proceeding challenging any aspect of the sale is pending prior to the Closing, the Closing Date under this Contract shall automatically be extended until the court proceeding is concluded. The Closing shall take place at the offices of the escrow agent or at such other location which is mutually agreeable to the parties.

12.    Closing Costs. Each party shall pay its own customary closing costs. For example, Buyer is responsible for paying for all commissions, title insurance, recording the deed, and its legal fees. Examples the Sellers are responsible for paying include the documentary stamp tax on the deed, update title, pro-rated property taxes, its legal fees, if any, and estoppel letters. Buyer will pay Sellers' closing agent's fees – e.g., document preparation and processing fee.

13.    Extension of Contract Term. This Contract may be extended to provide any notices required to be sent concerning a right of first refusal and to resolve court proceedings affecting this Contract.

14.    Delivery for Closing. At least fifteen (15) calendar days prior to Closing, Sellers shall deliver to the Title Company, to be held in trust until Closing, the following executed documents:

(a)    Warranty Deed in a form satisfactory to Buyer conveying title to the Condominium Property to Buyer.

(b)    Bill of Sale conveying title to any personal property left at the Condominium Property to Buyer.

(c)    Seller's affidavit as to the non-existence of construction liens and encumbrances, exclusive possession and "gap" representations, covenants, and indemnities sufficient to allow removal of the standard title exception for mechanic's liens, the "gap", and possession.

(d)    FIRPTA affidavit.

(e)    Association estoppel letter or waiver.

(f)    Closing Statement.

(g)    All other documents reasonably required by Buyer or the Title Company to complete this transaction.

Sellers _____    Buyer _____

6

Notwithstanding the foregoing, Sellers shall undertake their best efforts to provide Buyer with a copy of the individual units' prior title policies and mortgage payoff statements within ten (10) calendar days of the Commencement Date. Buyer will assist Sellers in attempting to obtain short sale approval from lenders, as necessary.

15.    <u>Risk of Loss</u>.  Risk of loss or damage to the Condominium Property shall be borne by Sellers.  In the event of loss or damage to the Condominium Property prior to closing, Sellers shall be entitled to all insurance proceeds and Buyer will continue with Closing.

16.    <u>Insurance Proceeds</u>.  Any and all insurance proceeds related to the Condominium Property while Sellers are the owners are owned by Sellers.  Buyer has no interest in the insurance proceeds.

17.    <u>Buyer Assumed Liability</u>. Buyer assumes all liability for the debt alleged to be owed by Sellers, including the Association, to Schecher Group, Inc., Condominium Hotel Management Corporation Inc. ("CHMC"), and all "shared costs" (as defined in the condominium documents) of Schecher Group, Inc. d/b/a Sixty Sixty Shared Components.  Furthermore, Buyer shall <u>indemnify and hold harmless Sellers for personal liability related to the claims of the</u> Schecher Group, Inc. and CHMC related to the "shared costs".

18.    <u>Representations and Warranties of Seller</u>.    Sellers represent and warrant to Buyer the following:

(a)    As of the Closing Date, Sellers shall have good, marketable, indefeasible title to the Condominium Property (including personal property), free and clear of all liens, claims and encumbrances, <u>except</u> concerning the Schecher Group, Inc., CHMC, and all "shared costs", as defined in the condominium documents, of Schecher Group, d/b/a Sixty Sixty Shared Components. Sellers shall be current on their Association dues through closing as calculated in the 2017 Association Budget. Buyer shall take title subject to the claims of Schecher Group, Inc. and CHMC related to "shared costs" and allow such claims and lines, if any, as exceptions to any title commitment.

(b)    Sellers who are not individuals will be duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Sellers have the full right, power and authority to sell, transfer, and/or convey the Condominium Property to Buyer and to perform all of Sellers' obligations in this Contract.

(c)    There are no contracts or leases affecting the Condominium Property, other than tenant leases which will be terminated on or before Closing. If Sellers cannot terminate a hotel program contract, Buyer will take the Condominium Property subject to the contract and reserves all rights to the fullest extent possible.

These representations and warranties will survive Closing for a period of one (1) year.

19.    <u>Representations and Warranties of Buyer</u>.    Buyer represents and warrants to Sellers the following:

Sellers _____    Buyer _____

(a)    Buyer is duly organized, validly existing and in good standing under the laws of the state of incorporation or organization, as the case may be.  Buyer has full right, power and authority to purchase the Condominium Property from Sellers and perform all of Buyer's obligations in this Contract.

(b)    There are no contracts or agreements which prevent Buyer from fulfilling its obligations in this Contract.

20.    <u>Broker Fee</u>.    Sellers are not responsible for any real estate commission or brokerage fee with this transaction with the exception of the brokerage commission owed to Jason Welt and Trustee Realty, Inc. as provided for in his order of employment.  Buyer has engaged the services of brokers whom Buyer shall pay a real estate commission pursuant to a separate agreement. Any entity exercising a right of first refusal shall pay the same real estate commission to Buyer and Sellers' agents as would be due under this contract if such right of first refusal was not exercised.

21.    <u>Not Contingent on Building Permits</u>. This Contract is NOT contingent upon Buyer's ability to obtain any building permits, zoning changes, or any other development-related grant of rights.

22.    <u>Possession</u>.    Buyer shall be entitled to exclusive vacant possession of the Condominium Property on the Closing Date.

23.    <u>Governing Law</u>.    This Contract is governed by the laws of Florida.

24.    <u>Default</u>.    If Buyer fails without legal excuse to complete the purchase of the Condominium Property, the deposit made by Buyer shall be forfeited to Sellers pro-rata, as the remedy available to Sellers.  The parties acknowledge that in such event the exact amount of Sellers' damages cannot be determined with any certainty and agree the deposit shall be forfeited as liquidated damages.  If Sellers fails to perform any covenant of agreement of Seller, Buyer may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's deposit and incurred costs, or (b) seek specific performance of Sellers' obligations under this Contract, including attorney fees and costs. If Buyers fails to perform any covenant of agreement of Buyer, Seller may elect to pursue one of the following remedies: (a) terminate this Contract and receive the return of Buyer's deposit and incurred costs, or (b) seek specific performance of Buyers' obligations under this Contract, including attorney fees and costs.

25.    <u>Notices</u>.  All notices required or permitted to be given hereunder shall be in writing and shall be transmitted by facsimile with written verification fax has been received, sent by U.S. certified mail return receipt requested, or nationally recognized overnight delivery service, addressed as set forth below:

        SELLER:                See "Schedule A"

Sellers _____    Buyer _____

BUYER:

| | |
|---|---|
| With a copy to: | Inger M. Garcia, Esq.<br>4839 Volunteer Road, Suite 514<br>Davie, Florida 33330<br>Email: attorney@ingergarcia.com |
| | Brett Lieberman, Esq.<br>401 East Las Olas Boulevard, Suite 1400<br>Fort Lauderdale, Florida 33301<br>Email: blieberman@messana-law.com |

26.    Successors.    This Contract is binding upon and inures to the benefit of the parties hereto and their respective successors, heirs, administrators, and assigns.

27.    Assignability. Buyer has the right to assign this Contract without Sellers' prior consent, to an affiliated entity so long as all conditions remain the same otherwise, and the Court approval is had, if necessary. However, Buyer shall not be relieved of any obligation under this Contract even in the event of an assignment.

28.    Submit to Bankruptcy Court Jurisdiction.    Buyer and all sellers, including non-debtor individual unit owners, are aware that the Association has filed for bankruptcy protection with the United States Bankruptcy Court for the Southern District of Florida, Miami Division, under *In re: Sixty Sixty Condominium Association, Inc.*, Case Number 16-26187-RAM, and understand the bankruptcy case may have an affect on the units being sold in this Contract. To allow a full and complete determination of the rights of the Association and the other unit owners under this Contract, Buyer and the individual unit owners hereby expressly submit to personal and subject matter jurisdiction of the bankruptcy court to the greatest extent necessary in all aspects to interpret this Contract, resolve disputes concerning the sale of the Condominium Property to Buyer and any other matter related to the sale of the Condominium Property.  Buyer and the individual unit owners also agree to be bound by any decisions of the Bankruptcy Court.

29.    Entire Agreement.    This Contract contains the entire understanding between the parties and supersedes any prior agreements between them. Buyer may incorporate additional units into this Contract with a corresponding increase in the purchase price without the consent of Sellers.

30.    Counterparts. This Contract may be executed in several counterparts, which shall be treated as originals for all purposes, and all counterparts so executed shall constitute one agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart.  Copies shall be treated as originals.

31.    Radon Gas.    The following notice is incorporated into this Contract pursuant to the requirements of the Florida Statutes:

Sellers _____    Buyer _____

9

> Radon Gas:  Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time.  Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida.  Additional information regarding radon and radon testing may be obtained from your County Public Health Unit.

32.    <u>Invalid Provision.</u>    If any term or provision of this Contract is held illegal, unenforceable, or inoperative as a matter of law, the remaining terms and provisions will not be affected thereby, but will be valid and remain in full force and effect, provided that the inoperative provisions are not essential to the interpretation or performance of this Contract in accordance with the clear intent of the parties.

33.    <u>Saturday, Sunday and Legal Holiday</u>. If any date set forth in this Contract for the performance of any obligation by Buyer or Sellers or for the delivery of any instrument or notice should be on other than a business day, the compliance with such obligations or delivery will be deemed acceptable on the next following business day.

WHEREFORE, the parties have signed this Contract as indicated below.

BUYER:


_____          Signed on June _____, 2017.
                    , Position


SELLERS:

See  "Schedule A".


Sellers _____     Buyer _____

**Attachment 3**
**Confidentiality Agreement**

## CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

This Confidentiality and Nondisclosure Agreement (this "Agreement") is dated this this day of _____, 2017 by and between _____ (the "Receiving Party") and Sixty Sixty Condominium Association, Inc. ("Disclosing Party").

WHEREAS, in order to facilitate the possibility of entering into a mutually beneficial business relationship, and if entered into, the execution of such business relationship, the parties may disclose certain non-public or proprietary information to the other party and its representatives; and

WHEREAS, the Disclosing Party wishes to preserve the confidentiality and prevent the unauthorized disclosure and use of any such non-public or proprietary information disclosed to the Receiving Party and its representatives.

NOW THEREFORE, for valuable consideration, and as a condition to such information being disclosed by or on behalf of the Disclosing Party, the parties agree as follows:

1. "Information" means all non-public or proprietary information disclosed by the Disclosing Party in connection with this Agreement and shall include, but not be limited to, information regarding the Disclosing Party's and its subsidiaries and affiliated entitles (and information related to the Schecher Group, Inc. and its affiliates and subsidiaries) assets, liabilities, financial and other conditions, insurance, reinsurance, employees, consultants, operations, prospects, business plans and customer lists.

2. As a condition to receiving the Information which the Disclosing Party may furnish to the Receiving Party and its representatives or to which the Receiving Party and its representatives are afforded access, directly or indirectly, the Receiving Party and its representatives shall keep the Information confidential and not to disclose such Information except as permitted under this agreement.

3. Information does not include information that:

   a. has been or becomes published or is now or in the future publicly available without breach of this Agreement or breach of a similar agreement by a third party or through no wrongful act of the Receiving Party or its representatives;

   b. is known to the Receiving Party prior to the time such information was acquired from the Disclosing Party under this Agreement as evidenced by the Receiving Party's contemporaneous written records;

   c. is independently developed and prepared by the Receiving Party not in reliance upon or reflecting any Information disclosed pursuant to this Agreement; or

   d. subsequent to disclosure, is lawfully received from a third party having rights therein without restriction (to the best of the Receiving Party's knowledge) on the right of such third party or the Receiving Party to disseminate the information and without notice of any restriction against its further disclosure.

1

4.      Information shall not, without the prior written consent of the Disclosing Party, be disclosed to any person or entity other than the Receiving Party's and its representatives' employees (including outside legal counsel, actuaries and accountants) who need to know the Information and in those instances only to the extent of such need. The Receiving Party agrees to keep all Information confidential, and further agrees to use Information solely for the evaluation stated above, and for no other purpose. The Receiving Party agrees that its and its representatives' employees (including outside legal counsel, actuaries and accountants) shall be informed of the terms of this Agreement.

5.      All Information shall remain the exclusive property of the Disclosing Party, and the Receiving Party shall have no rights, by license or otherwise, to use Information except as expressly provided herein.

6.      The Receiving Party agrees on its own behalf and on behalf of its representatives to return to the Disclosing Party or destroy, and verify in writing such destruction, all written, tangible or otherwise accessible material in any form (including electronic media such as computer diskettes, CD-ROM, electronic copies or any material resident in the hard or external drive of any computer) containing or reflecting any Information (including all copies, summaries, excerpts, extracts, notes or other reproductions) promptly following a request of the Disclosing Party. All information retained by the Receiving Party pursuant to this Section 6 shall remain subject to the confidentiality and nondisclosure obligations of this Agreement. Notwithstanding anything to the contrary in this Agreement, the Receiving Party may retain one copy of Information that has become part of a file that the Receiving Party, in its reasonable judgment, is required to retain and/or make available for examination by government regulatory or investigatory agencies, or retain and/or produce by an order of a court or insurance regulatory agency.

7.      Nothing in this Agreement shall impose any obligation upon either party to consummate a transaction, to enter into any discussion or negotiations with respect thereto, or to take any other action not expressly agreed to herein.

8.      In the event that the Receiving Party receives a request to disclose all or any part of the Information as part of a governmental investigation or under the terms of a subpoena or order issued by a court or governmental body, the Receiving Party will take all reasonable steps to notify the Disclosing Party promptly in writing of such request in order to allow the Disclosing Party an opportunity to resist or narrow such request and will reasonably cooperate, at the Disclosing Party's expense, with the Disclosing Party and its representatives in connection with the Disclosing Party's efforts to resist or narrow such request. In the event that the Disclosing Party elects to waive the provisions of this Section 8 or is otherwise unsuccessful in resisting such request, the Receiving Party shall only disclose the Information that it determines it is legally required to disclose after consultation with competent counsel.

9.      This Agreement and the Receiving Party's obligations with respect to the Information, shall continue until terminated in writing by the Disclosing Party.

10.     Except as required by applicable law or court or arbitral order, neither party shall in any way or in any form disclose (except as necessary to such party's outside legal counsel, actuaries

and accountants), publicize or advertise in any manner the discussions or negotiations concerning the business purpose underlying this Agreement, or the status of any such discussions or negotiations without the consent of the other party.

11.  This Agreement shall be deemed to be a contract made under the laws of the State of Florida, and for all purposes shall be construed in accordance with the laws of the State of Florida. The parties agree that any and all disputes between the parties under or relating to the terms and conditions of this Agreement shall be fully and completely adjudicated in the federal or state courts of the State of Florida, County of Broward.

12.  Any provision of this Agreement which may be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

13.  This Agreement shall inure to the benefit of and be binding upon each of the parties and their respective successors and permitted assigns. Neither party may assign this Agreement or any provision hereof, in whole or in part, without the prior written consent of the other party.

14.  This Agreement shall constitute the full agreement between the parties with respect to Information, and shall supersede any and all prior agreements relating thereto.

15.  No amendment to any provision of this Agreement shall be binding and enforceable unless in writing and signed by both of the parties and specifically referencing this Agreement.

16.  Neither party makes any representations or warranties, express or implied, as to the accuracy or completeness of the Information, and undertakes no duty to amend or update the Information; *provided. however,* that Disclosing Party represents and warrants that (a) the Information that has been and will be provided to the Receiving Party pursuant to this Agreement is not subject to an obligation of confidentiality or nondisclosure other than under this Agreement and (b) it owns or has sufficient rights to disclose such Information pursuant to the terms of this Agreement.

17.  Each of the parties acknowledges and agrees that remedies at law may be inadequate to protect the other party against any actual or threatened breach of this Agreement by the other party or its representatives, and, without prejudice to any other rights and remedies otherwise available to the other party (including, without limitation, monetary damages), the parties agree to the granting of specific performance and injunctive or other equitable relief in the other party's favor without proof of actual damages and each of the parties further agrees to waive, and to use all reasonable efforts to cause its representatives to waive, any requirement for the securing or posting of any bond in connection with any such remedy.

18.  Each of the parties agrees that no failure or delay by the other party in exercising any right or remedy hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise of any right or remedy hereunder.

19.  This Agreement may be executed in counterparts.

[Signature Page to Follow]

3

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their authorized representatives on the date first above written.

Receiving Party: _____


By: _____

Name:

Title:


Disclosing Party:

Sixty Sixty Condominium Association, Inc.


By: _____

Name:

Title:

4