

**ORDERED in the Southern District of Florida on August 7, 2017.**

Robert A. Mark, Judge
United States Bankruptcy Court

___

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA**

|  |  |
|---|---|
| In re: | Case No. 16-26187-BKC-RAM |
| Sixty Sixty Condominium Association, Inc., | Chapter 11 |
| Debtor. |  |

**ORDER INTERPRETING RIGHT OF FIRST REFUSAL**

Before the Court is a motion by the Debtor, Sixty Sixty Condominium Association, Inc. (the "Debtor" or the "Association"), for approval of a proposed bulk sale that includes the sale of all of the Debtor's assets (the "Sale Motion") [DE #174]. Ordinarily, the Court's analysis would be limited to a determination of whether the proposed sale satisfies the "sound business purpose" test and otherwise complies with section 363 of the Bankruptcy Code. However, in this case, the Court cannot grant or deny approval of

1

the bulk sale without first exercising jurisdiction to interpret a right of first refusal ("ROFR") applicable to non-debtor property that is being sold as part of the proposed bulk sale.

In the interests of brevity, the Court incorporates as if fully set forth herein the background facts and procedural history described in the Court's *Case Administration Guidance Relevant to the Debtor's Sale Motion, the Shared Cost Adversary, and Plan Confirmation* (the "Case Management Order") [DE #333]. Unless otherwise defined herein, all capitalized terms in this Order shall have the same meaning ascribed to such terms in the Case Management Order.

## Relevant Facts

The Debtor in this case is a condominium association. The Association holds title to real property within the condominium, but not in the traditional sense. Usually an association owns and controls common areas within a building. In this case, most of that ownership and control rests in the hands of an entity called the Schecher Group, Inc. ("Schecher," the "Schecher Group," or the "Hotel Unit Owner"). Schecher runs a hotel operation at the condominium from a pool of units whose non-debtor owners voluntarily placed their units in the hotel program.

The Schecher Group has a right of first refusal (the "SG ROFR") applicable to proposed transfers of units in the condominium. The SG ROFR provides that a residential unit owner

2

who intends to accept a bona fide offer (the "Outside Offer") to purchase its residential unit must give the Schecher Group notice of the Outside Offer.  The SG ROFR further provides that the giving of notice of the Outside Offer constitutes an offer by the residential unit owner to sell its residential unit to the Schecher Group, or its designee.

The respective rights and obligations of the Association, the Hotel Unit Owner, and the residential unit owners are contained in the Declaration of Sixty Sixty Condominium (the "Declaration"). Of critical importance here is the language of the SG ROFR in Article 17.1 of the Declaration, which provides, in pertinent part, as follows:

> Any Residential Unit Owner who receives a bona fide offer to purchase his or her Residential Unit . . . (an "Outside Offer") . . . which the Offeree Unit Owner intends to accept shall give notice . . . to the Hotel Unit Owner . . . . The giving of such notice to the Hotel Unit Owner shall constitute an offer by the Offeree Unit Owner to sell his or her Residential Unit to the Hotel Unit Owner or its designee <u>upon the same terms and conditions</u> as contained in such Outside Offer.

[DE #138-2, p.4] (emphasis added).

The SG ROFR does not apply to the five units in the condominium owned by the Debtor, four of which are commercial units

3

and one of which is a residential unit. Articles 17.1 and 17.5 of the Declaration of Sixty-Sixty Condominium specifically exclude the sale of the Debtor's units from the SG ROFR [DE #138-2, p.5]. Thus, interpretation of the SG ROFR would be unnecessary if the Outside Offer included only the Debtor's assets.  The offer is not so limited.  Rather, the Outside Offer is an offer by Marc Realty Capital, LLC ("MRC") to purchase the Debtor's five units only as part of a sale that includes at least fifty non-debtor residential units.

The Debtor asserts, and has proven, that it can neither reorganize nor maximize the value of its assets outside of a bulk sale that includes non-debtor property.  Moreover, the Debtor is seeking approval of a sale on a parallel track with its request for confirmation of a plan of reorganization.  Thus, any sale approved by the Court will be part of a formal chapter 11 plan process.  The Schecher Group, like all other creditors, can evaluate and vote on the plan, and raise objections to confirmation.

**I. THE COURT HAS AND WILL EXERCISE JURISDICTION TO DETERMINE WHETHER THE SCHECHER GROUP CAN EXERCISE ITS ROFR ON A UNIT-BY-UNIT BASIS AGAINST AN OUTSIDE OFFER THAT INCLUDES A BULK-SALE TERM.**

Sections 1334(b) and 157(c)(1) of Title 28 of the United States Code authorize district courts and bankruptcy courts to exercise "related to" jurisdiction.  Lemco Gypsum, the seminal

11th Circuit case interpreting a bankruptcy court's related-to jurisdiction, broadly interprets "related to" to mean any and all matters whose outcome "'could conceivably have an effect on the estate being administered in bankruptcy.'" Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 788 (11th Cir. 1990) (quoting and adopting Pacor, Inc. v. Higgins, 743 F. 2d 984, 994 (3rd Cir. 1984)).

The conceivable-effect test is so broad that "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy case." Id. This includes actions that are neither against the debtor nor against property of the debtor's bankruptcy estate. Id.

The Court finds the conceivable effect test is easily satisfied here because the Debtor cannot effectively market or sell its assets independent of a sale of non-debtor units, and without a sale of the Debtor's assets, the Debtor cannot reorganize. Although the Court has not yet conducted a final hearing on the Sale Motion, the testimony is complete and the Court finds it appropriate to enter findings relevant to this Order based upon the testimony at the July 13, 2017, and July 21, 2017, evidentiary hearings on the Sale Motion.

Jason Welt, the Debtor's broker, testified that there is no market for the Debtor's commercial units. The testimony of Charles R. Gibbs, the Vice President of National Acquisitions for MRC, the proposed purchaser of the Debtor's units, convincingly corroborated Mr. Welt's position.

Mr. Gibbs testified that MRC's agreement to purchase the Debtor's units for one million dollars is incidental to MRC's purchase of at least fifty non-debtor units. Mr. Gibbs explained that MRC is interested in purchasing a "critical mass" in the Sixty Sixty condominium building. Its priority is acquiring a sufficient number of non-debtor units to constitute a critical mass. If MRC must purchase the Debtor's units in order to acquire a bulk number of non-debtor units, MRC is prepared to do so.

The Court finds Mr. Gibbs's testimony to be credible and persuasive. The Court additionally finds the testimony of both Mr. Welt and Mr. Gibbs is in line with what common sense would dictate. It would be difficult, if not impossible, to solicit a seven-figure sale of the Debtor's property (four commercial units, three of which are only terraces, and one residential unit) in a building whose association is in bankruptcy and where more than sixty residential unit owners are defending foreclosure cases in state court.

Whether this Court *should* exercise jurisdiction is controlled by section 1334(c) of Title 28. The Court finds that neither the

mandatory nor the permissive abstention provisions of 28 U.S.C. § 1334(c) apply or should be employed here.  If the Court abstained, enormous prejudice would be visited upon the Debtor, whose potential for a cost-effective reorganization would be lost.[1]

---

[1] *See Debtor's Memorandum of Law Regarding Remaining Issues* [DE #299 at pp. 5-6].  The Court finds persuasive the Debtor's argument that the Court has and should exercise jurisdiction to interpret the SG ROFR because a ruling that the SG ROFR cannot be exercised on a unit-by-unit basis where the Outside Offer includes a bulk-sale term would impact upon the Debtor's prospects of reorganization and administration of this bankruptcy case as follows:

    a. Debtor will collect all receivables presently owed to Debtor by RUO's participating in the Bulk Sale either prior to or in connection with closing of the Bulk Sale.

    b. Collecting all such receivables would liquidate up to $95,000.00 in outstanding receivables. Debtor would also be able to avoid instituting costly and lengthy foreclosure proceedings against RUO's to collect outstanding receivables and the administrative costs of overseeing such litigation.

    c. Debtor's former funding constituency of RUOs would be largely substituted by a single entity with greater credit worthiness and ability to pay Debtor's assessments. Many current RUOs are delinquent in their assessments and collections are complicated by, among other things, their residing outside the country.

    d. With substituted RUOs of greater financial wherewithal, the Debtor will have access to sufficient revenue to fund the Debtor's continued operations including its reorganization efforts.

    e. Debtor will be able to monetize its real property by selling the Commercial Units and Residential Unit 505 at favorable prices. The proceeds from the sale of the Debtor's Units will be employed to fund the Debtor's reorganization.

    f. Debtor will eliminate the liability, cost, expense and exposure associated with its ownership of real property (including costs of insurance, administrative expenses of renting and managing the Debtor's Units, etc.).

    g. Debtor will resolve the "Circular Assessment" issue by terminating its ownership of the Debtor's Units.

    h. Debtor will minimize the likelihood of a subsequent insolvency proceeding on account of its better financed funding sources, the substituted RUOs.

7

The Court's decision to exercise jurisdiction is bolstered by the fact that no action for declaratory relief regarding the SG ROFR has been brought or is pending in state court. Obtaining declaratory relief in state court would likely take at least several months, and this Court already has devoted substantial time to interpreting the SG ROFR after reviewing thorough memoranda from the parties. Deciding this issue is necessary for the Court to rule on the Sale Motion. If the Sale Motion is approved, the Debtor should be able to move efficiently through the chapter 11 plan process, which includes protections of the interests of all creditors.

## II. THE SCHECHER GROUP CANNOT EXERCISE ITS ROFR ON A UNIT-BY-UNIT BASIS AGAINST AN OUTSIDE OFFER THAT INCLUDES A BULK-SALE TERM.

Interpretation of the SG ROFR is governed by Florida law. Butner v. United States, 440 U.S. 48, 55 (1979). As previously cited in the Court's prior partial ruling on the SG ROFR [DE #285], a District Court in this district has analyzed a ROFR under applicable Florida law. Holston Investments Inc. v. Lanlogistics, Corp. ("Holston"), 664 F. Supp. 2d 1258, 1264–65 (S.D. Fla. 2009).[2]

---

[2] Holston was reversed, in part, due to the District Court's entry of summary judgment on damages where the 11th Circuit found a disputed issue of material fact precluded the entry of summary judgment. Holston Investments, Inc. B.V.I. v. Lanlogistics Corp., 677 F.3d 1068 (11th Cir. 2012). Matters relevant to reversal of the District Court's order are inapplicable to those portions of the District Court decision that this Court adopts.

8

The facts of Holston bear certain material similarities with the facts of this case. The outside offer in Holston is a package deal like the bulk-sale offer before the Court in this case. Also like the proposed sale in this case, the package deal in Holston included property that was subject to a ROFR *and* property that was not subject to a ROFR. Moreover, the ROFR at issue in Holston is broad and includes "upon the same terms and conditions" language similar to the SG ROFR. ROFRs with open-ended, "upon the same terms and conditions" language, will be referred to as "Matching ROFRs."

The first issue is whether the MRC Contract triggers the SG ROFR. In Holston, the District Court determined package deals that bundle property not subject to a ROFR with property subject to a ROFR nevertheless trigger the ROFR under Florida law. *Id.* at 1262-64.

Whether the SG ROFR has ripened into an option in this case depends largely on the bona fides of the offer before the Court. The Schecher Group argues both that the MRC Contract was proposed in bad faith and that the MRC Contract is illusory.[3] The Court rejects these arguments.

The Schecher Group's challenges to MRC's good faith are largely unsubstantiated. To the extent MRC's intended use of the

---

[3] *See, e.g., Objection by Schecher Group, Inc. to Approval of the MRC Contract for Purchase and Sale* [DE #307, pp. 5-12].

units it seeks to acquire in the Sixty Sixty Condominium would be at odds with the Declaration of Condominium, applicable law and regulations, or other applicable agreements or rules, the Court finds MRC is not intending to violate the law.  The Court finds credible Mr. Gibbs's testimony that he has reviewed and understands the condominium's governing documents and applicable Miami Beach rules and regulations.  It also finds credible Mr. Gibb's testimony that MRC is considering multiple models for its use of the units it intends to acquire and is not solely pursuing a "shadow rental program" that might or might not be prohibited under applicable law.

The Court makes no findings with regards to the legality of any proposed "shadow rental program," or with regards to the enforceability of the hotel-unit-owner's exclusive rights to operate a hotel under the condominium documents. Rather, the Court finds (i) the non-debtor residential unit owners have a legally defensible right to sell their units in a bulk sale, (ii) the non-debtor residential unit owners have a legally defensible right to rent their units independent of the Schecher Group's hotel operation, and (iii) MRC can propose and has proposed a good faith offer to purchase the non-debtor residential units.  What MRC can or cannot do with the units if a sale to MRC closes is beyond the scope of the contested matter before the Court.

In sum, if the MRC Contract is amended in accordance with the Court's Order (1) Setting Deadline for Execution of Amended Contract; and (2) Setting Final Hearing on Contract Approval [DE #334] (the "Contract Order"), the Court finds the Amended MRC Contract is a bona-fide and good-faith offer that triggers the SG ROFR. The Court's ruling stands whether the Amended MRC Contract provides for assumption or satisfaction of the Schecher Group liability at closing. The MRC Contract makes clear that the purchase price for the non-debtor residential units is $120,000 per unit *plus* the unit's allocable share of the Schecher Group liability. Mr. Gibbs's testimony corroborates the plain language of the contract. Substitution of an assumption of liability by MRC for a forgiveness of the debt by the Schecher Group is an immaterial difference in accounting – the cost is the same.[4]

The Court also finds the MRC Contract complies with the Court's First Partial Ruling on ROFR [DE #285]. Under Florida law, "the holder of a right of first refusal cannot be compelled to purchase more property than is subject to the right of first refusal." Holston at 1263 (adopting federal Fourth Circuit Court of Appeal precedent[5] that is consistent with an opinion of the

---

[4] To further explain, assume the Shared Cost allocation per unit is $30,000. In that hypothetical, MRC would be paying $150,000 per unit. If the Schecher Group exercises the SG ROFR, it would be releasing the $30,000 liability to itself but acquiring units valued at $150,000 for only $120,000.
[5] Pantry Pride Enters., Inc. v. Stop & Shop Co., Inc., 806 F. 2d 1227, 1229 (4th Cir. 1986).

11

Florida Second District Court of Appeal[6]).  The MRC Contract complies with the prohibition against mandatory inclusion of property not subject to a ROFR by bifurcating the prospective sale.

The Debtor's property, which is the only property in the MRC Contract not subject to the SG ROFR, is subject to purchase and sale provisions that apply only if MRC purchases at least fifty non-debtor residential units.  It is the condition precedent to MRC's purchase of the Debtor's property, namely a sale of at least fifty non-debtor residential units for a purchase price of $120,000 per unit plus assumption of any liability owing to the Schecher Group, whose terms and conditions Schecher must match in order to properly exercise the SG ROFR.  The Schecher Group is not required to purchase the Debtor's units.

Holston does not address the remaining issue: May the Schecher Group exercise the SG ROFR on a unit-by-unit basis, paying $120,000 each for one or more units it chooses to purchase?  Or, must the Schecher Group buy all of the non-debtor residential units at the aggregate price of all of the units MRC is purchasing?  In other words, can Schecher exercise the SG ROFR by matching all terms and conditions of the Amended MRC Contract applicable to the non-debtor residential units except for the condition that MRC purchase at least fifty units?

---

[6] Whyhopen v. Via, 404 So. 2d 851 (Fla. 2d DCA 1981).

The Court finds it cannot. As a preliminary matter, the plain language of the SG ROFR requires *matching* terms and conditions. Critically, the SG ROFR has no limitations on the terms and conditions that must be matched. It does not exclude from its matching requirements bulk-sale conditions. More importantly, under the facts of this case, reading into the SG ROFR a provision that the Schecher Group can exercise the SG ROFR on a unit-by-unit basis would be an unreasonable restraint on alienation of the non-debtor units.

The Court must examine the SG ROFR under a reasonableness standard. Inglehart v. Phillips, 383 So. 2d 610, 614 (Fla. 1980); *see also* Old Port Cove Holdings, Inc. v. Old Port Cove Condo. Association One, Inc.*,* 986 So. 2d, 1279, 1287 (Fla. 2008) (reaffirming Inglehart). "The validity or invalidity of a restraint depends upon its long-term effect on the improvement and marketability of the property. Once that effect is determined, common sense should dictate whether it is reasonable or unreasonable." Inglehart at 614.

Florida case law interpreting Matching ROFRs is fact-specific and involves balancing a seller's right to control the use and disposition of its property with the ROFR-holder's right to realize on the benefit of its bargain. The facts of this case favor an interpretation of the SG ROFR that is consistent with its plain language.

The purchase price offered by MRC for the non-debtor units is a fair-market price negotiated at arm's length.  Based on past market activity,[7] pending foreclosure actions,[8] and the fact that the condominium association is a debtor in an unresolved bankruptcy case, the market for selling individual units in this building is difficult.  However difficult it may be to sell an individual unit, the Court finds that MRC is paying unit owners significantly more for their units than they could obtain by selling their units individually.  MRC is agreeing to purchase units only in connection with a bulk-sale.  The bulk-sale condition is commercially reasonable and is proposed in good faith.  Therefore, the bulk sale is a condition that must be matched to exercise the SG ROFR.

There is no evidence that the bulk-sale condition of the Outside Offer is intended to defeat the SG ROFR.  Rather, Mr. Gibbs credibly articulated a good-faith, commercially reasonable justification for the bulk-sale term, namely that the MRC business model depends upon acquisition of a "critical mass."  The fact that the MRC Contract explicitly recognizes the SG ROFR and separately allocates pricing for units not subject to the SG ROFR further supports a finding that the parties to the MRC Contract

---

[7] Mr. Welt testified that only one sale of a residential unit in the Sixty Sixty condominium building closed in the last two years.
[8] At least sixty-six of the eighty-two residential units in the Sixty Sixty condominium building are in active foreclosure cases.

14

intend to provide the Schecher Group with an opportunity to exercise the SG ROFR.

The fact that the Schecher Group might have to purchase more units than it wants to purchase to exercise the SG ROFR does not nullify the SG ROFR.  Nor is it commercially unreasonable to require the purchase of a minimum number of units in a condominium hotel project.

The Court's conclusion is in line with the only case identified by the Schecher Group, "after an exhaustive search of case law," as being "directly on point" [DE #300, p.5].  In *Plante v. Town of Grafton*, an appellate court in Massachusetts "decide[d] that, *at least on the peculiar facts of this case*, owners may not put their parcels to [a] municipality . . . on an all or nothing basis." 775 N.E.2d 1254, 1255 (Mass. App. Ct. 2002) (emphasis added).  The peculiar facts of *Plante* are inapposite.

The sale of non-debtor residential units in this case is a unified sale, with all-cash closings for identical prices to occur simultaneously.  The outside offer in *Plante* was for the sale of two non-contiguous parcels, owned by different sellers, to be sold for different prices with different financing terms, and with closings to occur eighteen months apart.  The sale of the *Plante* parcels easily is divisible and, given the lengthy closing gaps between the two sales, foreseeably could result in one sale closing and not the other.

More importantly, public policy considerations memorialized in the Massachusetts Constitution and the sellers' voluntary application for reduced tax liabilities persuaded the court to protect the municipality that held the ROFR in *Plante*. There is no municipal interest in keeping agricultural land from being developed applicable here. The SG ROFR is not, like the ROFR in *Plante*, borne of a statute regulating land use. Rather, it is a contractually agreed upon term negotiated to protect private financial interests.

The bulk sale match versus unit match issue would be the same if the bulk sale was for only two units, owned by the same owner. In this hypothetical two-unit sale, the unreasonableness of the Schecher Group's position is stark. Clearly, the Schecher Group could not force this hypothetical owner to sell only one of its units to Schecher and lose the benefit of a buyer willing to buy both. Why should the result be different if there are fifty unit owners, many of whom would be deprived of the possibility of a beneficial sale if the Schecher Group could exercise the SG ROFR on a unit-by-unit basis?

The Schecher Group could have limited its exposure by negotiating an addendum or amendment to the condominium documents granting the Hotel Unit Owner a right to exercise the SG ROFR on a unit-by-unit basis. It did not. Throughout this case, the Schecher Group has championed its expansive rights under the

16

condominium documents. It must live with those same documents now and match the bulk sale "term and condition" in the MRC Contract.

For these reasons, it is –

**ORDERED** as follows:

1. To exercise the SG ROFR, the Schecher Group must match all terms and conditions of the Amended MRC Contract applicable to MRC's purchase of the non-debtor units, including, in particular, offering to purchase all of the non-debtor residential units that MRC is agreeing to purchase under the Amended MRC Contract when the contract is presented to the Schecher Group. This means agreeing to purchase the units offered for sale by all of the unit owners who have executed the Amended MRC Contract at the time the Amended MRC Contract is presented to the Schecher Group, even if such number exceeds fifty units.

2. As set forth in this Court's *Order (1) Setting Deadline for Execution of Amended Contract; and (2) Setting Final Hearing on Contract Approval* [DE #334], the Amended MRC Contract will provide that it will be presented to the Schecher Group for exercise, or not, of the SG ROFR when the buyer's deposit becomes non-refundable.

#   #   #

Copies furnished to:

Brett D. Lieberman, Esq.
Barry P. Gruher, Esq.
David Marshall Brown, Esq.

Inger Garcia, Esq.
Steven Davis, Esq.
AUST

**(Attorney Lieberman is directed to serve a copy of this Order on all interested parties, including Marc Realty Capital, LLC and its counsel, and to file a certificate of service)**