UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

Sixty Sixty Condominium Association, Inc.              Case No. 16-26187-RAM

    Debtor.                                                              Chapter 11

_____/

*EMERGENCY* MOTION FOR ENTRY OF ORDER
APPROVING BID PROCESS

> **Expedited Hearing Requested on or Before
> Friday, October 27, 2017**
>
> **Through this Motion, Debtor requests this Court enter an order authorizing Debtor to receive bids regarding a bulk sale from 10:00 am-2:30 pm, EST, on Monday, October 30, 2017. In the two days since the previously approved contract was terminated, two new written executed offers have been presented to the Association (one from the previous backup bidder and another from a new potential buyer). Presently, there are several pending matters set for hearing on November 1, 2017, including approval of a plan and disclosure statement, which would implicate this Motion and the Sale contemplated thereby. Accordingly, Debtor respectfully requests this Court either enter an Order granting this Motion or, if necessary, hold a hearing to consider this Motion on or before Friday, October 27, 2017.**

      Sixty Sixty Condominium Association, Inc. ("**Debtor**"), by and through undersigned counsel, pursuant to Sections §§ 327, 330, 331, 363(b), 363 (f), 365 and 1123(b) of the United States Bankruptcy Code and Rules 2002(a)(2), 2002(c)(1), 2014 and 6004 of the Federal Rules of Bankruptcy Procedure, and Rule 6005-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida, hereby files this *Emergency Motion for Entry of Order Approving Bid Process* (the "**Emergency Motion**"). In support of this Emergency Motion, Debtor states the following:

1

**PRELIMINARY STATEMENT**

This case has always involved three critical matters: (i) determination of the Schecher Group, Inc.'s ("**Schecher**") claim; (ii) determination of the claim of Florida Building and Supply, Inc. ("**FB&S**") claim; and, most importantly, (iii) facilitating a sale of Debtor's units in order to pay their allowed claims to reorganize Debtor's financial affairs.

Through tremendous effort, Debtor has overcome the ceaseless efforts of Schecher to undermine Debtor's reorganization strategy. Debtor's labors appeared to come to fruition when a resolution was achieved between Debtor, Schecher, participating residential unit owners (residential unit owners hereinafter, "**RUOs**"), and a bulk buyer (with the tremendous aid and assistance of Judge Hyman facilitating a Judicial Settlement Conference) regarding a bulk sale of the Debtor's units and most residential units.

However, for reasons that are as yet unclear to Debtor, after a settlement was achieved at the Judicial Settlement Conference, <u>Schecher unilaterally declared an impasse</u> and, later, the bulk buyer terminated the contract.

Almost immediately after the contract was terminated, the Debtor received formal written offers to stand in as the bulk buyer on substantially the same terms as the previous court-approved bulk sale contract (the "**Substitute Contracts**"). The Substitute Contracts contain notable exceptions including, among others, (i) they propose to pay Schecher up to $4.1 million on account of its claims against the Debtor's and other units subject to the bulk sale; and (ii) the new offers have considerably increased the purchase price of the Debtor's units.

With Schecher's foreclosure cases looming in the background (many set for trial on November 14, 2017), the adversary proceeding on the horizon, and a complete successful reorganization of Debtor still possible, Debtor respectfully requests this Court authorize an

2

expedited bidding process so that Debtor can accept a highest and best Substitute Contract and proceed to a closing.

If a Substitute Contract is approved, Debtor anticipates advancing the adversary proceeding against Schecher [1] on an expedited basis, closing on the Substitute Contract, paying all allowed claims at closing, and emerging from bankruptcy.

## JURISDICTION AND BACKGROUND

1. In the interest of brevity the Debtor hereby adopts the Jurisdiction and Background section of its April 7, 2017, *Debtor's Expedited Motion for Entry of an Order: (I) Approving Jason Welt and Trustee Realty, Inc. As Debtor's Real Estate Professional; (ii) Approving Proposed Bidding Procedures; (iii) Approving Form And Notice Thereof; And (iv) Scheduling Hearing To Consider Approval Of "Highest And Best" Bid* (ECF #174) (the "**Original Sale Motion**"), as supplemented herein.

2. On December 5, 2016, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (ECF #1).

3. The April 7, 2017, Original Sale Motion sought, among other things, authority to: (i) engage Jason Welt of Trustee Realty, Inc. (together, the "**Broker**") as the Debtor's broker to help facilitate a bulk sale; (ii) approve a process to submit bids and approve the notice to Proposed Purchasers of the instructions detailing the proposed process (the "**Bulk Sale Bid Process**"); and (iii) setting a final hearing to approve a bulk buyer.

4. On April 27, 2017, Debtor commenced the Adversary Proceeding by filing its *Complaint to Determine Validity, Priority and Extent of Liens, Setoff, Objection to Claim & Request for Declaratory Judgment* (AP #1) (the "**Complaint**") against the Schecher Group,

---

[1] Adversary Proceeding Case No. 17-01171-RAM (the "**Adversary Proceeding**" or "**AP**").

asserting claims for – Count 1: For Declaratory Relief to Determine the Validity Extent and Priority of Liens, Claims and Encumbrances in Plaintiff's Real Property; Count 2: Objection to Claim; Count 3: Improper Setoff; Count 4: To Avoid Preferential Liens Against Unit 505 And Commercial Units; and Count 5: To Avoid Improperly Perfected Liens Against Commercial Units And Unit 505.

5. After considerable litigation of which this Court is aware, including pretrial briefing, oral argument, and a multi-day evidentiary trial taking place on July 13, 14, and 21, 2017, and a final hearing on August 18, 2017, this Court entered, among other orders, its *Final Order Approving Bulk Sale Contract Including 363 Sale Of Debtor's Property Free And Clear Of Claims, Liens And Interests And Awarding Broker Real Estate Commission* on August 22, 2017 (ECF #336) (the "**Final Sale Order**").

6. Under the contract approved by the Final Sale Order (the "**MRC Contract**"), it was contemplated that due diligence period would terminate on October 23, 2017 and closing would occur on or before December 22, 2017.

7. Organized on a parallel track, on August 7, 2017, the Court entered its *Order (1) Granting in Part and Denying In Part Motion to Dismiss, and (2) Setting Deadlines and Filing Requirements; and (3) Setting Status Conference* (AP #43) (the "**AP Scheduling Order**").

8. The AP Scheduling Order preliminarily set the hearing on disputed legal issues for October 4, 2017 and trial for October 11, 12, and 13, 2017.

9. Having lined up the potential buyer on an approved contract and having scheduled the trial in the Adversary Proceeding, Debtor moved *ore tenus* to compel Schecher to mediation or a judicial settlement conference.

10. On August 7, 2017, this Court entered its *Order Referring Proceeding to Judge Hyman to Conduct a Judicial Settlement Conference*. (AP #44).

11. On September 15, 2017, Debtor, Schecher, certain RUOs [2] and Marc Realty Capital, LLC ("**MRC**", together with Debtor, Schecher and RUOs, the "**Settlement Parties**") participated in a judicial settlement conference facilitated by the Honorable Judge Paul Hyman (the "**Settlement Conference**").

12. Prior to the conclusion of the Settlement Conference, Debtor and others attending the Settlement Conference were advised that MRC and Schecher had agreed to the final material terms of the global settlement agreement being negotiated between and among the Settlement Parties (the "**Settlement**"). Debtor, the RUOs and others were led to believe that any other outstanding terms of the settlement agreement between Schecher and MRC would be resolved in short order.

13. Relying on these representations, among other things:

   a. On September 22, 2017, Honorable Judge Hyman filed his *Report of Mediator* indicating that the Settlement Parties had resolved all issues during the Settlement Conference (AP #75);

   b. On September 18, 2017, Debtor filed, with the consent of Schecher and the RUOs, its *Agreed Motion for Extension of Exclusivity Pending Documenting Settlement Agreement with Schecher Group, Inc.* (ECF #373), which included the material terms of the Settlement;

   c. On September 25, 2017, Debtor filed its *Second Amended Disclosure Statement in Support of its Amended Plan of Reorganization of Sixty Sixty Condominium Assocation, Inc.* (ECF #381) and its *Second Amended Plan of Reorganization of Sixty Sixty Condominium Association, Inc.* (ECF #380), which plan and disclosure statement incorporated the terms of the Settlement;

---

[2] Counsel for RUOs and two of the Intervenor owners attended the judicial settlement conference in accordance with the Order entered in the adversary proceeding 17-01171-RAM (ECF #44).

    d. On September 26, 2017, Debtor, Schecher and the RUOs filed their *Joint Agreed Motion for Extension of Time to Comply with All Pretrial Deadlines and to Extend the Pretrial Conference and Trial* (AP #80); and

    e. On September 27, 2017, this Court entered its *Order Cancelling Trial and Pretrial Conference* (AP #82).

14. However, for reasons that are still unclear to Debtor, on September 29, 2017 Schecher purported to unilaterally declare an impasse of the Settlement Conference and claimed to withdraw all of its settlement offers.

15. Settlement discussions continued between the Debtor, the RUOs and MRC, but with Schecher's refusal to commit to the financial terms that it had already agreed to in the Settlement, MRC ultimately terminated the contract on October 23, 2017.

16. Almost immediately thereafter, Debtor and counsel for the RUO's sought an alternative buyer. On October 25, 2017, the Debtor received two formal written contracts on substantially the same terms as the MRC contract with certain notable exceptions, among others:

    a. The purchase price of the Debtor's Units is significantly greater;

    b. The purchaser price of the residential units is less;

    c. The offers include paying Schecher up to $4.1 million dollars to satisfy its claims against the Debtor's Units and residential units subject to the sale; and

    d. One of the contracts offers a considerable non-refundable deposit.

17. In the absence of consent by Schecher, it is anticipated the Adversary Proceeding will go through trial and an ultimate determination of the Schecher allowed claim will be determined.

## THE BID PROCESS

18. The Substitute Contracts include substantially the same terms but differ on, among other things, the amount of the non-refundable deposit, the minimum number of residential units required to participate, and the purchase price of the residential units.

19.     Debtor seeks to give the parties submitting the Substitute Offers an opportunity to submit a highest and best bid in order for the Debtor to determine which of the Substitute Contracts to ultimately accept.

20.     Debtor thus proposes parties must submit an updated Substitute Contract (a **"Best and Final Offer"**) <u>**between the hours of 10:00 am EST and 2:30 pm EST on October 30, 2017**</u> to the Broker via e-mail (the "**Submission Window**"). [3]

21.     Debtor has already communicated with agents of the entities who submitted the Substitute Contract and they have agreed to participate in this process.

22.     Debtor has also communicated with counsel for Schecher to invite Schecher to participate. Counsel for Schecher declined noting that the Best and Final Offer would be subject to Schecher's right of first refusal.

23.     After completion of the Bid Process, Debtor will proffer the highest and best bid to this Court as a replacement to the MRC Contract, in advance of the Hearing on November 1, 2017.

24.     To facilitate successful execution of the bid process described herein, Debtor requests this Court hold a hearing on this Emergency Motion, if necessary, on or before Friday, October 27, 2017. If the bid process is approved, Debtor anticipates advancing the adversary proceeding against Schecher [4] on an expedited basis, closing on the winning Substitue Contract, paying its allowed claims at closing, and emerging from bankruptcy.

WHEREFORE, the Debtor respectfully requests that this Court enter an Order (1) granting this Emergency Motion and the bid process contemplated herein, or (2) setting a hearing to consider this Emergency Motion on or before Friday, October 27, 2017, and (3) granting any further or additional relief this court deems appropriate.

---

[3] Broker's e-mail address is jw@jweltpa.com.
[4] Adversary Proceeding Case No. 17-01171-RAM.

Respectfully submitted on October 26, 2017.

        **MESSANA, PA**
        *Counsel for the Debtor*
        401 East Las Olas Boulevard, Suite 1400
        Fort Lauderdale, FL 33301
        Telephone: (954) 712-7400
        Facsimile: (954) 712-7401
        Email: blieberman@messana-law.com

        /s/ Brett D. Lieberman
        Thomas M. Messana
        Florida Bar No. 991422
        Brett D. Lieberman
        Florida Bar No. 69583